# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**STARR INDEMNITY & LIABILITY INSURANCE COMPANY,**

    *Plaintiff/Counter-Defendant*.

    **-vs-**                                            **Case No. 3:23-cv-215-CWR-LGI**

**RIVER & ROADS DIRECTIONAL
DRILLING, LLC; and
MATTHEW FELDMAN,**

    *Defendants*,

    **-and-**

**ETHAN PARKER,**

    *Defendant/Counter-Plaintiff*.

    **-and-**

**ETHAN PARKER,**

    *Third-Party Plaintiff*,

    **-vs-**

**LIBERTY MUTUAL FIRE INSURANCE COMPANY**

    *Third-Party Defendant*.

---

## DEFENDANT ETHAN PARKER'S MEMORANDUM IN SUPPORT OF MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER REGARDING DISCOVERY ISSUED BY STARR INDEMNITY & LIABILITY INSURANCE COMPANY

---

Defendant/Counter-Plaintiff/Third-Party Plaintiff Ethan Parker ("Parker"), through counsel and pursuant to this Court's Order [ECF No. 337], hereby files his Memorandum in Support of His Motion to Quash and/or For Protective Order Regarding Discovery Issued by Starr

Indemnity & Liability Insurance Company's ("Starr"). In support thereof, Parker argues as follows:

## I.  Introductory Statement on Meet-and-Confer Obligations

In its September 24, 2024, Order, this Court directed the parties to set forth the extent of their efforts to meet-and-confer on issues germane this this motion. *See* Order, ¶ 4 [ECF No. 337]. On September 30, 2024, counsel for Starr, Liberty Mutual, and Parker met and conferred via videoconference for 30 minutes. Counsel was unable to resolve the issues raised in this motion, which will necessitate resolution by this Court.[1]

## II.  Introduction

Starr's goals are transparent:  delay adjudication of *this case* through newly concocted, invasive discovery, and simultaneously create a new legal frontier for new claims, against new parties, in front of a new judge.  *See Starr Indem. & Liability Ins. Co. v. Liberty Mut. Fire Ins. Co. & Daniel, Coker, Horton and Bell P.A.*, No. 3:24-civ-578 (S.D. Miss.) (filed September 23, 2024). Starr has already utilized delay to force trial continuances. *See*, *e.g*., Text Only Order (Nov. 29, 2023) (re-setting trial).[2] Taking advantage of delay, it has further ignored its own discovery obligations, refusing to produce incriminating discoverable documents by employing a defective privilege log shield.  *See, e.g*., Parker's Second Mot. for Sanctions [ECF Nos. 143 & 144].  Starr

---

[1] Consistent with completing discovery in the limited 40-day period, Parker's counsel offered to forego discovery and depositions against attorneys if Starr would do the same; to limit the Starr 30(b)(6) deposition to topics related to Starr's recent payment of judgment and present coverage position; and to make Parker available for a deposition on damages consistent with the present scope of the case evidenced by ECF No. 298 and Starr's recent concession that the claim is covered.  *See* ECF Nos. 351 & 352.

[2] Certain case deadlines were modified on Starr's request. When Starr asked for Parker's consent to the modifications, Parker gave it – on the condition that they would not impact the trial date. Starr's counsel did not communicate Parker's condition to the Court, and the trial was reset for a later date.  The trial was continued again from October 7, 2024, to April 14, 2025.  *See* Text Order (Aug. 27, 2024).

has thwarted deposition testimony from key witnesses, admittedly so, effectively blocking Parker's right to receive honest, straightforward answers, and again running out the discovery clock on Parker so he will never obtain the documents or the testimony.[3]

This is the context in which Starr now asserts that it (Starr) is entitled to expansive, new discovery in *this case* to develop claims asserted in its *new (September 23, 2024) case*. The timing of Starr's *new case*,[4] coinciding with the meandering discovery it now demands in *this case*, is not coincidental.[5] Were these new claims necessary for anything other than delay and coercion, they could have been asserted long ago, with requests for relevant discovery associated with such claims. Starr chose *not* to do that.

This Court's August 27, 2024, Order presently governs the scope of the trial, and therefore the scope of discovery, for the limited 40-day period. *See generally* Order (Aug. 27, 2024) (the "August 27 Order") [ECF No. 298]. The August 27 Order held that "a factual dispute on Parker's estoppel claim **render[ed] moot the…cross-motions about policy exclusions.**" August 27 Order, *6 (emphasis added). Ignoring the scope of the August 27 Order, as well as the confining 40-day post-Order discovery period that Starr proposed and agreed to, Starr, on September 17 and 18,

---

[3] There are also outstanding questions about possible altered documents. *See* Mem. Supp. Parker's Second Motion for Sanctions, *6 n.9 [ECF No. 144].

[4] In this new lawsuit, Starr claims – of all things – that Liberty and Daniel Coker were in a conflict of interest. Starr for almost two years did not disclose its own coverage conflict of interest with Parker while all that time controlling his defense, even using that access to information to develop and enhance its own coverage defenses. *See generally* Parker's Mem. Supp. Resp. to Summ. J. [ECF No. 222].

[5] Had the Court permitted Starr the extended 4-month discovery period it sought, Starr surely would have continued to conceal its drafted lawsuit against Liberty and Daniel Coker, sandbag them in discovery in this case, to hone the claims for the undisclosed new case.

