IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

STARR INDEMNITY & LIABILITY COMPANY                    PLAINTIFF

v.                                CIVIL ACTION NO. 3:23-cv-00215-CWR-LGI

RIVER & ROADS DIRECTIONAL DRILLING, LLC,
ETHAN PARKER,  and MATTHEW TYLER FELDMAN            DEFENDANTS

<u>ORDER</u>

Before the Court are ten competing discovery motions filed by Plaintiff, Defendant Ethan

Parker, Defendant Liberty Mutual and Respondent Daniel Coker Horton and Bell. P.A. ("Daniel

Coker"), pursuant to the Court's order and expedited briefing schedule. *See* Order, Doc. [337]; *see*

*also* Text-only Order, dated 9/25/2024. This Court previously set forth a briefing schedule by

which parties were to file motions for protective order and/or motions to quash certain notices of

depositions or subpoenas.[1] The order also directed parties to file their respective responses and

replies regarding the subject notices. The briefing period having expired, the motions are now ripe

for ruling.

I.    **Recent Procedural History**

On September 16, 2024, the aforementioned parties began emailing the undersigned's

Chambers regarding various discovery disputes and also requesting telephonic conferences with

the Court. Among the string of emails was Ethan Parker's September 19, 2024 email, wherein

counsel stated the following:

> Judge Reeves's order on Parker's and Starr's motions for summary judgment,
> entered recently on August 27, 2024 (Dkt. 298) (the "August 27 Order"), defines

---

[1] This Court recognizes that the subject deposition notices and subpoenas referred to herein were previously quashed.
However, the Court did so without prejudice and with the intent of allowing the parties to fully brief the issues. Thus,
this Court views the instant discovery disputes as live issues before the Court.

the scope of triable issues: Starr's participation in, and control of, Parker's defense; Starr's waiver or estoppel of coverage defenses as a result; and Starr's bad faith denial of coverage. The case issues are considerably narrowed by this order.

Similarly, Feldman was forced to try his lawsuit against Parker due to Starr's denial of coverage, and judgment was entered in that case on August 20, 2024. . . . Starr belatedly paid that judgment yesterday, issuing a check to Feldman . . . . (Liberty's [portion] was immediately paid within a couple of days of the judgment.) Starr's payment of the judgment is an admission of coverage, which it had previously denied throughout the course of the case and, more to the present issue, moots the need for discovery as to whether the policy covers the claim.

Inexplicably, Starr yesterday (unilaterally and without conferring with counsel on dates) noticed 9 depositions and issued other subpoenas. Starr is attempting to take these 9 depositions in the final 13 days of the discovery period[.][2]

. . .

The scope of Starr's discovery is well beyond the scope of the August 27 Order, and it ignores the fact that Starr has already paid the judgment, admitting coverage.

In anticipation of the August 27 Order, which would narrow the triable issues, the Court entered an order on March 6, 2024 (Dkt. 185) (the "March 6 Order") stating that discovery would extend only 40 days from the date of the Court's order on Parker's motion for partial summary judgment (Dkt. 167-68) and Starr's cross-motion. Under the March 6 Order, discovery expires on October 6, 2024. Neither the March 6 Order nor the parties (all of whom signed off on this Order that was *proposed* by Starr) contemplated simply re-opening and starting discovery over as Starr now demands. The limited 40-day period alone proves that.

---

[2] Between September 17-19, 2024, Starr filed several notices of intent to serve subpoenas. *See* Doc. Nos. [312-314],[325–326], and [331-332]. Plaintiff also noticed several depositions. *See* [315-324], [328] and [330], including the following notices of depositions and subpoenas:

1.  [324] Deposition of Attorney Reed Martz, Esq.
2.  [323] Deposition of Attorney Jim Weems
3.  [321], [322] Deposition of River & Roads Directional Drilling
4.  [328] Deposition of Ethan Parker
5.  [319] Deposition of Liberty Mutual
6.  [318], [330] Deposition of Attorney Christy Malatesta
7.  [317] Deposition of Jocelyn Knust
8.  [315] Deposition of Scott Torrez
9.  [316] Deposition of Richard Shoultz, Esq.
10. [326] Subpoena to Attorney Jim Weems (Parker's defense counsel in the Feldman lawsuit)
11. [325] Subpoena to Attorney Reed Martz, Esq.
12. [312] Subpoena to Louis G. Fey, Jr. (Parker's expert)
13. [313] Subpoena to Daniel Coker Horton Bell P.A. (Parker's defense counsel in the Feldman lawsuit)
14. [314] Subpoena to Lewis Wagner, LLP

Starr's eleventh hour, unilateral deposition notices seeking discovery well beyond the scope of the triable issues constitutes a continuing abuse of the discovery process consistent with its ongoing scorched-earth defense. Parker respectfully requests that this Court quash the notices and subpoenas and require Starr to show cause as to (a) why it is entitled to this discovery given the narrowed scope of the case, and (b) why it is entitled to unilaterally notice 9 depositions beginning just 4 days from now, on September 23, 2024, without clearing dates with counsel.

Starr attempted *none* of this discovery during the discovery period in this case, which extended from July 18, 2023 (the day of the Rule 16 conference) to March 6, 2024 (with limited exceptions for expert discovery). In other words, as the scope of the case has considerably narrowed, Starr's demand for discovery has considerably broadened.

Further, and perhaps most importantly, Starr moved for summary judgment *without* this discovery and sought a ruling based on facts to which *it stipulated*. The March 6 Order states, in relevant part, "Parker's Memorandum…sets forth certain facts as undisputed for purposes of his motion for partial summary judgment. The facts set forth are based in part on [facts]…previously presented and relied upon by Starr. Starr agrees the facts set forth in Parker's Memorandum…are undisputed and may be relied upon by the Court in ruling on Parker's motion and any cross-motion by Starr on the same issue." *See* March 6 Order, Dkt. 185, *3, ¶4. If it did not need this discovery then, Starr cannot credibly claim it needs it now. Further, this discovery is not necessary because Starr had the relevant information years ago (or had the ability to obtain the relevant information years ago). Stated another way, what Starr might hypothetically learn now is totally irrelevant to Starr's decisions it made regarding the handling of Parker's claim.

We request a conference call with the Court to address these issues consistent with the Court's CMO and local rules.

Email from Attorney Chad Welch to the undersigned's Chambers, dated 9/19/2024.

Likewise, counsel for Liberty Mutual (also "Liberty") objected to Starr's "new discovery attempts[.]" Email from Attorney Gregg A. Carraway to the undersigned's Chambers, dated 9/19/2024. Liberty asserted, via email, that the August 27 Order [298] provided that the issues to be tried relate to Starr's own conduct. *Id.* Liberty characterized Starr's recent deposition notices and subpoenas as "an abusive [and irrelevant] fishing expedition" aimed at invading Liberty's attorney-client privileges and other privileges. *Id.* Furthermore, Liberty opposed the discovery as being "last minute [and] unduly burdensome." *Id.* Liberty also objected to the unilaterally noticed

3

depositions, noting issues with timing and location. *Id.*

In response, Starr's counsel advised of its availability for a conference and objected to Parker's and Liberty's "request for affirmative relief without . . . filing an appropriate motion." Email from Attorney Walter Boone to Isaac's Chambers, dated 9/19/2024. Starr requested that any claims by the parties or action by this Court on the subject issues be made on the record. *Id.* Starr also noted that it had filed a motion for case management conference, and it invited Parker to file a response. *Id.*; *see also* Doc. No. [327], Starr's Motion for Case Management Conference.

On September 20, 2024, the undersigned held a telephonic discovery conference with the parties regarding Starr's notices of depositions, subpoenas and the Motion for Case Management Order [327]. *See* Minute Entry, dated 9/20/2024. After conferring with the parties, the Court ultimately quashed Starr's unilaterally noticed depositions and subpoenas. *See* Text-only Orders, dated 9/20/2024 (finding that Plaintiff's unilateral notice of nine depositions from 9/23/2024 through 10/4/2024 was unreasonable, and also finding that the pending subpoenas by Plaintiff to third-parties ([312-314], [325-326] and [331-332]) are quashed pending briefing and ruling on anticipated motions regarding same).

On September 23, 2024, after this Court quashed the notices of deposition and subpoenas, Starr filed a second lawsuit, naming as defendants Liberty Mutual and Daniel Coker. *See* Complaint [1] in *Starr v. Liberty Mutual, et al.*, Civil Case No. 3:24-cv-00576-CWR-ASH (S.D. Miss. Sept. 23, 2024).[3] In "the second lawsuit," excess carrier Starr filed suit against primary carrier Liberty Mutual as well as against law firm Daniel Coker for alleged breaches. Starr contends it was compelled to pay a judgment on behalf of its insured, Parker, after Liberty Mutual, wrongfully denied Feldman's workers' compensation claim, leading Feldman to sue Parker. Starr asserts

---

[3] On September 25, 2024, , Starr's second lawsuit was reassigned from District Judge Jordan to Judge Reeves *See* Order, Doc. No. [4] in Civil Action No. . 3:24-cv-00576-CWR-ASH.

equitable and contractual subrogation against Liberty and Daniel Coker. *Id.* at 1-17. Starr also alleges breach of duty to defend, negligence and gross negligence against Liberty and negligence, legal malpractice and breach of fiduciary duty against Daniel Coker. *Id.* at 18-22.

On September 24, 2024, the Court granted in part and denied in part Starr's [327] Motion for Case Management Conference. *See* Doc. [337], Order. In its Order [337], the Court determined good cause existed to extend the case deadlines set forth in the March 6, 2024 Order to permit a forty-day period of limited discovery,[4] which would commence following issuance of a ruling on the various discovery issues raised during the September 20 Telephonic Discovery Conference.

After the conference, the Court set forth a briefing schedule by which parties were to file motions for protective order and/or motions to quash related to the contested deposition notices or subpoenas, and to file their respective responses and replies to the same. Doc. [337] at 2.[5] After the Court entered its Order [337] setting forth a briefing scheduling on Starr's notices, Parker then filed several notices of deposition and notices to serve subpoenas. *See* Doc. Nos. [338 – 343]; *see also* Liberty's Joinders to Parker's deposition and subpoena notices, Doc. Nos. [344 – 349]. The undersigned, in response to emails regarding the notices filed by Parker, and in an effort to clarify

---

[4] In its Order [337], the Court noted:

> Plaintiff's prior counsel brokered an agreement between the parties which contemplated a forty-day period of limited discovery following ruling on dispositive motions and presented the same to this Court for approval. However, Starr's present counsel asserts that it was operating under a good faith belief that the forty-day limited discovery period was no longer in effect, and that the August 16, 2024 Text-only Order stayed all deadlines – not just the Pretrial Conference and Trial dates. Upon consideration, the Court f[ound] that Starr's belief, although mistaken, was reasonable.

Order, Doc. No. [337] at 2.

[5] After the Court entered its Order [337], the undersigned received several emails inquiring into the Court's expectations of briefing. As a result, the undersigned scheduled another telephonic discovery conference to clarify the Court's orders and preferences for briefing on the anticipated motions. *See* Minute Entry and Text-only Order, dated 9/25/2024. Notably, during the conference, the undersigned, while declining to enforce a strict structural outline for the impending motions, informed the parties that the Court would find it most helpful for the parties to address in their respective motions/objections related to the deposition notices and subpoenas: 1) the appropriateness and necessity of the requested relief, 2) attorney-client privilege and/or work product objections, and 3) other topics of concern related to the notices (i.e. location of the depositions, timing of depositions/subpoena, method of deposition, etc.).

the Court's Order [337], held another telephonic discovery conference. *See* Minute Entry, dated 9/25/2024 (noting the Court's preference that the anticipated motions will only be filed by the recipients of the various subpoenas or notices of depositions). During this subsequent conference, Starr objected to Parker's deposition and subpoena notices, and the Court granted Starr's *ore tenus* motion to quash. *See* Text-only Order, dated 9/25/2024 ("Consistent with this Court's previous orders . . . quash[ing] Starr's depositions and subpoenas, the Court likewise grants Plaintiff's *ore tenus* Motion to Quash Parker's Notices of Depositions [338, 340, 342-343] and Notices of Intent to Serve Subpoenas [339, 341], pending briefing and ruling on anticipated motions regarding same").

Once again, the Court set forth an expedited briefing schedule regarding all the anticipated motions on the subject notices. *Id.* The briefing period regarding the subject motions for protective order and/or motions to quash has expired, and a review of the docket reveals that the parties have complied with the schedule. All related motions are now ripe for ruling, and the Court addresses each in turn.

## I. Standard

### a. Scope of Discovery

This discovery dispute concerns the scope of discovery and the procedure by which the parties may obtain discoverable information. This Court has broad discretion over both. *See Hernandez v. Causey*, 2020 WL 5412486, at *3 (S.D. Miss. Sept. 9, 2020) (quoting *Freeman v. United States*, 566 F.3d 326, 341 (5th Cir. 2009) ([i]t is well established that the scope of discovery is within the sound discretion of the trial court.")); *See also Saucier v. Lakeview Corp.*, 2014 WL 12906612, at *1 (S.D. Miss. Dec. 30, 2014) ("[a] district court has "broad discretion" to control the procedure for obtaining discoverable material.").

Indeed, "[d]iscovery is not a license for the [parties] to 'go fishing' and is limited to information that 'is relevant to any party's claim or defense.'" *Barnes v. Tumlinson*, 597 Fed. App'x 798, 799 (5th Cir. 2015) (citing *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978); Fed. R. Civ. P. 26(b)(1)). "Finding a just and appropriate balance in the discovery process" is thus one of the Court's key responsibilities. *Willis v. City of Hattiesburg*, No. 2:14-cv-89-KS-MTP, 2016 U.S. Dist. LEXIS 30985, 2016 WL 918038, at *2 (S.D. Miss. Mar. 10, 2016).

Rule 26(b)(1) provides that information is within the scope of discovery, if it is not privileged, relevant, and proportional to the needs of the case:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Even more, "under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the proposed discovery is outside of the scope permitted under Rule 26(b)(1).'" *Id.* at *2 (citing Fed. R. Civ. P. 26(b)(2)(C)).

Pursuant to Rule 26(b)(3):

> [A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discoverable if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial equivalent by any other means.

Fed. R. Civ. P. 26(b)(3). Rule 26(b)(3) further provides that if the court orders discovery of the

material described above, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). By operation of the Rule, a party cannot obtain counsel's work product unless it shows a substantial need of the materials to prepare its case, and that it cannot obtain the substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A).

      b.  <u>Protective Orders</u>

Meanwhile, Rule 26(c) empowers the Court to control the procedure for obtaining discoverable information. *Saucier*, 2014 WL 12906612, at *1. Rule 26(c) of the Federal Rules of Civil Procedure governs the issuance of Protective Orders in discovery. The pertinent portion of Rule 26(c) provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending – or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. . . .

Fed. R. Civ. P. 26 (c). As noted in the rule, an order of protection requires the moving party to establish *good cause* that such an order will protect the party from annoyance, embarrassment, oppression, or undue burden or expense. *Id*. (emphasis added). "The party seeking the protective order bears the burden to show 'the necessity of its issuance, which contemplates a particular and specific demonstration of fact[.]'" *Vertex Aerospace, LLC v. Womble Bond Dickinson, LLP*, No. 3:09-cv-00704-HTW-LGI, 2022 WL 1908911, at *2 (S.D. Miss. Apr. 26, 2022) (quoting *Cazaubon v. MR Precious Metals*, LLC, 14-2241, 2015 U.S. Dist. LEXIS 107923, 2015 WL 4937888, at *2 (E.D. La. Aug. 17, 2015) (citation omitted)). "The trial court enjoys wide discretion in setting the parameters of a protective order." *Id*. (quoting *Seattle Times Co. v. Rhinehart*, 467

U.S. 20, 36, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984) ("To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."). "Rule 26(c)(1) requires a certification that the moving party has conferred or attempted to confer in good faith with the other affected party to attempt to resolve the issue without the court's interference." *Id*. (citing Fed. R. Civ. P. 26(c)(1)).

c.   Discovery of Counsel/Attorney-Client Privilege

The Federal Rules of Civil Procedure do not specifically prohibit taking the deposition of counsel. *See* Fed.R.Civ.P. 30(a) ("any party may take the testimony of any person"). However, it is a practice that has long been discouraged as disruptive of the adversarial system and one which lowers the standards of the profession. *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). Generally, depositions of opposing counsel are disfavored and should be permitted in only limited circumstances. *Nguyen v. Excel Corp.*,197 F.3d 200, 209-211 (5th Cir. 1999). For good cause shown, a district court may order that discovery be had by a method other than that selected by the party seeking. Moreover, in the case of *Shelton*, 805 F.2d 1323, the Eighth Circuit found that a party should not be allowed to depose opposing counsel unless (1) no other means exist to obtain the information, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case. The 5th Circuit affirmed the application of these factors in *Nguyen v. Excel* Corp., 197 F.3d 200 (5th Cir. 1999).