2024, 21 days into the discovery period,[6] issued nine deposition notices and five subpoenas aimed directly and almost exclusively at issues pertaining to ***coverage and policy exclusions***. Starr issued subpoenas to two outside lawyers for Liberty, Reed Martz and Richard Schoultz, who Liberty retained over 3 years ago, in the summer of 2021 to issue ***coverage opinions*** on workers' compensation and scope of employment, or to investigate the facts of the accident in Indiana. Starr now demands Liberty's lawyers' ***coverage opinions*** and investigative materials. Starr similarly issued demands for Parker's lawyers to testify and produce their entire files. Starr's subpoenas include demands for, among other things: draft pleadings, including the legal basis for assertions in those drafts; mental impressions of counsel about why a particular defense was not asserted; and complete attorney billing records.

The August 27 Order renders moot these fishing expeditions regarding coverage, policy exclusions, and accident investigations. Independently, the scope of Starr's proposed discovery is incompatible with the Court's Order imposing a 40-day, limited discovery period that triggered on the day of the Court's rulings on substantive issues. *See* Order (Mar. 6, 2024) (the "March 6 Order") [ECF No. 185]. Per the March 6 Order, discovery began on August 27, which necessarily meant no discovery could start until properly noticed in accord with the time permitted and required by the civil procedure rules, further narrowing the actual days permitted for discovery under the March 6 Order. These built-in time limitations establish that the March 6 Order contemplated minimal discovery and that it prohibited discovery entangled with complex issues of privilege which would take months or more to adjudicate.

---

[6] Starr defended its delay in issuing this expansive discovery by claiming this Court had terminated all deadlines, including the deadline established by the March 6 and August 27 Orders. The explanation is nonsensical. If all deadlines had been terminated, the discovery period would have been terminated as well and Starr would not be permitted to issue any discovery.

Starr recognized as much when it signed the March 6 Order. It had not demanded lawyer testimony or lawyers' files during the 8-months of discovery allotted for this case. Only after the August 27 Order, and after it paid the multi-million-dollar judgment forced on its insured because of its coverage denial, did Starr shift tactics and abrogate its own agreement among counsel, the March 6 Order, the facts it stipulated to in the March 6 Order, and the August 27 Order.[7] Plainly, Starr's ill-timed, oppressive discovery demands in this case are coordinated with its wide-ranging new claims against new defendants in its September 23, 2024, filing, a 27-page lawsuit, accompanied by 303 pages of exhibits. The new case, which Starr did not disclose to the Court or the parties during the September 20, 2024, telephonic discovery hearing, is another coordinated component of Starr's delay and disrupt strategy.[8]

Aside from the limiting scope of the August 27 Order and the March 6 Order, Starr as of September 23, 2024, legally admitted that its policy covers the claim. On September 18, 2024, it paid the Feldman judgment, on behalf of its insured, under the policy in issue in this case. Starr alleged in the new case that it paid the Feldman judgment *because it had to – under compulsion*: "Starr…was compelled to pay a judgment entered against its insured, Parker…." *See* Compl., ¶1, *Starr v. Liberty Mutual, et al.*, No. 3:24-cv-576-DPJ-ASH (S.D. Miss. Sept. 23, 2024) [ECF No. 1]. No Court has ordered Starr to pay the Feldman judgment. It follows that Starr's legally compelled payment can be only premised upon the legally binding insurance policy. There is nothing else that legally compelled Starr to pay. It follows that Starr, by its own actions, has now

---

[7] Starr could have filed the new case at any time since Liberty reached its coverage decision in August, 2021, and it could have even asserted such a claim in its Amended Complaint in this case, but it did not assert any claims against Liberty or Daniel Coker until the eleventh hour.

[8] Immediately after the hearing, Starr's counsel contacted Liberty's workers' compensation coverage lawyer, Richard Shoultz, and falsely represented that Mr. Shoultz did not have to appear for deposition but *did* have to produce his coverage file. *See* Emails from counsel to Court (Sept. 20, 2024) (discussing Starr's counsel's contacting Mr. Shoultz after the hearing).

admitted coverage under its policy. While Starr's 3-year denial of the claim it now admits is covered is pertinent to Parker's counterclaim at trial, its admission that the policy covers the claim independently moots the need for any discovery regarding coverage (because Starr has now admitted coverage) or exclusions (because Starr has conceded no exclusion applies by admitting the policy covers the claim).

The Court should deny Starr's requested discovery as: (a) incompatible with Starr's admission of coverage through payment of the judgment; (b) beyond the scope of the August 27 Order; (c) inconsistent and incompatible with the March 6 Order; (d) an abrogation Starr's March 6 stipulation to the facts upon which coverage would be decided; (e) invasive and violative of Parker's privileges; (f) untimely; and (g) overbroad and beyond the scope of permissible discovery. For these reasons, Parker moves the Court to limit Starr's discovery to a damages deposition of Ethan Parker. That is all Starr is entitled to now.