"In Mississippi, the attorney-client privilege is defined as the client's right to refuse to disclose and prevent others from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client. . . ." *Doherty v. Shelter Mut. Ins. Co.*, No. 2:19-CV-1-KS-MTP, 2020 WL 1867992, at *1 (S.D. Miss. Apr. 14, 2020) (quoting Miss. R. Evid. 502(d)(internal quotations omitted)). The purpose of the attorney-client privilege is

9

to encourage full and frank communication between attorneys and their clients and thereby to promote broader public interests in the observance of law and administration of justice. *Id.* (Citations omitted).

The attorney-client privilege "was intended as a shield, not a sword." *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir.1989) (quoting *Pitney–Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 446 (S.D.Fla.1980)). "[W]hen confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege." *Conkling*, 883 F.2d at 434 (quoting *United States v. Mierzwicki*, 500 F.Supp. 1331, 1335 (D.Md.1980)). The privilege is waived when a litigant "place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Conkling*, 883 F.2d at 434 (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975)). Waiver of privilege requires an affirmative act to put the advice of counsel at issue. *Itron*, 883 F.3d at 561 n. 6. A party waives its attorney-client privilege where it "specifically pleads reliance on legal advice" to support an element of a claim or defense. *Id.* at 556 (finding no waiver and prohibiting discovery into counsel's advice about reasonableness of settlement of underlying breach of contract action).

> d. <u>Corporate Depositions</u>

Further, "Rule 30(b)(6) allows parties to obtain testimony from a corporation, provided the party describes with reasonable particularity the matters for examination." *Vertex Aerospace, LLC* at *1. (Citation omitted). The Fifth Circuit explained that

> the deponent must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters. [T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was

> personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.

*Id.* (citing *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (internal quotations and citations omitted).

Rule 37 provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond" and it authorizes the Court to issue an Order compelling the production of such information. Fed. R. Civ. P. 37(a)(4).

 e. <u>Quashing a Subpoena</u>

Pursuant to Rule 45(d) of the Federal Rules of Civil Procedure, "the court for the district where compliance is required, must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed.R.Civ.P. 26(b)(3)(A). In order for a document to be protected by the work-product doctrine, "litigation need not necessarily be imminent . . . as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *BancInsure, Inc.*, Civil Action No. 3:11CV78-TSL-MTP, 2012 WL 139208, at *3 (S.D. Miss. Jan. 18, 2012) (*United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir.1981). However, the work-product doctrine does not apply to documents prepared in the ordinary course of business. *Id.* (Citation omitted). Moreover, materials protected by the work-product doctrine "may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

*Id.*

## II.    Argument

### a.    Motions to Quash and/or for Protective Order re: Starr's Notices

#### i.    Ethan Parker's Motion [357]

Parker moves this Court to quash the notices of deposition and subpoenas and/or for a protective order regarding the subject discovery sought by Starr. *See* Doc. [357], Motion to Quash and/or for Protective Order. Respondents Daniel Coker Horton and Bell, P.A., Jim Weems, Esq. and Christy V. Malatesta, Esq. join in Parker's [357] Motion to Quash. *See* Joinder, Doc. [360]. Defendant Liberty Mutual also joins in Parker's [357] motion and [358] memorandum. *See* Joinder, Doc. [369] (specifically deferring to Parker's objections to the subpoena and joining in the arguments and authorities presented by Parker regarding the discovery to Daniel Coker, Malatesta and Weems).

In his briefing, Parker essentially sets forth the same arguments raised in his email to this Court on September 19, 2024, wherein Parker's counsel questioned the timing of the nine depositions and five subpoenas and contested the relevancy and necessity of the discovery requests. Parker now urges this Court to deny Starr the requested depositions and proposed subpoenas. He moves this Court to deny the subject discovery, arguing that it is (a) incompatible with Starr's admission of coverage through payment of the judgment; (b) beyond the scope of the August 27 Order;[6] (c) inconsistent and incompatible with the scope of the jointly proposed March 6 Order; (d) an abrogation of Starr's March 6 stipulation to the facts upon which coverage would be decided; (e) invasive and violative of Parker's privileges; (f) untimely; and (g) overbroad and

---

[6] *See* Order, Doc. [298] (denying [167] Parker's Motion for Partial Summary Judgment; denying [190] Starr's Cross-Motion for Partial Summary Judgment on Counts II and III of its Amended Complaint; denying [203] Liberty Mutual's Motion for Partial Summary Judgment; denying [212] Starr's Motion for Summary Judgment on Parker's Affirmative Defenses and Counterclaims; and denying [285] Starr's Motion for Oral Argument).

beyond the scope of permissible discovery." *Id.* at 6.

Parker accuses Starr of attempting to expand discovery beyond the limitations agreed upon by the parties in the March 6 order – essentially reneging on the parties' prior agreements. He points out that at the time of the order, Starr had only noticed the depositions of Parker, Scott Torrez, Liberty Mutual and River & Roads. *Id.* at 12. Parker also states that despite the March 6 Order, the August 27 Order, and Starr's payment of the judgment in the underlying Feldman case, Starr never attempted the subject discovery during the eight-month discovery period preceding the judgment. *Id.* at 8. Parker also argues that Starr did not attempt to depose his lawyers, obtain the lawyers' files or attempt to discover the contents of his expert's file, until after it "was compelled" to pay the Feldman judgment on behalf of its insured. *Id.* at 8-9.

Parker contends Starr is not entitled to the discovery it now seeks. He characterizes Starr's discovery requests as a fishing expedition to "uncover any information to weave a *post hoc* narrative" to be used by Starr as justification for its conduct. *Id.* He defers to the March 6 Order to support his averment that the parties and the Court intended an extremely compressed discovery period after the Court entered its ruling(s) on the dispositive motions. *Id.* at 11-12. Parker asserts the March 6 Order neither contemplated complex discovery issues regarding privilege nor provided for expansive, new discovery developments. *Id.* at 12; *see also id*. at 5.

Parker wholly opposes Starr's attempt to now depose lawyers Weems and Malatesta and to obtain information via subpoena from Daniel Coker's client files and the file of Parker's retained expert (Louis G. Fey, Jr.). He submits that Starr's requests are "both unusual and extraordinary and implicates all sorts of issues relating to attorney-client and work-product privileges." *Id.* at 12. He challenges the notices of deposition and subpoenas as "attempt[s] to invade the attorney-client privilege and work product doctrine[,]" which he avers have not been waived. *Id.* at 15-16. Parker

argues that Starr cannot overcome "the heavy burden to show this disfavored discovery is warranted." *Id.* at 17.

He also asserts Starr cannot satisfy the three-prong test set forth in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1328 (8th Cir. 1986) and adopted by the Fifth Circuit in *Nguyen v. Excel Corp.*, 197 F.3d 200, 210 (5th Cir. 1999). Parker responds to each prong of the test, arguing against Starr's satisfaction of the factors, as follows: 1) other means exist to obtain the information sought - Starr already has the information needed in its own file, and also asserting that Starr can review its own claims file, production of documents and held-back privileged documents; 2) the information sought is relevant and/or it is not privileged – Parker contends the information sought is not relevant and is "unquestionably privileged;"[7] 3) the information sought is crucial to preparation of the case – None of the information sought is relevant and will not be in issue, as the triable issues of fact focus on Starr's own conduct. *Id.*

This Defendant also argues that an unlimited deposition of Parker will not yield relevant or admissible information, as he contends the focus is now on Starr's conduct. *Id.* at 11. Parker avers Starr's stipulation of material facts on coverage moots any right to additional discovery on coverage facts. *Id.* at 13. He requests an order limiting his deposition to damages only, as he declares Starr's payment of the judgment serves as an admission of coverage and a duty to indemnify under the policy. *Id.* at 8-9, 15. In other words, Parker asserts liability is admitted and no longer a triable issue for this Court. *Id.* Parker now moves this Court for protection, asking that the Court quash Starr's "broad and expansive discovery" as disproportionate to the needs of the case. *Id.* at 21-24.

Starr responds in opposition, contending that it is in fact entitled to the "reasonable"

---

[7] Parker points to Starr's second lawsuit, claiming Starr admits the privilege still exists between Parker and Daniel Coker. *Id.* at 18 (quoting Complaint, Doc. [1] at ¶ 38 in Case No. No. 3:24-cv-576-DPJ-ASH).

discovery it seeks, including a full deposition of Parker, the document subpoena to Daniel Coker, the depositions of Weems and Malatesta, and the narrowly crafted subpoena for the file of Fey (Parker's expert). Doc. [382] at 2; *see also* Starr's Responses in Opposition to Liberty Mutual's and Respondents' Joinders in Parker's [357], [358] Motion to Quash, Docs. [394] and [395], respectively.[8] Starr contends that it can only obtain the discovery sought from the persons and/or entities noticed for deposition or requests for subpoena. *Id.* Starr asserts such discovery is critical.

Specifically, Starr states it must be permitted to explore the same types of questions that it has been presented. Starr first points to Parker's deposition of its claims handler, Paul Zatopek,[9] asserting that Starr must be permitted to ask Parker and his lawyers questions such as:

> When you learned about the defense, did you say "[w]ait a minute" or did you already know? Did you "realize this was an issue because Liberty is certainly taking the opposite position"? Did you consider "rais[ing] defenses of workers' comp immunity"? Why not? What were you told by Liberty about the prospect of such a defense? Were you told by Liberty not to assert the defense? Was the workers compensation defense ever "waived" or could it have been asserted later when you did know?

*Id.* at 4.

Starr argues because Parker placed his counsel's knowledge squarely in issue, Starr should not be denied reasonable attempts to discover said knowledge now. *Id.* Starr contends it must be permitted discovery on the same fact question pled by Parker and raised by the Court – whether Starr controlled Parker's defense, such that estoppel applies. *Id.* Thus, it urges this Court to allow its questions to Parker's lawyers and to Liberty and its adjusters, including such questions as: "Did

---

[8] Of note, Starr also filed Motions for Leave to File Documents Under Seal [379], [397], seeking to file multiple motions, responses, and related memoranda regarding the subject discovery motions, which attached (redacted versions) or referenced privileged and/or confidential information or exhibits. The undersigned reserves ruling on all motions to file documents under seal and instead relies on the parties' unredacted versions (submitted for *in camera* review) for understanding and purposes of drafting the instant order. *See also* Parker's Motion for Leave to File Sealed Document [400]; Liberty's Motion for Leave to File Document Restricted from Public [409], [419].

[9] Starr also notes questions posed by Parker's counsel to Deponent Zatopek at Exhibit 1 of Starr's Memorandum. *See* Doc. [382] at 3 (deposition testimony redacted in filed copy).

Starr 'direct the state-court litigation' or did Liberty? Did the lawyers answer to Starr or Liberty? If Starr controlled the defense as Parker suggests, why did Liberty or counsel not assert the exclusivity defense?" *Id.*

Further, Starr argues that the Court's August 27 Order made a finding of factual dispute on Parker's estoppel claim, which also means the issue will be tried. *Id.* at 5. Thus, it argues even if estoppel was the only remaining claim for Parker, Starr is still entitled to discover "whether and to what extent those actions prejudiced Parker, whether they caused his damage, how Parker was damaged by those actions, and/or whether there are others who proximately caused some or all of Parker's damages." *Id.*   Starr argues that this Court, in its August 27 Order recognized that Starr's questions regarding the fault of others are for the jury to determine, so it submits that Starr is also entitled to ask Parker's lawyers,

> [W]hether they knew of the conflict which Parker alleges, whether they considered independent counsel for Parker, whether they knew of the exclusivity defense, why they failed to assert it, and whether their failures could have been cured prior to trial. In short, was Parker's alleged prejudice and damage caused by Starr, as Parker alleges, or someone else? Likewise, Starr is entitled to discover what information about course and scope Liberty provided to Parker's lawyers, whether Liberty told, or the lawyers knew, that Feldman's claims were initially covered by workers' compensation, whether Liberty told, or the lawyers knew, that there was some question about whether Parker and Feldman were in the course and scope.

*Id.* at 6.

In addition to Starr's request for its turn to pose the same types of questions previously raised to Starr, it also opposes the limitations Defendants attempt to place on Starr's entitlement to discovery. *Id.* Starr contends Parker and Liberty misread and misinterpreted the Court's orders regarding the triable issues in this case. *Id.* at 7. It argues Parker's eleven-count counterclaim, proximate cause and damages are all alive and will be tried, and therefore, it argues Starr is also entitled to ask Parker the same questions that Parker posed to Sweeney during deposition, as it

pertains to Liberty and its lawyers. *Id.* at 10. And it challenges the opposition to the document subpoenas to Daniel Coker and Fey and the deposition notices to Weems and Malatesta.

Starr argues the Daniel Coker subpoena and lawyer depositions are also appropriate and necessary. *Id.* at 11. It first claims the lawyers, although legal counsel, are not counsel of record in the instant action but are witnesses "likely to have discoverable information" and "documents." *Id.* It points out that Parker disclosed Weems as "an expert to 'solicit opinions' relating to the underlying case[.] . . ." *Id.* Starr argues Parker designated Weems as a lay witness and also turned over Weems's file ("the Daniel Coker file") to his liability expert, Fey, who relied upon the Daniel Coker file to render his opinions against Starr. *Id.* at 12. Although Starr contends the Daniel Coker attorneys are not "counsel of record," it looks to the *Shelton* factors to further support its contention that is must be permitted to depose Weems and Malatesta. *Id.* at 13. Starr claims it cannot obtain the testimony or documents anywhere else, that the information regarding defenses raised on Parker's behalf is relevant and not privileged, and that the information sought is crucial to the case. *Id.* at 13-15.

Finally, Starr urges this Court to allow its subpoenas to Daniel Coker and Fey, arguing that both are appropriate and necessary. Starr asserts that Parker now opposes the subpoenas, but that he initially agreed. Starr points out that Parker agreed "not to object to [the] subpoena for the Daniel Coker file up to the date when Starr announced its conflict of interest through its reservation of rights letter on March 28, 2023." *Id.* at 15 (quoting an email from Parker's counsel, Heidelberg, to Starr's counsel Jennifer Skipper and River and Roads' counsel Michael Baxter, dated 9/16/2024, attached as Exhibit 12 to Doc. [381]). And Starr asserts that Parker promised to accept service of the subpoena on behalf of Fey and also produce the expert's file, but that he later reneged. *Id.* Starr moves to compel Parker to "honor his promise." *Id.* It contends that the subpoenas are narrowly

tailored, and that Parker is obligated under Rule 26(a)(2)(B) to disclose the information on behalf of his expert. *Id.*

Starr also argues that attorney-client privilege does not prevent Starr from deposing Parker, Weems or Malatesta, or from obtaining documents from Daniel Coker. *Id.* Starr suggests that documents can be produced and protected from disclosure subject to the protective order. *Id.* at 16-17. Moreover, Starr argues that Parker has waived privilege as to Starr, because he voluntarily disclosed "reams" of privileged communications between Parker, his counsel and his insurers, and that Liberty has produced, with Parker's consent, communications between Daniel Coker and Liberty. *Id.* at 17-18.  As such, Starr argues that Parker's voluntary disclosure of the privileged communications to Starr amounts to waiver of his attorney-client privilege. *Id.* at 18. And Starr contends that Parker disclosed his lawyers as fact witnesses in possession of documents relating to his claims. *Id.* at 18-19. Therefore, Starr says it must be able to question Parker's lawyers as to Parker's contention that Starr controlled Parker's defense. *Id.* at 19-20.