### III.    Procedural and Factual Background

Starr initiated this litigation by filing suit on March 28, 2023. Discovery started after the Case Management Conference on July 18, 2023. *See* CMO [ECF No. 41]. Like all parties, Starr had more than eight months to conduct discovery relevant to all issues in the case. As Parker had filed his counterclaim and his third-party claim on May 24, 2023, all issues were then joined.

In February 2024, after seven months of discovery, Parker filed a Motion for Partial Summary Judgment, in which he argued Starr's coverage defenses were invalid. *See* Mot. & Mem. Supp. [ECF Nos. 167 & 168]. Upon receipt of the motion, Starr's counsel contacted Parker's counsel and proposed: (i) stipulating to material facts relevant to coverage; and (ii) staying discovery pending a ruling on dispositive motions, after which time discovery would re-open for 40 days, if additional discovery even proved necessary. Starr proposed the Order; it agreed to the

substance and form of the Order; it transmitted the Agreed Order to the Court, and it requested it be entered expeditiously. *See* Emails Regarding Agreed Order, **Composite Exhibit 2**. The Court made its own modifications to the parties' agreement and entered the Order. *See* Order (Mar. 6, 2024) (the "March 6 Order") [ECF No. 185]. Starr then filed a cross-motion for summary judgment predicated upon the stipulated facts regarding coverage that Starr itself had proposed. [ECF Nos. 190 & 191]. Simply put, Starr determined that discovery as to any and all issues of in any way related to coverage and exclusions was complete, and that the Court's ruling would inform and considerably narrow the issues for trial, and by consequence, the issues for the limited discovery period.[9]

This Court and the parties relied on, and agreed to, Starr's proposed stay of and limitations on discovery, never anticipating that Starr would simply renege on its agreement and try to reformulate a new pervasive discovery strategy after the Court ruled on the substantive motions. Nor did the agreement contemplate that Starr would pivot to sue the lawyers and use this case as a vehicle to obtain discovery to develop its newly-filed lawsuit.

But Starr has done just that.

As to proceedings in the underlying case, Feldman went to trial against Parker since Starr refused to settle the Feldman case. Feldman obtained a judgment of $4,078,000, and it was entered on August 20, 2024. Liberty promptly paid its $1,000,000 policy limit within a day or two. Starr initially refused to pay the excess judgment, apparently not concerned with this Court's comment that Parker is an "insured…trapped in the middle of [a] proxy war" so "the insurance companies [should] protect their insured, even if it results in the need for future proceedings to resolve their

---

[9] This discovery—as admitted by Starr—included only the depositions of Parker, Scott Torrez, Liberty Mutual, and River Roads Directional Drilling. *See* Starr Reply, *5 ¶22 [ECF No. 335]. It *did not* include any lawyer discovery – that issue never came up prior to September 2024.

claims and arguments against each other." *See* Order (Aug. 19, 2024) [ECF No. 297]. But Starr changed its position after this Court ruled on Parker's and Starr's cross-motions for summary judgment on August 27, 2024. *See* Order (Aug. 27, 2024) (the "August 27 Order") [ECF No. 298]. Even so, Starr insisted it could not pay the judgment for several weeks, apparently working to reserve the claim it had all along denied, and then it filed a motion in this Court requesting that this Court stay execution on the state-court judgment. *See* Starr Reply, *1 [ECF No. 310]. This Court, questioning its jurisdiction to do so, rejected that request, further stating "[a] verdict of this magnitude was more than foreseeable. Starr can choose how it wishes to proceed." *See* Order (Sept. 12, 2024) [ECF No. 311]. Starr then waited another week and finally paid the excess judgment of $3,078,000 on September 18, 2024.

Despite the March 6 Order, August 27 Order, and Starr's payment of the excess judgment constituting an admission of coverage, Starr did not attempt additional discovery for the first three weeks of the 40-day period.[10] To be sure, most of the discovery now demanded by Starr *was not* attempted during the 8-month discovery period. Certainly Starr did not attempt to depose Parker's lawyers and obtain the lawyers' files pursuant to the three subpoenas it issued in mid-September 2024: (i) Subpoena to Daniel, Coker, Horton and Bell P.A. (the "Daniel Coker Subpoena") [ECF No. 313-1; (ii) Subpoena to Christy Malatesta (the "Malatesta Subpoena") [ECF No. 331-1]; and (iii) Subpoena to Jim Weems (the "Weems Subpoena") [ECF No. 326-1]. Nor did it attempt to subpoena Parker's expert, Louis Fey, Jr., for the contents of his file and copies of treatises and

---

[10] To justify its last-minute, expansive and invasive discovery attempts, Starr said that it interpreted a minute order as terminating all deadlines in the case, including deadlines imposed by the March 6 Order. But if that were true, discovery was completely closed, and Starr should have filed a motion to reopen discovery by explaining what discovery was needed, why it was needed, and why it could not have been obtained when discovery was open.

other material– even though Mr. Fey and Parker have disclosed to Starr the relevant information he reviewed in formulating his opinion, and even though Starr already has (or has access to) that material. *See* Subpoena to L. Fey (the "Fey Subpoena") [ECF No. 312-1].

For the following reasons, this Court should deny Starr's attempt to expand discovery by quashing its subpoenas and entering an appropriate protective order that limits the discovery that may occur.

### IV.  Argument

#### A.  Starr's payment of the judgment "under compulsion" and corresponding admission of coverage (*i.e.*, its duty to indemnify) narrows the scope of the trial to damages only.