Plaintiff avers that it does not seek this discovery to prosecute any other case, but merely to defend this one. It contends the March 6 Order did not limit any party to discovery of any additional facts. *Id.* at 8. Indeed, Starr asserts it is entitled to Parker's full deposition – not limited to damages only. *Id.* at 9. Starr complains that Parker has not produced a single document and has not responded substantively to any interrogatories. *Id.* Without this information, Starr claims it would be prejudiced, as it would have no information as to Parker's anticipated trial testimony. *Id.* at 10.

Parker replies, essentially reasserting the arguments previously raised in his initial motion to quash and/or for protective order and challenging Starr's claims that Parker agreed, but then reneged, on certain agreements regarding requested discovery. *See* Parker's Reply in Support of

Motion to Quash and/or for Protective Order, Doc. [410]. Parker argues he merely suggested compromises to the discovery disputes. *Id.* at 4. Parker acknowledges that he agreed to production of the Daniel Coker file through a date certain, on the condition that Starr would agree no privilege was waived; however, Parker avers that this agreement was made before Parker learned of Starr's second lawsuit and its plans to depose all the lawyers. *Id.* Parker asserts he will not voluntarily produce the Daniel Coker file, and he argues that he should not be punished for his earlier good faith efforts to resolve discovery disputes with Starr. *Id.* at 12. According to Parker, he has no obligation to oblige Starr's "new claims that invade every privilege" now that Starr's last-minute strategy change and true intention to sue Liberty and Daniel Coker in a separate lawsuit has been revealed. *Id.* at 4-5, 8-9 (citing the second lawsuit, *see supra*). Parker argues Starr's filing of the second lawsuit changes the dynamic, and he anticipates that Starr will seek the same information it currently seeks in its second lawsuit. *Id.* at 12.

Parker also challenges Starr's claims that it is entitled to lawyer discovery just because Parker identifies the lawyers in his initial disclosures. *Id.* Rather, Parker contends he has not waived any privilege, made any concessions or subjected his lawyers to invasive and irrelevant discovery. Parker also contends that he previously informed Starr's counsel that he would not be calling any of his attorneys as witnesses at trial, and Starr's omission of this information is a misrepresentation to the Court. *Id.* at 13 (citing to a letter from Attorney Welch to Attorney Boone, dated 10/2/2024, wherein counsel states, "we do not intend to call any of Mr. Parker's attorneys as witnesses, even if we previously identified them in discovery. Moreover, this is consistent with our overarching belief that no attorney discovery should occur in this lawsuit.").

Moreover, Parker argues that the August 27 Order and Starr's admission of coverage narrowed the triable issues in this case. *Id.* at 5. Even more, Parker notes that expert discovery has

ended and Daubert motions were filed long ago. *Id.* Parker says Starr has failed to show why it did not initially pursue the subject discovery earlier in litigation. *Id.* He urges this Court to deny the requested discovery, yet again asserting that the discovery expands beyond the March 6 Order, is burdensome, invasive, "eleventh-hour", and nothing more than a fishing expedition. *Id.* at 2. Parker argues Starr's current discovery demands create more discovery disputes rather than permit resolution, as anticipated by the March 6 Order.

Further, Parker argues that Starr's belated comparative fault and causation arguments do not support Starr's "newfound strategy shift." *Id.* at 7. On this issue, Parker summarily contends:

> [S]tarr's insistence on expansive and invasive discovery to shore up its comparative fault and/or causation defenses is meritless for at least five independent reasons: (i) Starr admitted coverage by paying the excess judgment against Parker – thus, it is liable to Parker in contract; (ii) the August 27 Order states the triable issue is on estoppel—which implicates Starr's conduct only—and to which 'comparative fault' is not a defense; (iii) Starr did not raise a comparative fault claim in its operative complaint, so it waived the right to pursue it; (iv) even assuming Starr can pursue the "fault" defense, it does not matter why the workers compensation defense was not raised in the Feldman case but only that the defense was not raised; and (v) [*In re Itron, Inc.*, 883 F.3d 553, 556 (5th Cir. 2018)][10] prevents lawyer discovery into issues of comparative fault (even where it might apply).

Parker's Reply in Support of Motion to Quash and/or for Protective Order, Doc. [410] at 7. Parker argues that his claims against Starr do not constitute waiver of privilege or puts privilege at issue. *Id.* at 11. Thus, he requests that this Court quash the subpoenas and enter a protective order limiting the discovery that may occur at this point.

**<u>COURT'S FINDINGS</u>**:

    a.  <u>Deposition of Parker</u>

Parker moves this Court to quash the deposition notices and subpoenas and/or for a protective order. He relies heavily on the assertion that such expansive discovery was not

---

[10] Parker states under *Itron*, "why Parker's lawyers did not raise [a workers' compensation] defense does not matter and is not discoverable to support." Doc. [410] at 11.

contemplated at this late juncture in litigation and is also beyond the scope of Judge Reeves's August 27 Order. This Court previously entered the parties' proposed discovery order, which temporarily stayed discovery and, on its face, contemplated conducting limited discovery following the district judge's ruling on the parties' various dispositive motions. *See* March 6 Order, Doc. [185]. Following Judge Reeves's August 27 Order, Parker urges the Court to limit the scope of his deposition to damages only, as Starr's conduct is the focus. This Court declines to do so.

A review of the docket and email exhibits reveal that Starr noticed Parker's deposition prior to the March 6 Order, and no evidence has been presented to indicate that the parties agreed to limit Parker's deposition prior to or at the time of the March 6 Order. Rule 26(b)(1) permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Notably, such information within the scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). This Court finds that Parker's deposition as to causation/liability and prejudice/damages, is relevant to Starr's defense of Parker's counterclaim and is proportional to the needs of the case. Parker has not shown that his deposition should be limited under Rule 26(b)(2)(C), nor has Parker established good cause for an order limiting his deposition to questions of damages only. Parker is not only a defendant to this action but he has also affirmatively brought counterclaims against Starr. Therefore, he is subject to deposition questions on all relevant and non-privileged information, specifically that related to causation/liability and prejudice/damages. Parker's Motion to Quash and for Protective Order limiting his deposition is hereby DENIED.

b.  <u>Depositions of Weems and Malatesta</u>

Parker also moves to quash the depositions of his attorneys in the underlying Feldman action, Weems and Malatesta. He argues that this discovery is unusual and extraordinary and

attempts to invade the attorney-client privilege and work product doctrine, which he has not waived. Starr, on one hand, claims attorney-client privilege does not prevent it from deposing Weems or Malatesta, and on the other hand, argues that Parker waived privilege by voluntarily disclosing and producing communications between Parker, his counsel and his insurers, and that Liberty has produced communications from Weems, Malatesta, and Daniel Coker, with Parker's consent. Also, Starr contends that Parker disclosed his lawyers as fact witnesses in possession of documents relating to his claims, and therefore, Starr must be able to question Parker's lawyers. Starr asserts it is entitled to question Weems and Malatesta, as Parker has specifically placed at issue the attorney-client relationship.

Here, Starr claims it cannot obtain the testimony or documents anywhere else, that the information regarding defenses raised on Parker's behalf is relevant and not privileged, and that the information sought is crucial to the case. Starr also claims it needs to depose Weems and Malatesta in preparation for the trial in this matter. Parker avers that he previously informed Starr's counsel that he would not be calling any of his attorneys as witnesses at trial.

To invoke the attorney-client privilege, Parker must establish that his communications with Weems and Malatesta were for the purpose of seeking or rendering legal advice. *BancInsure, Inc. v. Peoples Bank of the S.*, No. 3:11CV78-TSL-MTP, 2012 WL 139208, at *1–2 (S.D. Miss. Jan. 18, 2012) (citing *Buford v. Holladay*, 133 F.R.D 487, 491 (S.D.Miss.1990).

It is apparent that Starr, Parker and Liberty exchanged claims file information, which contained communications and/notes from Parker's counsel handling the underlying workers compensation case, Liberty's adjusters and Starr's adjusters. The Court, however, is not convinced that the mutual disclosure of claims file information suffices as waiver of attorney-client privilege. Indeed, Parker has identified his lawyers as having knowledge of the case, which establishes the

existence of relevant information (albeit that identification was subsequently withdrawn through correspondence with Starr's counsel). However, this does not demonstrate that privilege has been waived and does not necessitate allowing discovery in the manner requested by Starr. This Court finds that the requested depositions should not be allowed, because other means exist to obtain any relevant and non-privileged information sought.

While this Court finds that the depositions of Weems and Malatesta are inappropriate, it does however, believe that Starr is entitled to some discovery regarding Parker's assertion that Starr controlled Parker's defense in the underlying claim. This Court permits Starr to seek the information sought through written discovery requests to Parker. Starr may propound no more than five (5) interrogatories to Parker, narrowly tailored to the information it seeks regarding Parker's assertion that Starr controlled Parker's defense in the underlying claim.[11] Starr is to serve the interrogatories within seven (7) days of this order, and the responses are due within fourteen (14) days of receipt.  Parties are also ordered to confer regarding any topic or requests that garner an objection. Additionally, Parker is ordered to produce the portion of the Daniel Coker file, from inception through March 28, 2023, the date when Starr announced its conflict of interest through its reservation of rights letter, within seven (7) days of this order.

The Court GRANTS Parker's Motion to Quash and for Protective Order as to the depositions of Weems and Malatesta. However, the Court will allow limited written discovery requests to be propounded upon Parker by Starr, in the manner set forth above. Additionally, Parker is ordered to produce the pertinent portion of the Daniel Coker file, as set forth above.

---

[11] The Court directs Starr to the questions posed in its responsive briefing for guidance as to the potential subject matters of the limited interrogatory set: "Did Starr 'direct the state-court litigation' or did Liberty? Did the lawyers answer to Starr or Liberty? If Starr controlled the defense as Parker suggests, why did Liberty or counsel not assert the exclusivity defense?" Doc. [382] at 4.

c.    Subpoena to Parker's Expert, Louis G. Fey, Jr.

Starr argues that the subpoena to Fey is appropriate and necessary. It points out that Parker previously promised to accept service of the subpoena on behalf of Fey and also to produce Fey's expert file. And it now moves to compel this information.

The Court finds that Fey's expert file is subject to disclosure, as the information sought is relevant and proportional to the needs of the case. Moreover, Parker previously identified the Daniel Coker file, or certain portions thereof, as being relied upon by Fey. He agreed "to provide a list of information provided to our expert, Lou Fey, as well as documents provided to him that you do not have access to." Doc. [392-2]. Though, Parker has withdrawn his agreement to voluntarily participate in "limited discovery," this Court will compel production of the information previously identified by Parker.

Parker's Motion to Quash the Subpoena to Louis Fey is hereby GRANTED in part and DENIED in part. The Court finds that, as a party to this action, Parker is better suited to provide the requested information sought from Fey. Thus, the Court orders that Parker produce Fey's expert file, including (1) a list of documents provided by Parker, Daniel Coker or others to Fey, and (2) the corresponding documents provided to Fey. Parker is ordered to produce Fey's expert file, in accordance with the foregoing, within fourteen (14) days of this Court's Order.

Parker's Motion to Quash or for Protective Order [357] as to the subpoena to Fey is hereby GRANTED in part and DENIED in part, in accordance with the Court's rulings above.

### ii.    **Daniel Coker's Motion**

Third-party Respondents Daniel Coker, Attorney Jim Weems and Attorney Christy Malatesta ("Respondents") file a Motion to Quash Subpoenas or for Protective Order. *See* Doc. [359]. Defendant Parker joins in their Motion. *See* Doc. [360]. Respondents vehemently oppose

Starr's document and deposition subpoenas[12] as "extremely broad" and assert that the subpoenas seek all of Respondents' file materials and communications concerning Daniel Coker's representation of Parker in the underlying litigation. Doc. [359] at 3, 7. Respondents note that Starr paid the Feldman judgment and shortly thereafter filed a new lawsuit against Defendant Liberty and Respondent Daniel Coker, alleging attorney malpractice and equitable subrogation for Liberty and Daniel Coker's failure to assert workers' compensation related affirmative defenses on Parker's behalf. *Id.* at 3-4. Respondents argue Starr is now improperly using the instant action as a means to conduct discovery to "engineer a basis for its new lawsuit[,]" wherein it seeks to recoup from Liberty and Daniel Coker the payment for the Feldman judgment. *Id.* at 4.

Respondents object to the subpoenas, arguing that they improperly seek information protected from disclosure by attorney-client privilege. *Id.* They contend the privilege belongs to Parker, who has not waived, so therefore, they are obligated to defend his privilege. *Id.* These Respondents – like Defendant Parker – also rely on *Itron* for the proposition that subpoenas directed to lawyers are improper not only because they seek privileged information but also because they seek irrelevant information. *Id.* at 5.

Respondents contend the subject subpoenas are overly broad, unduly burdensome and exceed the boundaries of permissible discovery. *Id.* at 6. They also contend the subpoenas seek information that is otherwise irrelevant, as the Court's August 27 Order (denying Starr summary judgment motion because of a factual dispute as to Parker's estoppel claim) renders moot Starr's contentions about policy exclusion. *Id.* at 8. Respondents argue the finding makes discovery about Respondents' subjective thought process and strategy in defending Parker "wholly irrelevant." *Id.* Additionally, Respondents contend the documents and testimony sought would be best resolved

---

[12] *See* Docs. [312-314], [318], [326] , [330], and [331].

by the parties to this action, and there is no need to seek the information from them. *Id.* Even more, Respondents challenge the breadth of the subpoenas and the burden imposed on them by the subpoenas. *Id.*

Respondents argue that Rule 45 subpoenas are not intended to circumvent the regular discovery process or shift litigation costs onto a non-party. *Id.* at 6-7. They move this Court to quash the subpoenas to Daniel Coker, Weems, and Malatesta and enter a protective order, or alternatively to limit the subpoenas to lessen the burden on Respondents. If the subpoenas are not quashed, Respondents move for a substantial extension of time to conduct a privilege review and also for reasonable and necessary fees associated with the "laborious and time consuming" efforts undoubtedly required to fulfill the subpoena requests. *Id.* at 9-10.

Starr responds in opposition and reincorporates the arguments and authority it raised in response to Parker's Motion to Quash and for Protective order, which this Court summarized above. *See* Doc. [392], Starr's Motion in Opposition.[13] Plaintiff contends the fact discovery sought is both appropriate and necessary here, because Parker placed certain facts at issue. *Id.* at 3. It also contends the information is relevant, as it forms the basis for Parker's bad faith claim against Starr. *Id.* at 8. Starr argues that Respondents' objections are without basis because the fact discovery sought is narrowly tailored, reasonable and was, in part, previously agreed to by Parker's counsel. *Id.* Starr avers that it provided a draft of the Daniel Coker subpoena to Parker's counsel, who previously promised "not to object . . . up to the date when Starr announced its conflict of interest through its reservation of rights letter on March 28, 2023." Doc. [393] at 2 (quoting Doc. [392-2].[14] Email from Parker's counsel to Starr's counsel, dated September 16, 2024). Starr argues that

---

[13] *See also* Starr's Response in Opposition [395] to Respondent's Joinder [360] Parker's Motion for Protective Order and to Quash.

[14] The pertinent portion of Heidelberg's email to Starr and River and Road's counsel provided:

26

Parker now reneges on its agreement, and that the Respondents follow suit. *Id.* at 2. But it challenges the objections, arguing there is no basis for the objections now, because Parker placed his counsel at issue in this litigation, no privilege objection exists as to Starr, and even if there were such privilege, Parker has since waived the privilege and binds the Respondents. *Id.* at 2-3, 9.

Further, Starr asserts that it seeks no privileged or protected information. *Id.* Starr states that Parker, Liberty and Starr all produced to one another their claims files and correspondence related to the defense of the underlying Feldman lawsuit, which contained communications to and from Malatesta, Weems, and Daniel Coker and also communications between Parker and Liberty. *Id.* Starr notes that all communications were produced under protective order. *Id.* at 3-4.