Starr paid the Feldman judgment on September 18, 2024.  *See* Compl., ¶ 54, *Starr v. Liberty Mutual*, No. 3:24-cv-00576 (S.D. Miss.) [ECF No. 1].  Starr claims that it paid under legal compulsion.  *See* Compl., ¶ 53, *Starr v. Liberty Mutual*, No. 3:24-cv-00576 (S.D. Miss.) [ECF No. 1].  Compulsion is a legal duty to pay something.  *See Colony Ins. Co. v. First Specialty Ins. Co.*, 262 So. 3d 1128, 1133 (Miss. 2019) (providing legal definition of "compulsion").  Starr's payment under compulsion[11] was not predicated on a Court Order requiring payment because one does not exist.  Therefore, Starr's legal duty to pay could only be a contractual (policy) duty to pay.  It follows that Starr has necessarily admitted that the policy covers the claim.  As coverage is now finally confessed and admitted, liability is not a triable issue; consequently, liability issues – including issues regarding coverage and exclusions – are not appropriate subjects for discovery in the 40-day period.

---

[11] Starr could have claimed that it paid voluntarily, not under compulsion, which would have been consistent with its position that its policy does not cover the claim. *See Colony Ins.*, 262 So. 3d at 1134. But it did not do that.  By specifically asserting it was forced to pay to "protect Parker," it has acknowledged that its policy is the legal mechanism forcing payment. *See id.*

This renders wholly irrelevant Starr's attempted discovery directed to Parker's lawyers. It does not matter what Parker's lawyers did and failed to do in the underlying case[12] because Starr has admitted its policy covers the claim.[13]  Damages and punitive damages associated with Starr's breach of contractual duties and the duty of good faith and fair dealing are now the triable issues.

## B. This Court substantially narrowed discovery through the August 27 Order.

Independently, the August 27 Order defined and substantially narrowed the triable issues and, consequently, the scope of discovery. In every material aspect, the August 27 Order makes clear that the only factual issues in contention relate *to Starr's conduct*, not the conduct of Parker's lawyers or others. This Court expressly held that the trial issue is whether "Starr's conduct results in waiver and ultimately injured Parker….[because] the Court's finding of a factual dispute on Parker's estoppel claim renders moot the previous cross-motions about the policy exclusions." *See* August 27 Order, *7.

Thus, under the August 27 Order, the only triable issues of fact relate to whether ***Starr*** is estopped because of ***Starr's*** actions and decisions.  The prologue to this Court's ruling makes this clear. For instance, the Court notes "substantial evidence of Starr's knowledge and direction of the state-court litigation." *Id*. at *5. The Order addresses Starr's argument that it had no duty to defend,

---

[12] Starr has repeatedly faulted Parker's lawyers (and Liberty) for not raising a workers' compensation defense in the state-court litigation with Feldman. Its discovery seeks to probe "why" Parker's lawyers or Liberty did not raise that defense.  Yet the fact record is undisputed that Starr knew the defense was not raised, and it never intervened to raise the defense itself even though it claimed that right under its policy. Starr did not plead in its Amended Complaint that others were "at fault," nor is comparative fault a defense to an estoppel claim.

[13] Separately, this Court's August 27 Order (discussed below) establishes the scope of Starr's breach of its defense obligations under the policy and associated waiver of any defenses of the related to defense of the case, particularly concerning the conflict created by Starr in its control of the defense as inconsistent with *Moeller* and *Twin City*.

but it finds that Starr "elected to chart a different course" by not keeping "out of Parker's suit and den[ying] coverage at the outset of the claim and ensuing litigation." *Id.* *6. Further, this Court found that "Starr immersed itself in Parker's state-court defense for so long that its eventual denial letter cannot be called 'prompt.'" *Id.* Estoppel in this case is predicated on what Starr did or did not do. These are the triable issues under the August 27 Order (before Starr admitted coverage by paying the excess judgment under "compulsion").[14]

Starr's depositions of Parker's lawyers, the production of Parker's lawyers' client files, and an unlimited deposition of Parker (on issues such as how the accident happened) will not yield information that is relevant or admissible. Again, the focus now is on Starr's conduct, not the conduct of Parker, his lawyers, or any other party or non-party. Starr's present fishing expedition cannot be used to uncover any information to weave a *post hoc* narrative and/or justify its conduct after the fact. All that matters is what Starr did with the information it had during the relevant time of its actions in denying the claim. *See* August 27 Order, *6. All of that information is contained within ***Starr's*** files.

### C. The March 6 Order and Starr's Agreement to the Scope of Future Discovery prohibited post-ruling fishing expeditions.

The 40-day period to complete discovery, which Starr proposed, and this Court ordered, necessarily contemplated limited, narrowed discovery. The 40-day period alone proves that. First, the 40-day period, by the specific terms of the March 6 Order, triggered the day the Court ruled on August 27. It began running immediately, even though discovery could not be conducted until parties properly noticed of depositions, properly issued written discovery, and/or properly issued

---

[14] As discussed *supra*, Starr's recent payment of the excess judgment taken against Parker only serves as more limiting for trial purposes. Starr's payment of the excess judgment is an admission of coverage.

subpoenas, all of which, by rule, require a time frame for compliance. Hence, the March 6 Order's discovery period was, by design, extremely compressed.