Starr argues that information from Weems, Malatesta and Daniel Coker is not protected from Starr and should be produced, as it contends Parker has already voluntarily produced communications, "effectively waiv[ing] the privilege" *Id.* at 4 (citation omitted). Secondly, Starr contends Parker disclosed and designated his lawyers as lay opinion and expert witnesses in his Initial Disclosures, his responses to Liberty Mutual's interrogatory requests, and his Designation

---

Addressing your letter to us as Parker's counsel dated August 15, 2024, demanding many categories of discovery from Parker under threat of motion to compel -- at a time when discovery was stayed -- we will agree to some limited discovery to be conducted during the discovery period:

1. We will make Ethan Parker available for a deposition on damages during the present discovery period, on or before October 6, 2024.

2. We will agree to provide a list of information provided to our expert, Lou Fey, as well as documents provided to him that you do not have access to.

3. We will not object to your subpoena for the Daniel Coker file up to the date when Starr announced its conflict of interest through its reservation of rights letter on March 28, 2023.

These concessions on discovery shall not be construed as a general waiver of the attorney client privilege, nor as an agreement to extend the present discovery period, nor as an agreement that any of Starr's belated discovery demands seek relevant or discoverable information. Rather, we maintain the right to object to the many of the categories of discovery you purportedly seek on grounds of relevance, particularly in light of the rulings in the Court's order of August 27, 2024, which limit the scope of the case considerably.

Doc. [392-2].

of Expert Witnesses. *Id.*; *see* Docs. [392-4] – [392-7], attached as exhibits to Starr's Motion [392]. "Because Parker's entire argument that Starr controlled Parker's defense hinges upon the knowledge and testimony of Parker's lawyers . . . Parker has specifically placed at issue the attorney-client relationship." *Id.* at 6. Thus, Starr says there is no doubt that it is entitled to discover and disprove those claims from those same lawyers. *Id.* Third, Starr contends Parker's lawyers are not counsel of record in this case. *Id.* at 6-7. Rather, they are fact witnesses in the underlying case, who are likely to have discoverable information and documents. *Id.* at 7. Starr also demands the Daniel Coker File containing Weems's knowledge and opinions that Parker found so critical that he turned it over to his liability expert to rely upon when tendering that expert's own opinion. *Id.*

Starr submits that Parker has the burden to prove Starr's conduct prejudiced Parker and proximately cause his damages. *Id.* at 9. Starr states it is critical that this Court permit it to discover information from Respondents regarding the exclusivity defense. *Id.* Starr contends even if the subject discovery is burdensome, as asserted by Respondents, it is reasonable and important to the litigation, and should be permitted because Starr has demonstrated a need for it. *Id.* at 10. Plaintiff urges this Court to deny Respondents' motion.

Respondents file no reply.

**COURT'S FINDINGS:**

Respondents object to the subpoenas to Daniel Coker, Weems and Malatesta, arguing that Starr improperly seeks information protected from disclosure by attorney-client privilege. They contend the privilege belongs to Parker, and since he has not waived, they are obligated to defend his privilege. Respondents also argue the subpoenas are overly broad, exceed the boundaries of permissible discovery and seek irrelevant information, outside the parameters of the August 27 Order, which they contend moots Starr's contentions about policy exclusions. They move to quash

28

the subpoenas to Daniel Coker, Weems, and Malatesta and ask this Court to enter a protective order, or alternatively to limit the subpoenas to lessen the burden on Respondents. If subpoenas are not quashed, Respondents move for a substantial extension of time to conduct a privilege review and also for reasonable and necessary fees associated with the "laborious and time consuming" efforts required to fulfill the subpoena requests.

Starr argues that the subpoenas to Daniel Coker are appropriate and necessary. It points out that Parker previously agreed not to object to production of the Daniel Coker file up to the date when Starr announced its conflict of interest through its reservation of rights letter (March 28, 2023). And it now moves to compel this information.

Upon review of the subpoenas, the Court indeed notes the broad nature of the information sought from Daniel Coker, Weems and Malatesta almost certainly implicates privileged or protected matter. Noting that Parker's bad faith claim has survived summary judgment, the Court finds that certain information contained in the Daniel Coker file is relevant to the instant action and proportional to the needs of the case. The Court notes Respondents' assertions that privilege on behalf of Parker has not been waived. The Court also notes Parker's contention that he previously agreed to limited concessions on discovery, but that he did not offer a general waiver of the attorney client privilege.

While the Court finds that the subpoena topics to Daniel Coker are relevant, it finds that the topics are overly broad, not narrowly tailored to the instant lawsuit, and not proportional to the needs of the case at this juncture. Furthermore, this Court finds that the documents sought are privileged, protected by the work-product doctrine, or otherwise not subject to disclosure. This Court, finding no waiver of privilege, also concludes that Starr has not shown a substantial need for the materials sought in order to prepare its case in the instant lawsuit. Notably, the Court has

granted Starr the right to propound a limited set of interrogatories to Parker for the purpose of ascertaining the factual basis of the claim that Starr controlled Parker's defense. *See supra* at b. Additionally, the Court has ordered Parker to produce the portion of the Daniel Coker file, from inception through March 28, 2023, the date when Starr announced its conflict of interest through its reservation of rights letter. *Id.*

Respondents Daniel Coker, Attorney Jim Weems and Attorney Christy Malatesta's Motion to Quash Subpoenas or for Protective Order [359] is hereby GRANTED. The Court shall wholly quash the subpoenas to Daniel Coker, Weems and Malatesta.

### iii.   Liberty Mutual's Motions

Liberty Mutual files four separate motions seeking to quash depositions and subpoenas on the basis of attorney-client privilege, work product doctrine, irrelevance and/or lack of proportionality. As it pertains to the non-lawyers, Liberty, alternatively, requests that the Court limit the  depositions of its corporate representative and  adjusters. In the interest of brevity and to avoid duplication, the Court handles the related motions together. The Court combines and sets forth only once the relevant factual and/or procedural allegations set out by Liberty in each of its four motions.[15]

At the outset, Liberty offers that it is a party to Starr's declaratory judgment action by way of Parker's third-party Complaint, which contained contingent claims that Parker would only assert against Liberty if Starr established its defenses to coverage in the declaratory action against Parker, River & Roads, and Feldman. Doc. [362] at 3. Liberty avers that the chief dispute in this case is between Starr and Parker, and it submits that Parker has dismissed the majority of his third-party claims against Liberty. *Id.* at 3-4. Yet again, relying on Judge Reeves's August 27 Order, this third-

---

[15] Of note, Liberty repeats some of the information in its various motions, but it also incorporates by reference at other times.

party Defendant avers that the issue for trial has been narrowed to whether Parker's estoppel claim against Starr, related to Starr's handling of Parker's claim, will estop Starr from invoking any exclusions in the excess policy. *Id.* at 4. Further, Liberty quotes the August 27 Order's language as to a potential comparative fault claim by Starr against Parker and Liberty. *Id.* It contends that Starr has not raised any such claim against Liberty, and it is now clear that Parker will not be exposed to an unpaid judgment – as both Liberty, as the liability insurer, and Starr, as the excess carrier – have both paid the Feldman judgment as awarded in the underlying tort action. *Id.* Thus, it contends there is no longer any potential basis for Starr to assert a comparative fault claim against Liberty in this lawsuit. *Id.* And it challenges each of the depositions and subpoenas sought by Starr, as provided below.

1. Motions for Protective Order and to Quash [361] and [365]

Third-party Defendant Liberty Mutual moves for a protective order prohibiting Starr from seeking confidential communications and attorney work product through the depositions of Attorney Reed Martz and via subpoena for records issued to Martz and to the law firm of Freeland Martz, PLLC.[16] *See* Doc. [361], Motion for Protective Order to Quash Deposition and Subpoena to Reed Martz, Esq. and Freeland Martz, PLLC. Likewise, Liberty files a nearly identical motion seeking to protect Attorney Richard Shoultz and the law firm of Lewis Wagner, LLP from Starr's deposition and subpoena requests. *See* Doc. [365], Motion for Protective Order to Quash Deposition and Subpoena to Richard Shoultz, Esq. and Subpoena to Lewis Wagner, LLP.[17]

Liberty objects to Starr's "sweeping, eleventh hour discovery to obtain [the] attorney-client communications and the attorney work product" of Martz, who performed legal services for Liberty regarding Feldman's worker's compensation claim and of Shoultz, who provided legal

---

[16] *See* Docs. [324] and [325].
[17] *See* Docs. [314], [316], and [332].

input and analysis relating to the subject vehicle accident. Doc. [362] at 3-4; Doc. [366] at 2. Liberty details the subpoena to Martz and his law firm, noting that Starr demands it turn over every document covering nineteen (19) categories of information. Doc. [362] at 5. Likewise, it lists out the nine (9) categories of documents Starr demands in its subpoenas to Shoultz and his law firm. Doc. [366] at 3.

As to these discovery notices, it argues the requests are a "complete breach of Liberty's confidential relationship with its counsel[,]" and it contends there is no legitimate basis for the burdensome and belated discovery. Doc. [362] at 6; Doc. [366] at 3. Liberty moves for protection, asserting good cause exists to grant its motion forbidding any discovery into the legal representation provided by Martz, Shoultz or their respective law firms. *Id.* Further, it argues that Starr has not asserted a single claim against Liberty in this declaratory suit, has not preserved any claim against Liberty for comparative fault, and Liberty never raised the advice of counsel defense in this action; so, it contends there is no legitimate basis for the discovery it now seeks. Doc. [362] at 7-9.

Liberty argues the depositions and subpoenas are beyond the scope of Rule 26(b) and are not relevant to the narrow issue to be tried. Doc. [366] at 5. Additionally, Liberty argues that the discovery sought is disproportionate to the needs of the case, abusive and burdensome. Doc. [362] at 9. Liberty – like Parker and the Respondents above – surmise that Starr seeks "belated discovery" and expansive document production to gain support for its newly filed lawsuit. Doc. [366] at 4. It says the needs of this case simply do not justify the burden Starr is attempting to place on Liberty. Doc. [362] at 6.

Liberty also contends the depositions of Martz and Shoultz exceed the scope of permissible discovery, as it declares attorney-client privilege shields their communications. Doc.

32

[362] at 9. Too, Liberty cites to the Fifth Circuit case of *Nguyen*, 197 F.3d 200, contending that Starr's invasion of the attorney-client privilege is "disfavored" and unwarranted under the *Shelton* factors. *Id.*[18] Liberty challenges Starr's subpoenas to its lawyers and their law firms, seeking "all documents and information obtained and used by counsel for Liberty while representing Liberty regarding the accident involving the RRDD vehicle [and Feldman's injury and resulting WC claim]" as impermissible and not subject to disclosure. *Id.* at 12-13; Doc. [366] at 6. Liberty states Starr expressly seeks information relating to legal representation and the lawyers' work product, which contain the lawyers' mental impressions, opinions and communications, which it argues are confidential and privileged. *Id.* Since Starr cannot prove a substantial need, says Liberty, a protective order quashing these depositions and subpoenas is warranted. However, if this Court permits Starr's discovery, then Liberty asserts that it should also be permitted the same discovery of Starr's counsel. *Id.* at 14.

Starr responds in opposition to both of Liberty's motions [361] and [365]. *See* Starr's Response in Opposition to Liberty's Motion for Protective Order and to Quash Depositions and Subpoenas to Shoultz and Lewis Wagner, LLP, Doc. [383], [384]; *see also* Starr's Response in Opposition to Liberty's Motion to Quash Reed Martz's Deposition and Document Subpoena, Doc. [387], [389].

Starr avers that the Shoultz/Lewis Wagner discovery directly relates to the active allegations in the instant case. Doc. [384] at 2. It asserts Shoultz, an attorney, is a fact witness who was hired by Liberty to investigate the facts and circumstances of the underlying action and the potential claims against Liberty. *Id.* Starr claims through Shoultz's investigation, Liberty became knowledgeable of the potential worker's compensation applicability, but that it failed to inform

---

[18] *See supra* at section i. for Parker's arguments relying on *Nguyen* and the factors set forth in *Shelton*, 805 F.2d 1323 (8th Cir. 1986) to oppose Starr's request to depose opposing counsel.

Parker or his lawyers. *Id.* at 3. Starr accuses Liberty of withholding the material it obtained and/or learned from Shoultz, stating that Liberty neither produced the material in discovery nor indicated the information in Liberty's privilege logs. *Id.* at 4. Starr contends that Liberty's motions to quash and for protection are merely an attempt to maintain said secrecy. *Id.* at 4-5. Starr argues the material from Lewis Wagner and the deposition of Shoultz are relevant and good cause exists to allow both. *Id.* at 5.

Starr argues here – just as it did in response to Parker's motion to quash above – that it is not estopped from asserting coverage defenses, and that it is entitled to discover whether and to what extent Starr's alleged conduct prejudiced Parker. *Id.* at 6. Starr points to its Answer, wherein it asserted that all damages raised in the Counterclaim were proximately caused by other entities or persons and also asserted Mississippi Code Annotated Section 85-5-7 (1972 and as amended), regarding joint tortfeasors. *Id.* at 6-7. Again, Starr claims the discovery sought is relevant, and even though it states the discovery sought is not from counsel of record, it walks through the *Shelton* test. *Id.* at 7.  It states there is no one other than Shoultz who can answer whether Liberty was told of the exclusivity defense, answer how the prospects of the defense appeared, and what recommendations Shoultz offered. *Id.*  It also asserts the information sought is relevant and non-privileged, and Starr is entitled to discovery from Shoultz as to exactly what he told Liberty. *Id.* at 8. Starr faults Liberty for failing to inform Parker about the workers' compensation exclusivity, and Starr argues it must be permitted to discover facts to support this defense. *Id.*

Starr argues attorney-client and work product objections are not appropriate as to Shoultz and Lewis Wagner material. Once again Plaintiff notes that Parker, Liberty and Starr produced to one another, under protective order, their claims files and related correspondence regarding the defense of the underlying Feldman lawsuit. *Id.* Particularly, Starr contends that the discovery

sought from Shoultz and Lewis Wagner is documentation related to the investigation of the claim, which is not protected from Starr and should be produced. *Id.* at 9. Starr also claims Liberty "promised to share" Shoultz's documentation, and it argues Liberty cannot now selectively use its privilege as both a sword against Starr and a shield to hide its own complicity. *Id.*

While Starr contends no privilege exists, it alternatively argues if this Court finds a privilege exists, Liberty has waived the privilege, as "it voluntarily disclose[d] privileged communications to a third party, including an adversary in litigation." *Id.* at 9. (Citation omitted). Starr argues that Liberty's partial production of Shoultz's materials and conclusions invalidates Liberty's claim of privilege, because waiver applies not only to the disclosed documents and communications but also to other documents and communications relating to the same subject matter. *Id.* (Citation omitted). Starr also argues that Liberty's failure to log information related to Shoultz/Lewis Wagner constitutes a failure to preserve non-asserted privileges. *Id.* at 10. It also claims Liberty conceded that the information is not privileged when it responded to an interrogatory, identifying Shoultz in the non-privileged portion of Liberty's production. *Id.* Thus, Starr urges this Court to allow the deposition to go forward and to allow the production of the requested documents. *Id.*

Starr submits that its subpoena to Lewis Wagner is narrowly tailored, and the topics are reasonable, relevant and discoverable. *Id.* at 11. It also requests that it be allowed to proceed, because Liberty did not lodge a single individualized objection in its motion or in response when Starr first disclosed the subpoena topics in August 2024. Starr also challenges Liberty's claim that the discovery sought is burdensome and costly. *Id.* at 14. Starr states it noticed Shoultz's deposition via remote means, and Liberty produced no evidence as to the breadth and depth of the materials to be produced in response to the subpoena. *Id.* Starr argues it is entitled to explore areas of

discoverable information related to Parker's claims, Starr's defense, prejudice, proximate cause and damages, and it begs this Court to allow the requested discovery. *Id.*

Similarly, Starr argues that it is entitled to discover what information was provided to Attorney Reed Martz by Liberty, so that it can adequately prepare to contest Martz's conclusions at trial. Doc. [389] at 3. Starr anticipates that Parker will introduce Martz's opinions through Liberty's adjuster Knust; so, it seeks discovery related to the claims that fault Starr for its coverage decisions, alleged bad faith, and delays. *Id.* at 2. Further, Starr contends it is entitled to more than the conclusions of Martz, which is what Liberty produced. *Id.* at 3. Starr argues that it is entitled to discover the factual basis for Martz's conclusions, and it sets forth a series of questions to ask. *Id.* at 5.