The compressed period alone establishes that the March 6 Order did not contemplate – and in fact prevented – discovery riddled with privilege and objection issues requiring Court adjudication. Forty days permits no time for that. Nor did the March 6 Order contemplate a "pause" to adjudicate complex discovery disputes before resuming discovery for only 40 days. When the March 6 Order was entered, trial was set for October 2024 with a pre-trial conference in September 2024. It follows that the March 6 Order permitted a simple and non-controversial resumption of discovery for very limited purposes for a very brief period, swiftly followed by trial. For these reasons, Starr's request for any discovery implicating issues of attorney-client privilege and work product doctrine is wholly inconsistent with the letter and spirit of March 6 Order, as well as the parties' agreement that preceded it and prompted its entry.

Consistent with this premise, when the March 6 Order was entered, Starr had noticed only the following depositions: Parker, Scott Torrez, Liberty Mutual, and River Road Directional Drilling. To be clear, Starr had not sought—or even suggested—invasive discovery of lawyers and their files. Again, and as a practical matter, 40 days is not enough time to undertake, much less complete, this sort of discovery, and certainly not enough time to adjudicate the privilege issues in motion practice. Deposing lawyers and subpoenaing their client files is both unusual and extraordinary and implicates all sorts of issues relating to attorney-client and work-product privileges.

Starr cannot credibly contend now that the March 6 Order's limited discovery period allows for this sort of discovery. As Starr's counsel conceded during the September 20 telephonic hearing, Starr requested a four-month extension of the discovery period so issues concerning privilege can

be fully briefed and resolved by the Court. This four-month extension request constitutes an admitted repudiation of the agreement leading to, and the entry of the March 6 Order, thereby undermining Starr's present claims that it should be permitted this discovery. Starr[15] simply reneged on the March 6 Order as well as its stipulation to material facts governing the coverage issues to embark on a new tactical strategy.[16] The scope of the discovery Starr has demanded and the filing of the new case prove this. Standing alone, this mandates the denial of any discovery Starr seeks.

### D. Starr's stipulation to material facts on coverage moots any right to additional discovery on coverage facts.

The March 6 Order states:

Parker's Memorandum [ECF No. 168] at pages 5-7 sets forth certain facts as undisputed for purposes of his motion for partial summary judgment. The facts set forth are based in part on Exhibits A – E of ECF No. 167 previously presented and relied upon by Starr. **Starr agrees the facts set forth in Parker's Memorandum [ECF No. 168] at pages 5-7 are undisputed and may be relied upon by the Court in ruling on Parker's motion and any cross-motion by Starr on the same issue**.

March 6 Order, *3 ¶ 4 (emphasis added).

Starr's stipulation as to the facts upon which coverage is to be decided moots and makes irrelevant any discovery regarding facts relating to coverage. That is exactly what stipulations are for – they are legal admissions as to certain facts. *See, e.g.*, *1BMF, Inc. v. D.B. Miller, Inc*., 2024

---

[15] *See* Order (Aug. 19, 2024) [ECF No. 297] (Parker is an "insured…trapped in the middle of [a] proxy war" so "the insurance companies [should] protect their insured, even if it results in the need for future proceedings to resolve their claims and arguments against each other"). Starr initially refused to protect Parker by paying the excess judgment. It then moved this Court to interfere in a state-court proceeding by staying Feldman's execution of the excess judgment. This Court rejected that request –stating "[a] verdict of this magnitude was more than foreseeable. Starr can choose how it wishes to proceed." *See* Order (Sept. 12, 2024) [ECF No. 311].

[16] Moreover, four months will not suffice to unpack these issues of privilege. If this Court permits Starr to undertake its discovery of attorneys and their files, discrete disputes over particular documents or particular testimony will no doubt arise over and over again. This Court may very enter a sustained cycle of motions practice, from parties and non-parties alike, which will require burdensome and time consuming *in camera* review of privileged material.

WL 924287, *4 (W.D. Tex. Mar. 4, 2024) ("A judicial admission is a formal waiver of proof that relieves an opposing party from having to prove the admitted fact and bars the party who made the admission from disputing it.") (quoting Black's Law Dictionary (11th ed. 2019)). Here, Starr stipulated specifically that the facts "at pages 5-7" in "Parker's Memorandum [ECF No. 168]" contained the only facts necessary for determining coverage, there were no other relevant facts (or Starr would have said so), and thus there were no disputed facts regarding coverage.

The fact that the Court has not decided coverage does not change the fact that Starr stipulated to the facts upon which that coverage decision must be based. Starr wholly fails to explain why it now engages in scorched earth discovery to uncover facts regarding coverage when it stipulated to those facts and further stipulated that coverage shall be decided based upon those facts, and only those facts. *See* March 6 Order, *3 ¶ 4. It follows that Starr's discovery demands in this regard are contrary to its own stipulation and agreement in disregard of the March 6 Order.