In the interest of brevity and judicial efficiency, the Court will not recite Starr's entire arguments in favor of permitting the deposition of Martz, as many are repetitive and mirror the arguments regarding Shoultz's deposition, which this Court summarized above. In short, Starr argues Martz's deposition is appropriate and necessary, as there is no other way to discover the basis for Martz's conclusions, because Liberty's adjuster relied on Martz's conclusion to provide coverage opinions as to Feldman's workers' compensation claim and further asserts that the evidence sought from Martz is key to the ultimate resolution of Parker's bad faith claims. *Id.* at 7-10. Starr again alleges that Liberty waived attorney-client privilege by sharing information from Martz with a third-party, and it asserts waiver because Knust voluntarily shared the information from Martz that Liberty relied upon when deciding Feldman's worker's compensation claim. *Id.* at 10-11. Starr also contends that Liberty waived privilege by listing its attorneys as witnesses, with knowledge of the insurance claims and investigation, in its initial disclosures and discovery responses. *Id.* at 12. Starr contends its deposition and document subpoena to Martz is reasonable

and should be permitted.

Liberty replies in opposition to both of Starr's responses to its motions to quash or for protective order. As to the deposition and document subpoena to Martz, Liberty argues that Starr failed to show any specific act by Liberty that would waive the attorney-client privilege and work product of Martz and his law firm, or that there is any genuine need for lawyer discovery. *See* Liberty's Reply to Starr's Response in Opposition to Liberty's Motion to Quash Deposition and Records Subpoena of Reed Martz and Freeland Martz, PLLC, Doc, [415]. Liberty maintains that the discovery sought is privileged and prohibited under the case law cited. *Id.* at 3. Further, Liberty asserts it neither relied on the advice of outside counsel in this case nor did it place Martz's legal advice at issue; so, it has not waived attorney-client privilege. *Id.* at 3-4.

Moreover, Liberty says the email correspondence that Starr claims evinces waiver was: 1) sent by a worker's compensation adjuster who was not involved in the underlying tort lawsuit, 2) was sent before this declaratory action was filed, and 3) occurred before Starr raised its coverage question or retained coverage counsel. *Id.* It contends the email merely provided Starr's administrator with information requested – a detailed explanation for Liberty's denial. *Id.* at 4. Liberty also states that Martz did not make the coverage decision regarding Feldman's worker's compensation claim but that Knust's email with Starr demonstrates her personal knowledge of the claim as well as the basis for Liberty's denial. *Id.* at 5. Likewise, Liberty refutes Starr's claims of waiver based on Liberty's interrogatory response regarding the denial of the worker's compensation claim. *Id.* Thus, Liberty argues there was no "waiver-by-email" or "waiver-by-discovery" as alleged by Starr. *Id.* at 6.

Liberty also challenges Starr's claims that the discovery sought is relevant to the instant action. Liberty contends relevance is not the standard for determining whether evidence should be

protected from disclosure as privileged. *Id.* at 7. (Citation omitted). Liberty also contends that Starr has no genuine need for lawyer discovery in the instant action, arguing that the August 27 Order, denying Starr's motion for summary judgment, narrowed the issues for trial but also contending by the time Starr filed the instant lawsuit it had already made its coverage decision based on its perception of the facts. *Id.* at 8. It contends Starr already has first-hand knowledge of its own conduct and its communications with Liberty, and Liberty's privileged communications with Martz will not lead to any evidence on what Starr did or did not do. *Id.* at 11. Liberty argues Starr moves for lawyer discovery as to Martz and Shoultz, but in other briefing Starr represents that lawyer discovery is not relevant to the claims and defenses in this declaratory judgment lawsuit. *Id.* at 9 (quoting language from Starr's motions to quash the depositions of its lawyers, Doc. [374]).

Liberty reasserts that Starr can obtain relevant facts through other means, and it argues Starr does not need the discovery, except for potential use in Starr's new lawsuit against Daniel Coker and Liberty. *Id.* Again, Liberty argues Starr seeks the requested discovery to "confirm its suspicions about what Liberty discussed with counsel," which Liberty contends is impermissible under the law and also not enough to pierce Liberty's privilege. *Id.* at 10. Liberty requests protection from the deposition and subpoenas, arguing that the privileges asserted above are intact and the discovery is improper. *Id.* at 12. However, Liberty argues if Starr is permitted lawyer discovery, then Liberty is also entitled to reciprocal discovery of Starr's lawyers. *Id.* at 10-11.

Liberty likewise replies to Starr's response, specifically incorporating by reference the arguments and authority set forth in its reply regarding Martz. *See* Liberty's Reply to Starr's Response in Opposition to Liberty's Motion to Quash Deposition and Records Subpoena of Richard Shoultz and Lewis Wagner, LLP. Doc. [417]. For the sake of brevity, the Court also addresses facts and arguments specific to Shoultz and his firm. Liberty argues although Starr knew

about Shoultz from the outset of the claim, it only sought discovery after the case was stayed and after Starr filed its motion for summary judgment. *Id.* at 2-3.

Liberty argues that Indiana Attorney Shoultz was retained early-on to assist on the auto claim, and he never worked with Liberty's worker's compensation adjuster. *Id.* at 3. It claims Starr was aware of Shoultz's involvement, as Liberty's auto adjuster produced its pre-suit claim file to Starr early in the claim and it produced documents showing communications with Shoultz in their declaratory judgment lawsuit in response to Parker's discovery request. *Id.* However, Liberty states it has not waived the attorney-client privilege or placed Shoultz's legal advice at issue in this lawsuit. And it also urges this Court to reject Starr's "misappl[ication] [of] the "at issue" or "sword/shield" waiver theory. *Id.* at 6. But, it states if any waiver occurred, it would be limited to the communications and documents already produced related to the auto claim. *Id.* Liberty says it has not waived privilege, and it objects to production of Shoultz's work product. *Id.*

Liberty reasserts here that the discovery sought is unduly burdensome, harassing, irrelevant and not proportional to the needs of the case. As with Martz, Liberty argues if Starr is permitted lawyer discovery, then Liberty is also entitled to reciprocal discovery of Starr's lawyers. *Id.* at 7.

**<u>COURT'S FINDINGS</u>**:

a.    <u>Attorney Depositions and Subpoenas</u>

Starr argues the depositions of Shoultz and Martz are necessary, as the information sought from each can only be provided by these lawyers. Starr seeks answers directly from Shoultz and Martz. Specifically, Starr seeks to discover information pertaining to Shoultz's recommendations regarding the exclusivity defense and the alleged conduct by Starr that supposedly prejudiced Parker. And from Martz, Starr argues it is entitled to more than the mere conclusions of Martz produced by Liberty – it wants Martz's factual basis for his conclusions as well.

Liberty moves to quash Starr's deposition and subpoena notices to Attorneys Martz and Shoultz and their respective firms. Liberty argues Starr asserted no claims against Liberty and has not preserved a comparative fault claim against Liberty. And Liberty claims it never raised an advice of counsel defense; thus, it argues the depositions and subpoenas sought by Starr are beyond the scope of Rule 26(b), irrelevant to the triable issues, disproportionate the needs of the case, abusive and burdensome. Most importantly, Liberty asserts it is entitled to protection from the requested depositions and subpoenas, as the information sought is confidential and protected by attorney-client privilege and the work product doctrine. It argues Martz did not make the coverage decision denying Feldman's worker's compensation claims, and it argues Shoultz was retained early-on to assist with the auto claim but that he never worked with Liberty's worker's compensation adjuster.

Starr seeks to depose Martz and Shoultz; however, it has not shown that no other means exists to obtain the information sought. Notably, Starr also seeks the depositions of Liberty's corporate representative and its claims adjuster. The factual basis for Liberty's decisions can be obtained from these deponents. Starr's attempt to discover the factual basis of counsel's conclusions will essentially operate to obtain counsel's protected work product – the mental impressions, conclusions, opinions, or legal theories of Martz, which is protected under Rule 26(b)(3). The Court finds that Starr has not shown a substantial need for the requested information in order to prepare its case and it has not shown that it cannot, without undue hardship, obtain their substantial equivalent by other means.

Though Liberty identified Martz, Shoultz, and their respective law firms in its initial disclosures as having relevant information, Starr does not claim that Liberty previously produced confidential or privileged information from Liberty's outside counsel. Throughout the briefing, the

parties note that Starr, Parker and Liberty exchanged claims files information containing communications from the attorney's handling the underlying workers compensation claim and from both Liberty and Starr's adjusters – but not from Liberty's outside counsel. Starr has not pointed to an affirmative act by Liberty that placed advice of Martz or Shoultz at issue, and since Liberty does not specifically plead reliance on the legal advice of Martz or Shoultz, the Court finds that Liberty has not waived attorney-client privilege and good cause is shown to quash the requested depositions. Starr may not depose Martz or Shoultz. Starr can discover the non-privileged information sought through other means. As to the depositions of Martz and Shoultz, Liberty's motion to quash and for protective order is hereby GRANTED.

Pursuant to Rule 45(d) of the Federal Rules of Civil Procedure, "the court for the district where compliance is required, must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). Upon review of the subpoenas, the Court indeed notes that much of the information sought is privileged or otherwise protected. The Court finds that Liberty has not waived privilege or protection, and therefore the subpoenas to Martz, Shoultz, Freeland Martz, PLLC, Shoultz, and Lewis Wagner, LLP must also be quashed.

While this Court finds that the depositions and subpoenas of attorneys Martz, and Shoultz are inappropriate at this time, it does however, believe that Liberty likely possesses nonprivileged information that is relevant and proportionate to Starr's defense in this action. To the extent that Starr's subpoenas seek information relating to legal representation, legal advice and/or the lawyers' work product – i.e. the mental impressions, legal opinions and theories or communications – the subpoenas to Martz, Shoultz and their law firms are quashed. However, non-privileged information related to the preliminary investigation of the facts and circumstances

of the underlying action and the potential claims is discoverable, relevant and proportional to the case. Thus, the Court orders that Liberty shall, within fourteen (14) days of this Court's Order, produce non-privileged information relating to the preliminary investigation conducted by Shoultz pre-suit. To the extent that Liberty Mutual previously produced the specified documentation, the Court does not require it to re-produce the same documents. Any documents withheld on the basis of privilege shall be delineated in a privilege log. Liberty Mutual's Motion for Protective Order to Quash Deposition and Subpoena to Reed Martz, Esq. and Freeland, PLLC [361] is hereby GRANTED in its entirety. Liberty Mutual's Motion for Protective Order to Quash Deposition and Subpoena to Richard Shoultz, Esq. and Subpoena to Lewis Wagner, LLP [365] is GRANTED in part. Neither Shoultz nor his law firm are subject to the subpoenas; however Liberty Mutual is ordered to produce the relevant documentation, in accordance with the above order.

### i. Motions for Protective Order, or to Limit Depositions [363] and [367]

Liberty also seeks protection from Starr's Notice of Rule 30(b)(6) deposition and from the depositions of witnesses Jocelyn Knust and Scott Torrez. *See* Motion for Protective Order to Quash or Limit Corporate Representative Deposition, Doc. [363] and Motion for Protective Order to Quash or Limit Depositions of Jocelyn Knust and Scott Torrez, Doc. [367], respectively.

### 2. Rule 30(b)(6) Deposition of Liberty [363]

Liberty moves for an order quashing Starr's amended Rule 30(b)(6) deposition notice of Liberty, or alternatively, for a protective order limiting the "overreaching, unduly burdensome Amended 30(b)(6) deposition notice filed by Starr." Liberty's Memorandum in Support of its Motion for Protective Order to Quash or, Alternatively to Limit Corporate Representative Deposition, Doc. [364] at 1-2. Again, Liberty argues the notice is not proportional to the needs of the case and seeks irrelevant and privileged information from Liberty, as a third-party Defendant

42

not named by Starr in this lawsuit. *Id.* at 2. Yet again Liberty asserts Starr had completed its coverage investigation at the time that it filed suit seeking to disclaim coverage. *Id.* Thus, it accuses Starr of attempting to subject Liberty to an unwarranted corporate deposition on matters not germane to the relevant issues. *Id.* And, it asks that the Court quash or limit the deposition. *Id.*

Liberty acknowledges that Starr initially noticed Liberty's 30(b)(6) deposition before filing for partial summary judgment. *Id.* at 5. However, "on the eve of the close of discovery, months after . . . summary judgment motions were complete, Starr re-noticed an expansive and unnecessary corporate deposition of Liberty, covering 28 categories, including privileged and post-declaratory judgment suit items and Liberty's separate WC and auto policy claims." *Id.* at 6. Starr objects to the amended Rule 30(b)(6) notice, arguing that the topics have nothing to do with Parker's estoppel claim, which it asserts is the only remaining issue. *Id.* It argues the topics in Starr's amended deposition notice will not discover any material facts about Starr's conduct. *Id.* at 9. Liberty avers that the judgment in the underlying tort suit has been satisfied in full by Liberty and Starr, so Starr has no legitimate basis to engage in discovery in this suit as to alleged comparative negligence of Liberty. *Id.* at 15.

Additionally, Liberty states the topics in the amended 30(b)(6) appear to be related to Starr's newly filed subrogation lawsuit, which it argues is an improper means to circumvent discovery procedures in that case. *Id.* Liberty characterizes the requested deposition as an improper fishing expedition to discover information for use in Starr's second lawsuit, and it moves the Court to quash it, or if permitted, to severely limit the deposition[19] and also require the deposition be taken where the corporate representative(s) is located. *Id.* at 6-8, 13-14. Specifically, Liberty would

---

[19] Liberty addresses each of the deposition categories/topics contained in the notice of deposition and provides the limitations that it believes should govern the corporate deposition, if allowed. *See* Doc. [364] at 15-25. Liberty lists out the 28 topics and its specific objection to each. *Id.*

prefer that this Court protect it by ordering the corporate witness only testify about non-privileged categories and events in the worker's compensation claim and auto policy claim that occurred prior to Starr's filing of the instant lawsuit. *Id.* at 6-7. Liberty objects to any other information sought as being irrelevant, privileged and not proportional to the needs of the case. *Id.* at 14.

Further, Liberty contends the late attempt to schedule the deposition should not be permitted as Starr raised no claims against Liberty in this lawsuit. *Id.* at 8. But, if the deposition goes forward, it submits that good cause exists for a protective order, as it contends the noticed topics invade the attorney-client privilege, including the common interest privilege[20] and seeks information protected by the work product doctrine. *Id.* at 11-13. Liberty asks this Court to balance the risk of injury against the requesting party's need for information. *Id.* at 11. (Citation omitted).

Starr, in its Response in Opposition [390], argues that it should be allowed to explore the circumstances surrounding Liberty's decision to deny Feldman's worker's compensation claim, including whether Liberty already knew that worker's compensation "might have applied", and also to establish facts as to whether Feldman's worker's compensation claim was time-barred, as such is critical and led the parties to this litigation. Doc. [391] at 4-5; 7-8; 9-10. It contends but for Liberty's workers' compensation claim decision, Parker would never have been sued and none of the conduct or damages alleged in Parker's counterclaim would have occurred. *Id.* at 5. Starr also asserts that the parties agree that Liberty has relevant and important information. Starr states that Liberty claims files have been disclosed and produced to Starr and Parker, and both Liberty and its adjusters have been disclosed as witnesses with discoverable information.

Moreover, Starr argues that Liberty did not articulate privilege objections to specific

---

[20] Liberty cites the Mississippi Supreme Court opinion in *Hewes v. Langston*, 853 So. 2d 1237, 1249 (Miss. 2003), stating that the Supreme Court applied the common interest privilege to preclude discovery of certain communications between co-parties who had different attorneys. Doc. [364] at 12.

materials it believes are protected by attorney client or work product privilege, and therefore it asserts waiver. *Id.* at 11. Starr says Liberty raised no factual or legal argument as to any privilege. *Id.* at 12. It opposes the common interest privilege raised in Liberty's memorandum, arguing that Liberty did not provide enough information regarding the alleged information protected under this privilege. *Id.* at 13.