### E. Starr is not entitled to the discovery it seeks.

Even discarding for the sake of argument Starr's admission of coverage via payment "under compulsion," the August 27 Order, the March 6 Order, and Starr's accompanying fact stipulation, all of which are independent and separate reasons to deny the discovery, the scope of Starr's discovery demands are breathtaking. As of the date of its proposed stipulation and order leading to the March 6 Order, Starr had only noticed depositions of Parker, Scott Torrez, Liberty, and River Roads Directional Drilling. This should be the starting point for consideration of additional discovery – what Starr contemplated and attempted during the 8-month discovery period.[17] But even that should be trimmed by the August 27 Order (which narrowed the discoverable issues)

---

[17] Starr had had some 8 months to conduct any discovery related to Parker's counterclaims and never found it important to subpoena lawyer files and lawyers.

and, now, by Starr's compulsory payment and admission of coverage (which narrowed the issues further).

### a. Ethan Parker

Applying this criterion, Starr should not be permitted to question Parker on issues that relate to anything other than damages. This includes coverage issues, including issues from long ago about the accident and events regarding the accident. Among other things, factual issues like "course and scope of employment"[18] are fully and finally established through Starr's stipulation of material facts. Similarly, Starr's dispositive motion on that issue was denied as moot, and the Court stated that the issue did "not matter".[19] Most compellingly, Starr's payment of the excess judgment "under compulsion" constitutes an admission of coverage. *See* Parker's Mot. & Mem. Supp. Summ. J. [ECF Nos. 167 & 168]. As to the scope of Parker's deposition, it should be damages only. (Parker incorporates by reference his argument in Section III.A, *supra*, as to why the scope of his deposition should be limited to damages only.)

### b. The Daniel Coker, Malatesta, and Weems Subpoenas

Starr's attempt to subpoena documents from and depose attorneys Jim Weems and Christy Malatesta, and subpoena documents from Daniel Coker ("Daniel Coker"), is an extraordinary attempt to invade the attorney-client privilege and work product doctrine. Starr is asking this Court

---

[18] As a threshold matter, Parker does not, and never has, contended that he will object to a deposition altogether. Parker's counsel has consistently represented that Parker will be produced for deposition at a mutually agreeable date and location. The scope of his deposition, however, is another matter.

[19] This Court specifically stated: "Even if Starr prevailed there—*i.e.*, if the Court agreed that Starr had no duty to defend Parker because Feldman was acting in the course and scope of his employment at the time of the accident, triggering an exclusion—a jury could find that Starr's conduct results in waiver and ultimately injured Parker to the tune of $3 million….Restated, the Court's finding of a factual dispute on Parker's estoppel claim renders moot the previous cross-motions about the policy exclusions." August 27 Order, *7.

to cast these privileges aside and disregard them entirely—all so it can conduct a costly, invasive, and abusive fishing expedition into areas of irrelevance (at least in part to develop its separate lawsuit against Liberty and Daniel Coker).

"It is a long established rule that an attorney is not permitted and cannot be compelled to testify as to certain communications made to him by his client unless the client consents. Where the communications are of a confidential nature, are made between a client and his attorney, and are made for the purpose of seeking or giving legal advice, such communications are absolutely protected from disclosure by the attorney-client privilege." *Buford v. Holladay*, 133 F.R.D. 487, 491 (S.D. Miss. 1990).

"[T]he work-product doctrine is distinct from and broader than the attorney-client privilege….[It] insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries….[and] protects materials prepared in anticipation of litigation, whether those materials were prepared by the attorney or by agents of the attorney." *Adams v. Memorial Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) (citations and quotations omitted). Although work product may be discovered in extraordinary circumstances upon a showing of substantial need or undue hardship, opinion work product—*i.e.*, mental impressions—are inviolate and never discoverable. *See, e.g.*, Fed. R. Civ. P. 26(b)(3); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1328 (8th Cir. 1986); *Nguyen v. Excel Corp.*, 197 F.3d 200, 210 (5th Cir. 1999) ("An attorney's thoughts [are] inviolate….").

Courts heavily disfavor and frown upon depositions of counsel. *Shelton*, the leading case on the issue and cited with favor within the Fifth Circuit, explains why:

> Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial

delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony.

*Shelton*, 805 F.2d at 1327.

Against this backdrop, Starr bears the heavy burden to show this disfavored discovery is warranted. "District courts in the Fifth Circuit, following *Nguyen*, have applied the three-prong test established…in *Shelton* to determine circumstances when…counsel should be subject to being deposed." *McKinney/Pearl Restaurant Partners, L.P. v. Metropolitan Life Ins. Co*., 2016 WL 2609994, *10 (N.D. Tex. May 6, 2016).

Under *Shelton*, Starr must show: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *WIII Uptown, LLC v. B&P Restaurant Grp., LLC*, 2016 WL 4620200, *9 (M.D. La. Sept. 6, 2016). Starr cannot satisfy any of these factors.

    (i)    <u>Other means exist to obtain the information Starr purportedly seeks</u>.

Under the August 27 Order, the focus of the trial is *on Starr's conduct* – its action and inaction based on the information it had when it denied Parker's claim, information it had when it participated in and controlled Parker's defense, and information it had when it admitted the claim was covered through payment of the judgment under compulsion. Thus, the entirety of the information Starr needs exists in its own files. Moreover, Starr's files – except for material it has withheld[20] – have already been produced. Starr can simply review its own claims file, production of documents, and held-back privileged documents, to determine the information it may use to

_____

[20] On September 27, 2024, Starr responded to this Court's Order of September 26, 2024, by amending several privilege logs, for the first time, as it has previously represented to the Court that it was only obligated to amend one of them. In connection with the amendments, Starr produced only five additional documents.

defend itself at trial against allegations of its own misconduct which may result in it being estopped from denying coverage.