Starr states that it noticed the requested 30(b)(6) deposition prior to the case being stayed and before the March 6 Order staying discovery. *Id.* at 5. It contends Liberty's objection to both the 30(b)(6) and the deposition of its adjusters is an attempt to prevent the parties from gathering the basic facts and to deny Starr critical evidence to be presented at trial. *Id.* at 5-6. As for its amended deposition notice, Starr argues it reduced the number of topics. *Id.* And now it offers to withdraw even more of the deposition topics,[21] and it also agrees to conduct all of Liberty's depositions in their location. *Id.* at 6, 13-14. Starr requests that it be permitted to go forward with the noticed deposition of Liberty. *Id.* at 15.

Liberty files its Reply [416] in support of its Motion to Quash [363]. It reiterates and contends that Starr's proposed deposition topics are moot and not relevant to the remaining issue for trial, and it argues that the requested 30(b)(6) deposition seeks privileged information, is unnecessary and burdensome, "especially when it has raised no claim against Liberty in this case." Doc. [416] at 2. Further, Liberty contends that Starr, in its response, raises irrelevant and questionable arguments in an attempt to secure this deposition. *Id.* It claims Starr raises a "brand-new argument . . . over the fixed place of work" and Liberty's investigation of the worksite as justification for the requested 30(b)(6) deposition. *Id.* at 3-4. Liberty contends Starr has already stipulated to facts regarding Parker and Feldman's place of work, and therefore the location of the

---

[21] In its Memorandum [391], Starr voluntarily withdraws Topics 6, 7, 8, 13, and 14, and it represents that Starr does not seek communications with counsel of record in the instant case. Doc. [391] at 14-15.

work has no probative value. *Id.* It also disputes Starr's claim that it needs discovery on the worker's compensation statute of limitations. *Id.* at 4-5 Liberty argues Starr could have intervened in Feldman's lawsuit to assert workers' compensation defenses, and questioning Liberty about "an erroneous legal theory on this topic is abusive and disfavored." *Id.* at 4-5. It also contends questions about Liberty's initial worker's compensation payments to Feldman while it investigated his claim are undisputed and not a legitimate reason for a deposition. *Id.* at 6-7.

Liberty also states that Starr has agreed to withdraw five topics, but it argues the topics are irrelevant and do not limit the scope of the deposition. *Id.* at 4. Rather, Liberty argues, the remaining topics are expansive and will require exhaustive preparation in the last days of discovery. *Id.* But, if the Court allows the deposition, it urges a limited scope confined to information generated before Starr filed the instant lawsuit and should not include after-generated information in anticipation of litigation. *Id.* Again, Liberty objects to discovery of privileged information, arguing that Starr did not previously challenge its privilege objections, were raised in discovery responses and in Liberty's privilege log. *Id.* at 7. Liberty argues Starr has not presented any motion to compel contesting either of the privileges asserted. *Id.* It also seeks reciprocal discovery from Starr if this Court allows the requested depositions. *Id.* at 10.

**COURT'S FINDINGS**: Liberty moves to quash Starr's amended Rule 30(b)(6) deposition notice of Liberty, or alternatively, for a protective order limiting the Amended 30(b)(6) deposition notice filed by Starr. Starr noticed Liberty's deposition prior to the stay of discovery. However, the deposition notice consisted of 15 topics. Liberty argues the amended notice contains 28 topics that are not proportional to the needs of the case and seeks irrelevant and privileged information. Liberty also contends that many of the topics appear related to Starr's second lawsuit. Starr voluntarily withdraws 5 topics (Topic Nos. 6, 7, 8, 13, and 14), states that it is willing to withdraw

additional topics, represents that it does not seek communications with counsel of record in this case, and is also willing to conduct the corporate deposition in Liberty's location.

"Rule 30(b)(6) allows parties to obtain testimony from a corporation, provided the party describes with reasonable particularity the matters for examination." *Vertex Aerospace, LLC* at *1. (Citation omitted). A thorough review of the Rule 30(b)(6) notice reveals that the remaining deposition topics are relevant to the case. However, several of the requests appear to seek privileged information, including attorney communications, regarding events in the worker's compensation claim and other information occurring after the instant lawsuit was initiated. Such information would be irrelevant, privileged and not proportional to the needs of the instant case. Moreover, most of the topics added to the latter portion of Starr's amended notice seem better suited for discovery in Starr's second lawsuit against Liberty and Daniel Coker. Notably, Liberty contends that Starr amended its Rule 30(b)(6) Notice to include more expansive topics after the summary judgment motions were filed, and it argues that Starr is fishing for information to aid in its second lawsuit.

Starr states its intention to withdraw additional topics to further limit scope of the deposition of Liberty, but it does not do so in its response. In the instant motion, Liberty lodged objections to each of the topics, but without Starr's response and affirmative withdrawal, the Court is without sufficient information as to the additional topics Starr is willing to vacate. Each of Liberty's objections rely upon Judge Reeves's August 27 Order and seeks to limit Starr's topics just as Parker requested. Specifically, Liberty's objections include, at a minimum, the following language:

> Objection: According to Judge Reeves' Order, the issue to be tried is whether Starr is estopped due to its own actions/inactions from asserting coverage defenses. In other words, the issue to be tried is Starr's investigation, not Liberty's. Moreover, if this area of inquiry is allowed, testimony should be limited to non-privileged events on the WC and Auto policy claims that occurred prior to Starr's filing of this coverage/Declaratory

> Judgment suit. Any post-suit events would be overly broad, unduly burdensome, information not relevant to the claims and defenses, and information not proportional to the needs of the case, and would include information subject to the attorney client privilege, information subject to the common interest privilege, and information subject to the work product doctrine.

The Court previously declined to limit the scope of Parker's deposition based on argument that the only triable issue is estoppel. Here, the Court reiterates the same, but does limit the scope of Liberty's Rule 30(b)(6) deposition to non-privileged events on the underlying claims that occurred prior to Starr's filing of the instant declaratory judgment suit. The Court finds that post-suit events and information extend beyond the instant action, seek information not relevant to the claims and defenses in this case, and seek information not proportional to the needs of the case, as the Court anticipates that these topics will be explore more extensively in Starr's later filed lawsuit.

Noting that the subject deposition was noticed prior to the March 6 order, with limited topics, the Court finds that the deposition may forward within the parameters set forth above. Rule 26(b)(1) permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Notably, such information within the scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). Liberty has shown good cause for an order limiting its corporate deposition under Rule 26(b)(2)(C). This Court orders Starr and Liberty Mutual to meet and confer within fourteen (14) days regarding the suitable topics for 30(b)(6) deposition, within the parameters of the Court's ruling. Any disputes not resolved by the parties, after good faith efforts have been attempted, may be brought before the undersigned for resolution prior to the deposition taking place.

Liberty's Motion to quash is hereby denied. However, the alternative relief for a protective order limiting the scope of the deposition is GRANTED in accordance with the foregoing. Said deposition is to take place where Liberty's corporate representative is located.

Liberty' Motion for Protective Order to Quash or Limit Corporate Representative Deposition [363] is hereby GRANTED in part and DENIED in part.

### 3.   Witness Depositions of Knust and Torrez [367]

Liberty seeks a protective order to quash or limit the depositions of its adjusters Jocelyn Knust and Scott Torrez, as sought by Starr. *See* Liberty's Memorandum in Support of its Motion for Protective Order to Quash or, Alternatively to Limit the Depositions of Knust and Torrez, Doc. [368]. Liberty moves to quash the deposition notices on the basis of relevance and proportionality, or it asks that the scope of Starr's examination of these witnesses be limited. Liberty summarizes its argument and submits the depositions should be quashed.

Liberty makes similar arguments as raised in its motion to quash the corporate deposition of Liberty, as it pertains to the deposition notices of Liberty's worker's compensation adjuster Knust and its auto policy adjuster Torrez. Again, it contends these depositions are outside the narrow limitation of Judge Reeves's August 27 Order, and that neither Knust nor Torrez have discoverable information as to Parker's estoppel claim against Starr. Doc. [368] at 6. It also objects to Starr noticing the depositions to take place in Ridgeland, MS. *Id.*

 Liberty challenges these depositions, arguing they are irrelevant and not proportional under Rule 26(b), as the instant lawsuit in unnecessary and "in no way involve[s] the manner in which Knust or Torrez handled the claim arising from this accident." *Id.* at 6-8. Liberty argues these depositions will subject Liberty to unreasonable costs and inconvenience and should be quashed. *Id.* at 9. Alternatively, if the depositions are permitted, then Liberty submits that the depositions of Knust and Torrez should be limited to testimony of non-privileged events in the worker's compensation claim and the auto policy claim that occurred prior to Plaintiff filing the instant lawsuit. *Id.* at 10. Liberty objects to inquiries regarding post-suit events as overly broad,

unduly burdensome, not relevant to the claims and defenses, and impermissibly inclusive of information subject to attorney-client privilege or the work product doctrine, and confidential communications with Liberty's counsel. *Id.* at 9-10.

In response, Starr opposes Liberty's motion to quash, arguing that Knust and Torrez are key fact witnesses, and their depositions are relevant to the case. *See* Starr's Motion in Opposition to Liberty's Motion to Quash the Depositions of Knust and Torrez, Doc. [385], [386]. Starr states the depositions of Torrez and Knust were previously noticed by several parties, including Starr. Doc. [386] at 2. It contends the depositions were scheduled to occur, without objection, prior to the Court's March 6 Order staying discovery. *Id.* at 5. Starr reasserts that it is entitled to discovery whether Liberty already knew that worker's compensation "might have applied[,]" and it contends "Knust and Torrez literally hold the keys to this case." *Id.* Starr points out that Parker, Starr and Liberty all identified Knust and Torrez as witnesses with knowledge in either their initial disclosures and/or discovery responses. *Id.* at 5-6. Starr once again argues that Liberty has not claimed the attorney-client privilege and/or work product objections as to Knust or Torrez. *Id.*

Starr states it has no objections to holding the requested depositions of Knust and Torrez where the witnesses reside. Starr also agrees that for these depositions, "Starr will not ask any question regarding 'post-suit events.'" *Id.* at 7.

Liberty's replies, incorporating its previously raised arguments. Reply, Doc. [418]. It opposes Starr's claims that Liberty did not raise objections to the depositions noticed prior to the stay of discovery. It challenges Starr's representation, asserting that Starr did not notice Knust's deposition until September 18, 2024. Doc. [418] at 2. Rather, Starr submits that it was Parker who previously noticed Knust's deposition, but that Parker is no longer seeking this deposition. *Id.* Liberty states when Starr mentioned noticing the depositions, it previously indicated that clarity

from the Court on the issues was needed, and now that Judge Reeves has clarified the issues, Liberty objects to the discovery and new notices as inappropriate under the August 27 Order. *Id.* Liberty also states it raised numerous privilege objections in its discovery response and privileges and fully maintains those objections, as it has never indicated otherwise. *Id.*

In response to Starr's agreement that it will not ask questions relating to events after the declaratory judgment action was filed, "Liberty agrees to this time limitation but intends to continue to raise its pre-suit privilege objections unless the Court rules otherwise. *Id.* 2-3. Again, Liberty maintains it should be permitted to take post-suit discovery from Starr and its counsel if Starr is allowed to do so. However, it reiterates its motion to quash the subject depositions, or alternatively limit the questions to "pre-DJ discovery of Liberty's non-privileged information." *Id.* at 3.

**COURT'S FINDINGS**: Liberty moves this Court to quash or limit the depositions of its adjusters on the basis of relevance and proportionality, arguing that the depositions are outside the narrow limitations of Judge Reeves's August 27 Order, as neither Knust nor Torrez have information as to Parker's estoppel claim against Starr. Or, if permitted, Liberty requests that the adjusters' testimony be limited to non-privileged events in the claims prior to Starr's lawsuit. Starr contends Knust and Torrez are key fact witnesses, and their depositions are relevant to the case. Starr agrees to conduct the depositions where Knust and Torrez reside, and Starr agrees not to ask any questions regarding post-suit events.

This Court agrees that the depositions are both relevant and proportional to the needs of this case. Moreover, the subject depositions were noticed prior to the March 6 order, and according to Starr these depositions were noticed without objection. Rule 26(b)(1) permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

51

proportional to the needs of the case." Notably, such information within the scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). As previously stated, this Court shall not limit these depositions based solely on a movant's assertion that the only triable issue is estoppel. The March 6 Order temporarily stayed discovery; the subject depositions were noticed beforehand and therefore anticipated by the parties. Liberty's motion to quash and for a protective order is DENIED. Starr's concessions as to the location of the depositions and its agreement to limit questions to pre-suit events satisfies Liberty's alternate request for relief. The Court accepts Starr's concessions and directs the parties to proceed with the depositions of Knust and Torrez.  Each deposition shall take place in the location where the deponent resides or in a mutually agreeable location. Starr is also ordered to restrict its line of questioning to non-privileged questions regarding pre-suit events.

Liberty's Motion for Protective Order to Quash or Limit Depositions of Jocelyn Knust and Scott Torrez [367] is hereby DENIED.

### b. Starr Indemnity's Motions to Quash and/or for Protective Order

On September 24 and 25, 2024, Parker filed deposition notices and notices of intent to serve subpoenas on certain of Starr's representatives, agents and lawyers. *See* Docs. [338 – 343].[22] Starr now files motions to quash the subpoenas and depositions of its lawyers, Edward J. Currie, Sr. and Cheryl Vollweiler, and it also files a motion for protective order seeking to limit the scope of deposition of claims adjuster Thomas Olsen, and to quash or for protective order as to a second deposition of Starr's corporate representative. In each instance, Starr argues, "it was only after the Court granted Starr's request for discovery that Parker noticed the second Starr 30(b)(6) deposition, the deposition of two counsel of record for Starr, and Thomas Olsen. In the meet and

---

[22] The Court quashed the notices and requested briefing on subsequent motions to quash and/or for protective orders. *See supra*, n. 4-5.

confer prior to the filing of the current motions on Monday, September 30, Parker's counsel readily admitted that the purpose of filing the Currie and Vollweiler deposition notices was to force Starr to abandon its own discovery of critical fact witnesses. Parker doesn't need a second Starr 30(b)(6) deposition to conduct discovery; he needs it to harass and barter for less discovery from Starr." Doc. [378] at 3. Starr's sentiments extend to each of the motions, addressed separately below.

1. Motion for Protective Order as to Thomas Olsen's Deposition [371]

Starr files a motion for protective order as to Parker's Notice of Deposition of Starr's claims adjuster, Thomas Olsen.[23] Starr's Motion for Protective Order as to Olsen, Doc. [371] at 2. Starr neither objects to Olsen's deposition nor contends that it is inappropriate or unnecessary. *Id.* However, "out of an abundance of caution" Starr seeks an order barring Parker and Liberty from seeking testimony or production from Olsen of privileged information and documents, or an order stating that Starr has not waived privilege by putting Olsen up for deposition and that it may reserve its objections to specific questions based on attorney-client and work product privileges. Doc. [372] at 1. Starr seeks to protect privileged communications that arose after the retention of counsel and Starr filing the instant action. *Id.* at 6. Starr also requests that the deposition occur where Olsen resides, in Philadelphia, Pennsylvania. *Id.* at 7.

In response, Parker again argues that Starr has waived attorney-client privilege and other protections, and that questions on the noticed topics are fair game. Parker's Response to Starr Motion, Doc. [399] at 14. Instead of Starr's approach, Parker suggests that Starr's objections be lodged during the deposition, subject to this Court's ruling on Starr's waiver of privilege and Parker's entitlement to information withheld under Starr's claims of privilege.

Liberty files its response in opposition to Starr's motion. Doc. [407], [408]. It first notes

---

[23] Liberty joined in Parker's deposition notices of Olsen. *See* Joinder, Doc. [349]

that Liberty has no desire for the parties to engage in discovery of information subject to privilege. Doc. [408] at 2. However, since Starr continues to pursue attorney discovery from Liberty, it believes Liberty should be allowed to do the same to Starr, including Olsen's deposition. *Id.* Liberty relies on the facts, law and arguments presented in its responses regarding Vollweiler and Starr's 30(b)(6) deposition; both are addressed below. *Id.* Liberty requests equal treatment - that all parties' privileges be upheld or that all parties be entitled to invade the privileges. *Id.*

Starr replies, acknowledging Parker's concessions as to Olsen's deposition, but also noting Liberty's continual assertion that Starr has waived privilege. Starr's Reply in Support of Motion for Protective Order, Doc. [413] at 2. Starr resubmits its request for a protective order as to Olsen's deposition, wherein this Court bars Parker and Liberty from seeking information or documents from Olsen subject to attorney-client privilege or work production protections, or Starr asks that the Court expressly hold that Starr has not waived any privilege and may make privilege objections as it sees fit.