It is also unclear what information Malatesta, Weems, or Daniel Coker purportedly have (that does not exist in Starr's own file) going to the issue of Starr's participation and control of the defense. Starr has made no effort to explain why it should be permitted to question Parker's lawyers regarding issues under its own control. Indeed, Starr's own policy gave it the express right to take whatever action it needed to assess and/or defend a claim,[21] which Starr did, as explained in the Court's August 27 Order. *See* August 27 Order, \*5 ("In our case…there is substantial evidence of Starr's knowledge and direction of the state-court litigation.").

    (ii)    <u>The information sought is not relevant and/or it is privileged</u>.

The information sought is not relevant for the reasons described in Section III.A., *supra*. That reason alone warrants quashing the subpoenas. Further, the information sought would not be relevant no matter the scope of the remaining issues to be tried.

The information is also unquestionably privileged, and Starr admits as much in its new lawsuit against Daniel Coker and Liberty: "At the time of Daniel Coker's retention to defend Parker, ***an attorney-client relationship was formed between Daniel Coker and Parker with respect to the defense of the Underlying Lawsuit.***" *Starr v. Liberty*, No. 3:24-cv-00756, ¶ 38 (emphasis added). Despite this admission, Starr asks this Court to casually disregard the privilege and let Starr have all of Parker's attorneys' files.

As further evidence of Starr's ill motives, it seeks Daniel Coker's billing entries. These entries are not relevant to any issue in this lawsuit and evidence Starr's approach to this case:

---

[21] *See* Starr Policy, Section IV.F.2 [ECF No. 24-5, ECF Page 29 of 46] ("We have the right…to associate with any underlying insurer…in the defense…of any claim….").

create chaos and sow confusion, at great expense to all parties. The multitude of discovery motions that would stem from these discovery demands of lawyers is endless, including significant *in camera* reviews of contested information. Starr did not pursue this newfound strategy at the time it agreed to a 40-day, post-order discovery period. This is a tactical shift.

The subpoena to Daniel Coker also seeks "[a]ll documents relating to the Answer and Defenses filed on behalf Parker [sic]…on September 23, 2021, including any drafts, correspondence relating to it, or the…legal basis for its content." *See* ECF No. 313-1. But an attorney's mental impressions are inviolate and never discoverable. *See, e.g.*, Fed. R. Civ. P. 26(b)(3); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1328 (8th Cir. 1986); *Nguyen v. Excel Corp.*, 197 F.3d 200, 210 (5th Cir. 1999) ("An attorney's thoughts [are] inviolate….and fall outside the area of discovery") (alterations omitted). Similarly, Daniel Coker's billing entries almost certainly contain privileged or protected information. *See, e.g.*, *Mass Eng. Design, Inc. v. Ergotron, Inc.*, 2008 WL 11348359, *5 (E.D. Tex. Oct. 14, 2008) ("information remains privileged" when "confidential communications are inextricably intertwined with billing information").

The Malatesta Subpoena is similarly expansive. It seeks, among other things:

- "All documents relating to Your defense of Parker."
- Draft pleadings, including correspondence relating to the legal basis for the drafts.
- Mental impressions of Malatesta, including whether she considered a defense and her reasons for not asserting it.
- Malatesta's billing entries.

*See* ECF No. 331-1. All of this is unquestionably privileged and not discoverable, and Starr makes no effort to be discretionary in its request.

The same analysis applies for the Weems Subpoena. It seeks, among other things:

- "All documents relating to Your defense of Parker."
- Draft pleadings, including correspondence relating to the legal basis for the drafts.

- Mental impressions of Weems, including whether he considered a defense and his reason for not asserting it.
- Weems' billing entries.

*See* ECF No. 326-1. Again, all of this is unquestionably privileged and not discoverable.

     (iii)    <u>The information sought is not crucial to preparation of the case</u>.

Finally, the application of this third factor is duplicative of the second factor and has separately been addressed in Section III.A., *supra*. Simply put, Starr does not need this information to prepare its case because none of the information sought is relevant and will not be in issue. The triable issues of fact focus exclusively on Starr's own conduct, not anyone else's conduct.

Starr's contemplated discovery into matters protected by the attorney-client privilege is so invasive and broad it would not have been appropriate even early in the case. It is even more inappropriate now because: (i) Starr admitted coverage by paying the excess judgment under compulsion; (ii) the August 27 Order narrowed the issues; (iii) the March 6 Order never contemplated such massive and invasive discovery requests; (iv) Starr never claimed to need, and never sought, this discovery during the principal discovery phase before it filed a dispositive motion; (v) most of Starr's discovery seeks material that is obviously privileged; (vi) Starr's discovery fails Rule 26(b)'s test for relevance and proportionality; and (vii) it is obviously intended to develop claims in a separate lawsuit.