**COURT'S FINDINGS**: Starr does not object to Olsen's deposition, but it seeks an order protecting Olsen's testimony from inquiry into privileged information and documents. Starr also requests a finding that it has not waived privilege, and it moves for an order permitting it to reserve objections to specific questions based on attorney-client and work product protections. Starr, like Liberty, would like to protect privileged communications that arose after the retention of counsel and its filing of the instant action. Starr also requests that Olsen's deposition occur where he resides.

Olsen's deposition was also noticed prior to the March 6 Order staying discovery. Starr does not oppose Olsen's deposition but merely seeks protection from disclosure of privileged information. This Court has not ruled that Starr has waived any privilege or work product

protections. Rule 26(b)(1) permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." To the extent that Plaintiff seeks an order of protection permitting it to either lodge or reserve objections as to deposition inquiries into privileged or otherwise protected information or documents, the motion is GRANTED. In line with the Court's prior rulings, the deposition may commence where Olsen resides or at an alternate location agreed upon by the parties. Parties are also ordered to restrict the lines of questioning of this deponent to non-privileged questions regarding pre-suit events.

Starr's Motion for Protective Order as to Thomas Olsen's Deposition [371] is hereby GRANTED.

2. <u>Motions to Quash and for Protective Order of Attorneys [373] and [375]</u>

Starr files nearly identical motions to quash and for protective orders as to the notices of deposition and subpoenas to its lawyers Cheryl Vollweiler and Edward J. Currie, Sr. *See* Motion to Quash and for Protective Order as to Vollweiler, Doc. [373], [374] and Motion to Quash and for Protective Order as to Ned Currie, Doc. [375], [376], respectively.[24] Starr seeks a motion to quash the notices of depositions of Vollweiler and Currie, arguing that the notices and subpoenas are "improper, invasive, abusive and defective on their faces." Doc. [374] at 2. Importantly, Starr points out that the discovery sought is from Starr's current counsel of record, which it asserts is an extraordinary and unusual practice. *Id.* at 3. It seeks to quash the depositions and discovery sought, stating that prior to the commencement of the lawsuit, Vollweiler's only role was drafting a

---

[24] Given that the two motions are nearly identical, the Court addresses these motions together, citing primarily to earliest filed motion and memorandum, except when it is necessary to distinguish between an action of Vollweiler or Currie. Unless stated otherwise, reference to Starr's lawyers pertains to both Vollweiler and Currie.

coverage opinion for Starr, and Currie's only role was drafting and transmitting the Reservation of Rights letter, dated March 28, 2023. *Id.* at 3; Doc. [376] at 3. As noted earlier, Starr argues Parker never communicated an intent to seek disclosure of privileged and confidential files maintained by Starr's lawyers'. *Id.* It vehemently opposes Parker's attempt to depose these two lawyers and to obtain the documents requested in each of the twenty-one-topic subpoenas. Starr argues Vollweiler, Currie, and their respective law firms served as outside counsel for Starr, and communicated with Starr for the sole purpose of providing legal advice. *Id.* at 10.

Starr argues Parker and Liberty cannot show that the depositions of these counsel are allowable under the *Shelton* test, which is currently followed by the Fifth Circuit. *Id.* at 6. Starr contends that other means exist for Parker to obtain the information sought. It states that Parker deposed Starr's claims handler, Zatopek, at length, and he has now re-noticed the witness deposition of Olsen and served a second Rule 30(b)(6) deposition notice, which contains "virtually identical topics identified in the . . . subpoena[s]." *Id.* at 7. And it asserts Parker could serve interrogatory seeking the bases for Starr's legal position.. *Id.* It also argues the information sought from its lawyers is irrelevant, as Zatopek testified that he did not rely on advice of counsel in reaching his coverage decision. *Id.* at 8-9. Starr says Parker's discovery requests are duplicative and overlapping and seek irrelevant communications between Vollweiler and/or Currie and Starr, regarding claims handling and litigation strategy - information not relevant to any insurance coverage or bad faith issues in this lawsuit. *Id.* Further, Starr argues it has not waived attorney-client privilege, as it did not raise advice of counsel as a defense. *Id.* at 10. And it claims the communications between Starr and its counsel leading up to and during this litigation are privileged and protected work product, as they were prepared in anticipation of litigation or for trial. *Id.* at 11 (citing Fed. R. Civ. P. 26(b)(3)(A). Starr refutes claims of implied waiver of its

attorney-client privilege, citing to and distinguishing these case facts from those of *Travelers Prop.*
*Cas. Co. of Am. v. 100 Renaissance, LLC*, 308 So. 3d 847 (Miss. 2020) (finding implied waiver
wherein Travelers specifically placed at issue the attorney-client relationship and permitted
opposing counsel to depose Traveler's in-house counsel about his decision to deny coverage, after
it was determined that in-house made the decision to deny coverage and prepared the letter for the
adjuster).[25] Starr argues the information sought is not ordinary work product but opinion work
product. *Id.* at 13. (Internal quotation marks omitted). It argues Parker and Liberty are seeking to
discover legal theories, explanations, and mental impressions of Starr's lawyers in this case, which
are clearly privileged and not crucial. *Id.* at 14-15. Starr moves to quash the Vollweiler and Currie
subpoenas in their entirety. *Id.* at 15.

Starr preemptively challenges Parker and Liberty's anticipated attempts to establish false
equivalency between the subpoenas and deposition of Starr's counsel in this case with Starr's
subpoenas and depositions of Parker and Liberty's counsel in the underlying Feldman civil case
and in Feldman's workers' compensation proceeding. *Id.* It argues both Parker and Liberty put
those lawyers' knowledge, communications and action at the center of this case. *Id.* Starr argues
the subpoenas are procedurally deficient in numerous ways: the twenty-one requests sought in
Exhibit A to the subpoenas contain privileged attorney-client communications and protected work
product, the subpoenas were not properly served and fail to comply with Rule 45(b)(1) and fail to
provide reasonable time to comply with the subpoenas. *Id.* at 16-17. Thus, Starr argues the
subpoenas must be quashed as a whole or modified; it asks that the Court to rule affirmatively on

---

[25] In support of its contention that Starr did not waive privilege, Starr also analyzes and submits as instructive case
law *BancInsure, Inc. v. Peoples Bank of the S.*, No. 3:11CV78-TSL-MTP, 2012 WL 139208, at *1 (S.D. Miss. Jan.
18, 2012). Doc. [374] at 12-13. Starr alleges the facts of *BancInsure* and the instant case are analogous. Doc. [374] at
13. It points out that the *BancInsure* Court determined "the mere fact that an insurance company hires outside counsel
to write a coverage opinion does not result in waiver of the attorney-client privilege." *Id.* (quoting *BancInsure*, 2012
WL 139208 at *2.

each and every request in Exhibit A to the subpoenas. *Id.*

In his Response, Parker reiterates his belief that no lawyer discovery is appropriate, but he seeks reciprocal discovery, if Starr is permitted the discovery it seeks. Parker's Response to Starr's Motion to Quash , Doc. [399] at 2. Parker raises concern that permitting such discovery will result in ancillary motion practice and ultimately delay the trial, which he believes is unnecessary now that the "issues remaining in this case are quite narrow." *Id.* at 3. Nonetheless, Parker asserts he has a genuine right to discovery from Starr's coverage lawyers, because the subject denial letter was drafted in consultation with and by Starr's counsel, who he claims acted as claims handlers. *Id.* at 2-3. Parker argues Starr implicated numerous conflicts of interest against him, and as a result it forfeited the right to claim privilege. *Id.* at 4. One such allegation of waiver attributed by Parker centers around Zatopek's communications, given that he worked on the underlying Feldman claim and the Parker coverage denial; Parker thus argues Starr's attorney communications with the claims adjuster cannot be withheld under claims of privilege. *Id.* at 5. Parker says the merging of the claims and coverage file handling, and the surreptitious effort to obtain information and defeat coverage, implicates bad faith issues. *Id.* at 6. And he argues he has a genuine right to obtain discovery from those who handled the coverage claim – Vollweiler and Currie. Parker argues that these facts are analogous to the facts of *Travelers Property Casualty Co. of America v. 100 Renaissance, LLC*, 308 So. 3d 847 (Miss. 2020).[26]

Parker says there are discoverable issues regarding the assessment by coverage counsel of

---

[26] Parker summarizes the facts and holding in *Travelers*, noting that the Mississippi Supreme Court held an insurance carrier's attorney was properly subjected to discovery in case involving a bad faith failure to pay claim, where it was determined that an adjuster was unfamiliar with the applicable law and consulted and relied on counsel when she sent a denial letter to an insured. Doc. [399] at 6-7 (citing *Travelers*, 308 So. 3d 847). He asserts Zatopek testified that he consulted a lawyer to advise him on Mississippi law, and here Starr's counsel, Currie drafted the reservation of rights letter and is therefore subject to discovery. *Id.* at 8. Likewise, Parker applies the same analysis to Vollweiler, and argues that Vollweiler appears on many communications with Zatopek and Currie, and therefore, her communications with Starr, without Currie, are also discoverable. *Id.*

Feldman's claims file, resulting in denial of coverage and coverage counsel's direct actions in making decisions and communicating those decisions to Parker. *Id.* at 9. Parker argues his bad faith claims independently entitle him to the entire claims file, including communications from coverage adjusters working against him to deny his coverage, as such is not entitled to the protections of the work product doctrine. *Id.* Parker seeks the entire claims file, even if the Court does not allow the depositions. *Id.* at 10. Additionally, Parker contends Starr has waived the right to claim attorney-client privilege, because it provided inadequate privilege logs in violation of the Court's orders. *Id.* at 10-11. And, he again urges this Court to allow reciprocal attorney discovery, arguing this is only fair. *Id.* He states if Starr is permitted to depose Parker's attorneys, that he also be allowed to depose Starr's attorneys. *Id.* at 11.

Liberty also responds in opposition, notably stating that it "is amenable to a case-wide agreement or Court order to cease all discovery from lawyers[,]" but otherwise opposing Starr's motion to quash as to Vollweiler and Parker. *See* Liberty's Response in Opposition as to Vollweiler [402], [403] and Liberty's Response in Opposition as to Currie [403], [404]. Liberty questions Starr's intentions; it asserts that, during the first eight months of discovery, Starr made no attempt to obtain discovery from lawyers. Doc. [402] at 2. However, Starr "chang[ed] lawyers after receiving unfavorable rulings from the Court," and then it sought discovery from Liberty and Parker's counsel in the underlying case. *Id.* at 1-2. Liberty challenges Starr's attempt to block discovery from Attorneys Vollweiler and Currie, while still pursuing discovery from its attorney, Martz. *Id.* at 2; Doc. [404] at 2. It argues Martz and Vollweiler were both retained by their respective clients to provide coverage opinions regarding the viability of Feldman's potential workers' compensation claim. *Id.* Thus, it contends Martz and Vollweiler are in the same position, so it is untenable for Starr to seek Martz's deposition while requesting to block the deposition of its own lawyers. *Id.* Also, Liberty argues that Currie, having drafted and signed the ROR letter regarding Feldman's claim, was clearly involved in making coverage determinations before the suit was filed and also involved in actions that resulted in waiver of Starr's attorney-client communications. Doc. [404] at 2.

Liberty argues that granting Starr's requested protective order would result in extreme prejudice to Liberty in this and other litigation. *Id.* at 3. Liberty seeks reciprocal discovery, if any is allowed, as it predicts that Starr "would no doubt attempt to utilize any finding of fault against Liberty in this case as binding against Liberty in the new, second suit filed by Starr." *Id.* at 4. Liberty argues that Starr has not met its burden for a protective order. It contends Starr does not need the privileged discovery it seeks, because it had already made its coverage determination before filing suit and because it can make legal arguments based upon its own theories without the privileged information. *Id.* Liberty again asserts that Starr has waived attorney-client privilege, and it points out that Starr voluntarily disclosed privileged communications to third parties in litigation. *Id.* at 4-11. Liberty argues it has not waived privilege, and it opposes Starr's attempt to place Liberty's privileged information at issue by claiming mere acknowledgement of a privileged communication waives privilege. *Id.* at 8. Liberty argues this theory has already been rejected by the court. *Id.* (Citation omitted). Even more, it argues that if Starr's theory is applied to Starr's own actions, then Vollweiler and Currie's communications with Starr are also discoverable, because Zatopek also waived Starr's attorney-client privilege. *Id.* at 9. But, if the Court determines Starr did not waive privilege because Starr needs the information to prepare for trial, then Liberty relies on the necessity exception on Rule 26(b)(3), stating that it has shown a substantial need for discovery into the facts known by Vollweiler and Currie – at least on the pre-suit information and matters contained in the documents included with Liberty's Exhibit 1. *Id.*

Starr files a reply. Starr' Reply in Support of its Motion to Quash Deposition and Document Subpoenas of Vollweiler and Currie. Doc. [420]. Starr argues the depositions of its counsel of record and Liberty and Parker's counsel in the underlying Feldman cases/claims are completely different. *Id.* at 2. Starr asserts there is no similarity between Weems, Malatesta and Daniel Coker, since those lawyers were disclosed as witnesses and experts in this case, and their communications were disclosed as relevant and were produced in the claim files during discovery in this case. *Id.* Most importantly,

Starr argues Parker put those lawyers' knowledge squarely at issue. *Id.* It also contends there is a vast difference between Martz and Vollweiler – Martz's legal opinions were relied upon by Liberty, but Vollweiler's coverage opinion was not relied upon by Zatopek when making his coverage decision. *Id.* at 2-3. Starr also distinguishes Shoultz from Currie, arguing that Shoultz's communications and billing records were produced but never logged as privileged, but Currie's reservation of rights letter was not relied on by anyone. *Id.* at 3. Starr argues Parker and Liberty's reliance on *Travelers* to align Vollweiler and Currie is also misplaced, as it contends the case is distinguishable from this action. *Id.*

**COURT'S FINDINGS**: Deposition of counsel should only be allowed in the most unusual of circumstances, which the Court does not find here. Starr moves to quash the Vollweiler and Currie subpoenas in their entirety. However, it suggests that Parker serve straightforward interrogatory requests seeking the bases for Starr's legal position on the requested subjects. Starr argues it has not waived attorney-client privilege, as it did not raise advice of counsel as a defense. It also claims the communications between Starr and its counsel leading up to and during this litigation are privileged and protected work product prepared in anticipation of litigation or for trial. It seeks to protect the legal theories, explanations, and mental impressions of Starr's lawyers in this case, which it argues are privileged and not crucial.

In order to invoke the attorney-client privilege, Starr must establish that its communications with these attorneys and their firms was for the purpose of seeking or rendering legal advice. *BancInsure, Inc.*, 2012 WL 139208, at *1–2 (citation omitted). Waiver of privilege requires an affirmative act to put the advice of counsel at issue. *Itron*, 883 F.3d at 561 n. 6. Here, Starr argues it has not plead reliance on legal advice or placed its attorneys actions at issue, and therefore it has not waived privilege.

Parker seeks the testimony or information from Vollweiler and Currie, but an application of the Shelton factors leads the Court in a different direction. Neither Parker nor Liberty have

shown that no other means exists by which to obtain the information sought. And although the information sought is relevant, it is also protected by attorney-client privilege and constitutes attorney work product, not subject to disclosure. Finally, the Court finds that the information sought is not crucial to case, as much of the information sought has previously been produced and/or explored and discussed during the deposition of Starr's adjuster, Zatopek. Thus, the Shelton factors are not met, and the Court does not find that either Parker or Liberty have not shown a substantial need for the requested information in order to prepare its case.

Starr's counsel, Vollweiler and Currie, have not waived privilege or placed any work product protections at issue and has not waived attorney-client privilege. Thus, the Court determines good cause exists to quash the requested deposition notices and subpoenas.