### c. The Fey Subpoena

Starr is not entitled to compliance with the Fey Subpoena, either. The expert discovery period is fully and finally concluded pursuant to agreement of the parties and the March 6 Order, which provides: "All Discovery is temporarily stated, except expert discovery as set forth in paragraph 6 below….All parties agree, if requested, to produce their experts for deposition by April 16, 2024….The deadline for submission of any Daubert Motions is extended to May 15, 2024." March 6 Order, *2, ¶1 & *4, ¶6. On April 15, 2024, Starr deposed Mr. Fey for nearly eight

hours (from 9:15 a.m. until 4:54 p.m.) and was permitted the opportunity to conduct any discovery it deemed reasonable as to Mr. Fey. The March 6 Order states that the expert discovery period closed on April 16 (and certainly no later than May 15, when *Daubert* motions were due).

Alternatively, the Fey Subpoena is overbroad, it is wholly unnecessary, it seeks information well beyond the triable issues. Fey's report outlines the documents in his file. As examples of the overbreadth, the subpoena demands:

- The Report of Rick Hammond. (But Mr. Hammond is Starr's expert, and Starr produced this report to Parker. Starr now demands that Mr. Fey produce its own expert's report back to Starr under subpoena.)

- "All copies of depositions in any case which You have testified or been designated as an expert witness." (Fey's expert disclosure, in compliance with the discovery rules, identifies the cases where Mr. Fey has served as an expert over the last four years. There is no requirement that an expert produce all his deposition or trial transcripts. Nor has Starr attempted to narrow by scope or category to explain any a particularized need for a particular transcript.)

- "Produce the following industry resources listed in Your report: Sage, Silver Plume, FC&S, IRMI, and Claims Operations: A Practical Guide." (Starr has retained two experts, each of whom presumably consults (and has consulted) industry resources in this case.)

- "All billing statements, timesheets, invoices, or other documents…" (The rules do not require production of specific invoices, and Mr. Fey was asked or could have been asked how much he had billed during his deposition. Starr is needlessly propounding burdensome requests to comb through bill statements, timesheets, or the like that probably will contain information that is privileged or not subject to discovery.)

Independently, Starr has no need for any of this information. Starr received Mr. Fey's report long ago and deposed Mr. Fey without sending him a subpoena or making any requests for this information. Then it filed a motion to strike Mr. Fey – again, without making any requests for this information.

### F. The discovery is not proportional to the needs of the case.

This Court should deny Starr's expansive discovery because none of it is proportional to the needs of the case. Under Federal Rule of Civil Procedure 26(b), a party may obtain discovery

regarding nonprivileged matters that are relevant. Privilege and relevance notwithstanding, Rule 26(b) also limits discovery to matters that are "proportional to the needs of the case." In determining proportionality, a court should consider, *inter alia*, "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Further, "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (citation and quotation omitted).

Starr's proposed discovery is an unwieldy and burdensome fishing expedition that is neither beneficial nor important. As discussed at length, *supra*, the discovery sought lacks relevance altogether; it is, therefore, not discoverable under Rule 26(b). Even assuming some relevance, however, the discovery is not proportional to the needs of *this* case in its current posture. If the discovery was proportional and important, Starr would have pursued it a year ago.

The burdens and expense associated with Starr's discovery – nine depositions and five document subpoenas, most of which are all directed to or implicate lawyers – will be enormous. Permitting the discovery will virtually guarantee a constant cycle of motions practice on discovery disputes—probably revolving around privilege—up to (and perhaps beyond) the pre-trial conference. This Court will likely find itself sifting through reams of irrelevant material, ruling on whether this billing entry or that draft pleading is privileged or relevant or whether it is not.

This full throttle, expansive discovery will burden Parker, the holder of the privilege for much of the information sought. He has been preparing for and is prepared for trial, which has been twice continued. This case—save for perhaps a few very minor discovery matters—is essentially ready to try, and if anything, Starr has blocked relevant discovery as set forth in Parker's motions for sanctions. *See* ECF Nos. 110, 111, 143, & 144. Starr should not be allowed at the

eleventh hour to create a discovery frenzy to further delay trial and/or invade Parker's privilege.

## V.      Conclusion

For the foregoing reasons, this Court should quash Starr's subpoenas and enter a protective order denying the discovery Starr seeks. Starr should be permitted to depose Parker on issues relating to damages only. All other discovery should be denied for the reasons stated herein.

This, the 1st day of October, 2024.

Respectfully submitted,

*/s/ Chadwick M. Welch*
Chadwick M. Welch (MSB No. 105588)

*Attorney for Defendant/Counter-Plaintiff,*
*Ethan Parker*


OF COUNSEL:

C. Maison Heidelberg (MSB No. 9559)
HEIDELBERG PATTERSON WELCH WRIGHT
368 Highland Colony Parkway
Ridgeland, Mississippi 39157
601-790-1584 (Maison direct)
601-790-1588 (general)
601-707-3075 (fax)
mheidelberg@hpwlawgroup.com
cwelch@hpwlawgroup.com

**CERTIFICATE OF SERVICE**

I, Chadwick M. Welch, hereby certify that on this day I served the foregoing pleading which will be served upon all counsel of record via the Court's electronic filing system.

THIS, the 1st day of October, 2024.

/s/ Chadwick M. Welch
Chadwick M. Welch