Starr's Motion to Quash and for Protective Order regarding the Depositions and Subpoenas to Vollweiler [373] and Currie [377] are both hereby GRANTED.

3.   Motion to Quash/Protective Order re: Notice of Second 30(b)(6) Deposition [377]

Starr moves to quash the Notice of Supplemental Deposition of Starr [342], requested by Parker (and joined by Liberty) on September 25, 2024. Doc. [377]; *see also* Joinder, Doc. [348]. Alternatively, Starr seeks a protective order. It first points out that Starr's corporate deposition was previously taken on December 12, 2023, after the parties resolved Starr's objections to the "30 broad topics" and document requests sought in the first notice of deposition. Doc. [378] at 2. Starr contends both Parker and Liberty deposed Starr's corporate representative until they were satisfied. *Id.* According to Starr, until now, Parker never expressed a desire for a second deposition. Starr argues that, despite Parker's motions for sanctions, the motions for summary judgment, the parties' conferrals regarding discovery, and other opportunities, until the Court ruled that 40 days of

discovery would be allowed, Parker made no effort to reconvene Starr's deposition. *Id.* at 2-3.

Starr contends this suggests the deposition sought is unnecessary, and it submits that the second deposition is "to harass and barter." *Id.* Starr views the supplemental deposition as an inappropriate and unnecessary "do-over[,]" being sought for harassment and oppression, not discovery. *Id.* at 4-7. It also opposes the supplemental deposition as being prohibited under federal rules and case law, as it argues Parker seeks to gather cumulative and irrelevant information. *Id.* at 8-9. Starr complains that it did not consent to a second deposition and that Parker never sought or was granted leave to notice the supplemental deposition. *Id.* It also contends the discovery sought is unreasonably cumulative, that Parker had ample time to obtain the discovery now sought, and that the discovery is outside the scope permitted by Rule 26(b)(1). *Id.* at 9. Further, Starr asserts no new information, allegations, claims, defenses or additional parties have been added to the lawsuit since Starr's first deposition, such that it is necessary to re-open Starr's corporate deposition. *Id.* Starr says the only new documents identified in the second notice are consistent with Starr's coverage positions, as they were at the time of the Starr's first deposition. *Id.* Thus, Starr urges this Court to quash the improperly noticed second Rule 30(b)(6) deposition. *Id.*

Starr also objects to the second deposition notice, arguing that the 31 topics seek testimony and documents protected by attorney-client privilege and/or work product doctrine. *Id.* at 11-13. Starr attaches as an exhibit its specific objections to each request. Doc. [377-7]. Further, Starr argues it has not waived its attorney-client privilege, and neither Liberty nor Parker can meet the burden to establish such waiver. Doc. [378] at 12. Starr requests that this Court deny Parker's requests, and it reiterates that the discovery sought is unduly burdensome and not proportional to the needs of the case. *Id.* at 14-15.

Both Parker and Liberty respond in opposition. Parker addresses Starr's motion to quash

and for protective order in his cumulative response to all of Starr's motions. *See* Parker's Motion and Memorandum of his Omnibus Response in Opposition to Starr's Motion to Quash and for Protective Order, Doc. [398], [399]. Parker argues he legitimately seeks Starr's corporate testimony on "new developments that occurred *after* the first deposition . . . . [on] activity [that] occurred within the last several months." Doc. [399] at 13. He asserts he could not have deposed Starr on these things any earlier in the litigation. He also states this "limited[] clean up discovery is precisely the sort of discovery" contemplated by the 40-day limited discovery period agreed upon by the parties. *Id.* Parker states he attempted to work with Starr to narrow the scope of the deposition to recent activity but to no avail. *Id.* at 14. Thus, Parker turns to this Court, requesting that it permit the deposition, subject only to the limitation that it addresses developments that occurred after the last deposition. *Id.* Parker specifically seeks answers related to Starr's March and May 2024 reservation-of-rights letters, the trial in the underlying state-court lawsuit, and Starr's payment of the excess judgment. *Id.* He asserts entitlement to explore Starr's conduct as to these issues, argues that the information is relevant to triable issues, and asks that this Court allow the requested deposition.

Likewise, Liberty opposes Starr's motion. *See* Motion and Memorandum in Response to Starr's Motion to Quash Parker's Notice of Supplemental 30(b)(6) Deposition; Docs. [405], [406]; *see also* Joinder, Doc. [348]. It contends Starr has not demonstrated any legitimate basis to seek the entry of a protective order as to the supplemental notice by Parker, which Liberty joined. Doc. [406] at 2. Liberty, like Parker, alleges there have been substantial developments since Starr's first deposition, and therefore, a second 30(b)(6) deposition is necessary and not procedurally improper. *Id.* at 3, 9. Liberty contends the 31 topics in the supplemental notice are new and not duplications from Starr's first 30(b)(6) deposition. *Id.* Noting the alleged new developments, Liberty states it is

entitled to defend itself and conduct discovery on the new issues arising since the first corporate deposition. *Id.* at 7. If Starr obtains the relief sought, Liberty argues it will be greatly prejudiced; it specifically points to one such prediction that any verdict finding Liberty at fault in the instant action will likely be used by Starr as an attempted binding ruling in Starr's new suit against Liberty. *Id.* Liberty also submits that Starr's privilege objections equally apply to Liberty, and it argues against claims Starr waived privilege when it voluntarily disclosed its attorney-client communications and work product during discovery in this lawsuit. *Id.* As more support for its response in opposition, Liberty asserts that Starr seeks Liberty's corporate deposition on the same categories that Starr now finds objectionable. *Id.* at 8 (citing Starr's Amended Rule 30(b)(6) Deposition of Liberty, Doc. [406]). Finally, Liberty again asks this Court to treat the parties the same for purposes of discovery, particularly as it pertains to the supplemental notice. *Id.* at 9.

Starr, in its reply, reiterates that the supplemental deposition notice is procedurally defective, seeks privileged information, and is not appropriate or necessary. Starr's Reply to Liberty and Parker's Responses in Opposition, Doc. [414]. Starr argues the second deposition is being sought merely to invade Starr's privileges. *Id.* at 2. It argues neither Liberty nor Parker attempt to defend the voluminous topics of inquiry in the second notice, and neither respond to Starr's objections to the procedurally improper 31 new requests for production. *Id.* Instead, they each identify a limited number of developments as justification for the requested discovery, including Starr's March and May 2024 reservation of rights letters. *Id.* at 2-3. Starr reasserts that the coverage position outlined in the letters is consistent with its position throughout the litigation, and that neither Liberty nor Parker have set forth any "new" developments warranting a second deposition. *Id.* at 3-4. Thus, it contends failure to conduct discovery on the position at an earlier time does not now warrant a second deposition. *Id.* As to another inquiry raised by Parker,

regarding Starr's payment of the excess judgment, Starr suggests a reasonable interrogatory, arguing Parker has provided insufficient reasons for a second deposition. *Id.* at 4. It argues Liberty provided no grounds for a second deposition, and it challenges any claims that the discovery requests of these parties are equivalent. *Id.* at 5. It moves to quash the second deposition or for protective order.

**COURT'S FINDINGS**: Here, Starr's corporate deposition was previously taken in December 2023, following Parker's notice of a 30-topic corporate deposition. The first notice contained some 30 topics, and the parties worked together to resolve the topics before proceeding with the deposition. This is particularly important, because Parker now files a second notice, without consulting with Starr or moving for leave of this Court, which is required in absence of stipulation by the parties. For failure to seek leave of the court, this Court has discretion to quash the supplemental notice on procedural grounds. *See Bishop Ins. Agency LLC v. Bishop Ins. Servs. PLLC*, No. 1:18CV350-HSO-JCG, 2020 WL 11191842, at *2 (S.D. Miss. Aug. 3, 2020) (denying request for second corporate deposition where party failed to obtain agreement of opposing party and also failed to seek leave of court).

However, the Court also has discretion to reach conclude otherwise. Out of an abundance of caution and noting the limited time remaining for discovery in this case, the Court quashes Parker's supplemental notice of Rule 30(b)(6) deposition to Starr, and grants Starr's request for a protective order is granted in part. Rule 26(c) provides that a court may issue a protective order precluding or limiting discovery "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." In analyzing a request for a protective order, the court " 'must compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party. " *Jordan v. Hall*, No. 3:15CV295HTW-

LRA, 2018 WL 1546632, at *8 (S.D. Miss. Mar. 29, 2018) (quoting *Cazorla v. Koch Foods*, 838 F.3d 540, 555 (5th Cir. 2016).

Here, the Court seeks to prohibit cumulative, duplicative, and irrelevant information that may be adduced at a second deposition. Although there are no new parties or new claims alleged, Parker and Liberty argue there are new developments warranting additional discovery. But, the Court finds that the second deposition is unwarranted here. However, the Court notes several developments in this case after the December 12, 2023 deposition of Starr – including Starr's March and May 2024 reservation of rights letters, conclusion of the underlying Feldman case, and the district judge's rulings on the pending motions for summary judgment. All of which likely raise new or additional inquiries that were possibly unforeseen when Starr's corporate representative was deposed in December 2023.

Though leave of Court was not properly sought, and neither party expressed that Starr's December deposition was incomplete, this Court grants leave of court for supplemental written discovery to Starr but declines to allow a supplemental corporate deposition. the Court will allow the parties to engage in limited written discovery, narrowly tailored to the alleged new developments or information that was previously unavailable or unknown when Starr was deposed. Noting the limited time remaining for discovery, Parker is ordered to review its 31-topic supplemental deposition notice, identify the relevant topics pertaining only to the alleged new developments – specifically related to new, non-privileged or non-protected documents and/or information that was not available to or provided by Starr until after the December 12, 2023 deposition--and propound no more than (ten) 10 written discovery requests to Starr within seven (7) days of this order. Starr is ordered to respond with fourteen days of receipt of the written discovery requests, Parties are also ordered to confer regarding any topic or requests that garners

an objection. The Court, upon review of the topics, discerns that Topic Nos. 1, 2, 10, 15, 18, 19, and 20 appear pertinent to this issue. The Court expressly forbids counsel from drafting new topics for inclusion in this limited set of interrogatories.

Starr's Motion to Quash and for Protective Order [377] is hereby GRANTED in part and DENIED in part.

## **CONCLUSION**

The Court, having considered the submissions, the record and relevant law, finds as follows:

1.    [357] Parker's Motion to Quash and/or for Protective Order limiting his deposition is <u>GRANTED in part and DENIED in part</u>.

    a.    As it pertains to Parker's deposition, the motion is hereby DENIED and Parker's deposition shall proceed as to all relevant and non-privileged information, specifically that related to causation/liability and prejudice/damages.

    b.    As to the depositions of Attorneys Weems and Malatesta, the motion is hereby GRANTED. The attorney depositions are quashed, but the Court permits limited written discovery propounded from Starr to Parker. Starr may propound no more than five (5) interrogatories to Parker, narrowly tailored to the information it seeks regarding Parker's assertion that Starr controlled Parker's defense in the underlying claim. Starr is to serve the interrogatories within seven (7) days of this order, and the responses are due within fourteen (14) days of receipt. Parties are also ordered to confer regarding any topic or requests that garner an objection. Additionally, within seven (7) days of this order, Parker is ordered to produce the portion of the Daniel Coker file covering inception through March 28, 2023, the

date when Starr announced its conflict of interest through its reservation of rights letter.

    c.    As to the subpoena to expert witness Louis Fey, Parker's motion is hereby GRANTED in part and DENIED in part. Parker is ordered to produce Fey's expert file, to include the list of documents provided by Parker, Daniel Coker or others to Fey, as well as the corresponding documents, within fourteen (14) days of this Court's Order.

2.    [359] Daniel Coker's Motion to Quash or for Protective Order is <u>GRANTED</u>. The subpoenas to Daniel Coker, Weems and Malatesta are hereby quashed in their entirety. Notably, the Court has granted Starr the right to propound limited discovery to Parker for the purpose of ascertaining the factual basis of the claim that Starr controlled Parker's defense.

3.    Liberty Mutual's:

    a.    [361] Motion for Protective Order to Quash Deposition and Subpoena to Reed Martz, Esq. and Freeland Martz, PLLC is <u>GRANTED</u>;

    b.    [363] Motion for Protective Order to Quash or Limit Corporate Representative Deposition is <u>GRANTED in part and DENIED in part</u>. Liberty's deposition shall proceed, but it shall be limited in scope and shall take place where Liberty's corporate representative is located. This Court orders Starr and Liberty Mutual to meet and confer within fourteen (14) days regarding the suitable topics for 30(b)(6) deposition, within the parameters of the Court's ruling. Any disputes not resolved by the parties, ***after good faith efforts have been attempted***, may be brought before the undersigned for resolution prior to the deposition taking place.

c. [365] Motion for Protective Order to Quash Deposition and Subpoena to Richard Shoultz, Esq. and Subpoena to Lewis Wagner, LLP is <u>GRANTED in part</u>. As to Shoultz and Lewis Wagner, LLP, the motion is GRANTED, and the depositions and subpoenas are wholly quashed. However, the Court orders that Liberty shall produce non-privileged, pre-suit documents relating to the preliminary investigation conducted by Shoultz, within fourteen (14) days of this Court's Order, in accordance with the foregoing Order.

d. [367] Motion for Protective Order to Quash or Limit Depositions of Jocelyn Knust and Scott Torrez is <u>GRANTED in part and DENIED in part</u>. Liberty's Motion to quash or to limit the depositions on the basis of relevance and proportionality is DENIED. The depositions of Knust and Torrez shall proceed, either in the location where the deponent resides or at a mutually agreed upon location. Starr is ordered to restrict its line of questioning to non-privileged matters regarding pre-suit events.

4.   Starr Indemnity's

a. [371] Motion for Protective Order as to Thomas Olsen's Deposition is <u>GRANTED</u>. Starr is permitted to either lodge or reserve objections as to deposition inquiries into privileged or otherwise protected information or documents.  In addition, the deposition will take place where Olsen resides or at an alternate location agreed upon by the parties. Lines of inquiry for this deponent are restricted to non-privileged questions regarding pre-suit events.

b. [373] Motion to Quash and for Protective Order re Vollweiler Deposition and Subpoena is <u>GRANTED</u>;

c.  [375] Motion to Quash and for Protective Order re Currie Deposition and Subpoena is <u>GRANTED</u>;

d.  [377] Motion to Quash or for Protective Order re Second 30(b)(6) Deposition is <u>GRANTED in part and DENIED in part</u>. The Court grants leave for supplemental written discovery to Starr but declines to allow a supplemental corporate deposition. The Court allows the parties to engage in limited written discovery, narrowly tailored to the alleged new developments or information that was previously unavailable or unknown when Starr was deposed. Parker is ordered to review its 31-topic supplemental deposition notice, identify the relevant topics pertaining only to the alleged new developments – specifically related to new, non-privileged or non-protected documents and/or information that was not available to or provided by Starr until after the December 12, 2023 deposition – and propound no more than (ten) 10 written discovery requests to Starr within seven (7) days of this order. Starr is ordered to respond with fourteen (14) days of receipt of the written discovery requests. Parties are also ordered to confer regarding any topic or requests that garners an objection. The Court, upon review of the topics discerns that Topic Nos. 1, 2, 10, 15, 18, 19, and 20 appear pertinent to this issue. The Court expressly forbids Parker from including any topics in this limited set of interrogatories that were not included in his supplemental deposition notice.

The Court reminds the parties of the 40-day period in which to complete the limited discovery outlined in the foregoing rulings. Except where specifically noted herein, motion practice as to the limited, narrow discovery outlined is neither anticipated nor encouraged. Furthermore, the dispositive and Daubert motion deadlines have passed and shall not be extended.

Parties are directed to refer to each section of this order for specific timelines in which to propound and respond to discovery.

The 40-day period of discovery commences on January 9, 2025, and concludes on February 18, 2025. This 40-day period shall not be extended beyond the dates listed, particularly given that the parties had already engaged in discovery for several months prior to the entry of the stay order, AND the 40-day limitation set forth in the March 6 Order was proposed by the parties themselves.

**SO ORDERED**, this the 8th day of January, 2025.

/s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE