## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**STARR INDEMNITY & LIABILITY**
**INSURANCE COMPANY**                                                    *Plaintiff*

**v.**                                                    **Case No. 3:23-cv-215-CWR-LGI**

**RIVER & ROADS DIRECTIONAL**
**DRILLING, LLC; et al.**                                                    *Defendants*

### STARR'S MEMORANDUM IN SUPPORT
### OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW

### INTRODUCTION[1]

For the reasons stated below and in Starr's previous filings, Starr is entitled to judgment as a matter of law on its claims and Parker's counterclaims. On the counterclaims, Parker cannot establish any actionable breach of a legal duty by Starr. More importantly, even if Parker could show a breach of a legal duty, he cannot establish that any such breach proximately caused him any damages whatsoever. Indeed, no excess judgment was ever entered against Parker nor did he ever have to pay any money on the judgment or to his attorneys. Because Parker cannot establish these essential elements of his claim, Starr is entitled to judgment as a matter of law.

### LEGAL STANDARD

Starr moves for judgment as a matter of law pursuant to Fed. Rule Civ. P. 50(a) noting that on the evidence presented, "a reasonable jury would not have a legally sufficient evidentiary basis" to find for Parker on his counterclaims. Fed. Rule Civ. P. 50(a); *Papin v. Univ. of Mississippi Med. Ctr.*, 673 F. Supp. 3d 829, 836 (S.D. Miss. 2023), *aff'd*, 109 F.4th 354 (5th Cir. 2024). The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable

---

[1] On April 29, 2025, the Court granted from the bench Starr's *ore tenus* motion to exceed the page limits imposed by the local rules.

24773795.10

inferences in his favor. *See Payne v. Univ. of S. Mississippi*, No. 1:12-CV-41-KS-MTP, 2015 WL 1427248, at *3 (S.D. Miss. Mar. 27, 2015), *aff'd*, 643 F. App'x 409 (5th Cir. 2016) (citation omitted). Judgment as a matter of law should be granted "when 'the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors cold not a reach a contrary conclusion.'" *Gardner v. CLC of Pascagoula, LLC*, No. 1:15CV423-LG-RHW, 2019 WL 3364379, at *1 (S.D. Miss. July 25, 2019) (quoting *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498 (5th Cir. 2012)).

## ARGUMENT

This brief is organized into three sections. First, Starr addresses arguments that are common to multiple counts. Second, Starr addresses arguments regarding Parker's damages. Third, Starr addresses each claim individually. In this section, Starr will the address the reasons that each claim fails and often cross reference earlier sections of its brief.

**I.      Arguments Applicable to Multiple Claims.**

**A.      Because there is no coverage under Starr Excess Policy, Starr is entitled to judgment as a matter of law on its claims and each of Parker's counterclaims.**

The undisputed facts presented at trial and controlling Mississippi precedent establish that, as a matter of law, the Starr Excess Policy does not cover the underlying tort action because Parker and Feldman were "traveling employees" in the course of their employment at the time of the June 2021 accident underlying this coverage dispute (the "Underlying Accident"). Accordingly, each of Parker's counterclaims fail as a matter of law and Starr is entitled to judgment as a matter of law on its claims.[2]

---

[2] Each of Parker's counterclaims, whether arising out of contract or tort, are based on duties purportedly owed by Starr to Parker under the terms of the Starr Excess Policy. If this Court finds that there is no coverage for the Underlying Lawsuit, no such duty exists and each claim fails.

2

Exclusion 4 of the Liberty Mutual Auto Policy, and hence the Starr Excess Policy, excludes coverage for bodily injury to "an 'employee' of the 'insured' arising out of and in the course of: (1) employment by the 'insured': or (2) performing the duties related to the conduct of the 'insured's' business." (P-1 at 102) Exclusion 5 provides, in pertinent part, that coverage does not apply to bodily injury to "[a]ny fellow 'employee' of the 'insured' arising out of and in the course of the fellow 'employee's' employment or while performing duties related to conduct of your business." (*Id.*) These exclusions both apply to bar coverage for "bodily injury" to an "employee" "arising out of and in the course and scope of" employment by the "insured." Under controlling Mississippi law and the facts proven at trial, Feldman and Parker were in the course of employment at the time of their accident. Starr is not bound by Liberty's coverage decision on this issue. *See, e.g., Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's London*, 871 N.E.2d 418, 429 (Mass. 2007); Torrez Deposition, at 160:11-12. Moreover, applying the plain language of the Starr Excess Policy exclusions to the facts proven at trial compels the same determination. Finally, Parker's claim that Starr is estopped from asserting its coverage defenses fails as a matter of law because Starr, an excess insurer, had no duty to defend and its actions caused Parker no prejudice.

1.  <u>Controlling Mississippi law dictates that Parker and Feldman were in the course and scope of employment at the time of the Underlying Accident.</u>

Under the "going and coming rule," "[i]njuries received while in transit to or from the job are generally not deemed a compensable injury under workers' compensation laws." *Lambert v. Energy Drilling Co.*, 313 So. 3d 518, 522 (Miss. Ct. App. 2021) (quoting *Bouldin v. Mississippi Dep't of Health*, 1 So. 3d 890, 895 (Miss. Ct. App. 2008)). However, traveling employees are exempted from the going and coming rule. *Lambert v. Energy Drilling Co.*, 313 So. 3d 518, 522 (Miss. Ct. App. 2021).

24773795.10

A traveling employee is "an employee whose work takes him away from the employer's premises"; or "one who goes on a trip to further the business interests of his or her employer . . ."; or "an employee for whom travel is an integral part of their job." *Id.* (citations omitted). "The traveling employee differs from the ordinary commuter and by virtue of their employment are exposed to greater risks than those encountered by the traveling populace. Therefore, a traveling employee's travel is deemed a work-related risk." *King v. Norrell Servs., Inc.*, 820 So.2d 692, 694 (Miss. Ct. App. 2000). Because travel is deemed a work-related risk, "injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable." *Smith & Johnson, Inc. v. Eubanks*, 374 So. 2d 235, 237 (Miss. 1979). "The test in brief is this: If the work of the employee creates a necessity for travel, he is in the course and scope of his employment, though he is serving at the same time some purpose of his own." *Fin. Inst. Ins. Serv. v. Hoy*, 770 So. 2d 994, 998 (Miss. Ct. App. 2000). In illustrating the "traveling employee" rule, the Mississippi Supreme Court explains:

> [W]hen a traveling man slips in the street or is struck by an automobile between his hotel and a restaurant, the injury has been held compensable [under workers' compensation], even though the accident occurred on a Sunday evening, or involved an extended trip occasioned by [the] employee's wish to eat at a particular restaurant.

*Eubanks*, 374 So. 2d at 238 (quoting 1A Larson, Worker's Compensation Law, section 25.21).

The facts in Mississippi Supreme Court's controlling opinion in *Eubanks* are indistinguishable from the facts proven at trial. The employee in *Eubanks,* Herbert Eubanks, worked in the pipeline construction business. *Eubanks*, 374 So.2d at 235. At the time of Eubanks' death, his employer was constructing a pipeline near Tupelo, approximately eighty miles from Eubanks' home in Louisville, Mississippi. *Id.* While working on this pipeline, Eubanks spent each week in Tupelo, away from his home. *Id.* During the course of his work week in Tupelo, Eubanks

stayed at a local motel and ate meals at various locations. *Id.* Eubanks' workday started around 6:00 or 6:30 a.m. and usually ended between 5:30 and 7:30 p.m. *Id.* at 236. On the day of Eubanks' death, he left work early due to excessive rain and took a pickup truck furnished by his employer to his motel in Tupelo. *Id.* Then, while driving from his motel to Shannon, Mississippi (a 14-minute, 11.4 mile drive from Tupelo) to dine with a cousin, Eubanks died in an automobile collision a short distance south of Tupelo. *Id.* Based on these facts, the Court held that Eubanks was in the course and scope of employment. *Id.* at 237.

As established at trial or through the pre-trial order, Ethan Parker ("Parker") and Matthew Tyler Feldman ("Feldman") worked for River & Roads Directional Drilling. "RRDD"). [609 at p. 7] At the time of the Underlying Accident, Parker and Feldman were working on a road construction project undertaking augur boring for pipeline crossings at various locations along the interstate. (Tr. Transcript, Vol. 5 at 12:15-13:10; 15:4-25)    Feldman and Parker resided in Mississippi and were in Indiana to perform the work for RRDD. [609 at p. 7] RRDD provided Parker with a company pickup truck for transportation during their assignment in Indiana. Parker had 24/7 use of the vehicle and did not pay for gas or maintenance of the vehicle. (Tr. Transcript, Vol. 5 at 19:9-20:13) Parker and Feldman needed to drive the RRDD truck from Mississippi to Indiana for their RRDD job. (Tr. Transcript, Vol. 5 at 19:9-24) During their time in Indiana, Parker and Feldman received a per diem of $120. (Tr. Transcript, Vol. 3 at 31:18-23) Neither Parker nor Feldman had any reason to be in Indiana other than their work for RRDD.

Travel was an integral part of Parker and Feldman's job. Feldman was hired 36 days before Underlying Accident and 31 of those days (or 88%) was spent traveling. (Tr. Transcript, Vol. 3 at 30:23-31:6) Of Parker's 25 weeks of employment with RRDD in 2021, he was traveling 19 (76%) of those weeks. (Tr. Transcript, Vol. 5 at 24:6-13). Parker, Feldman, and RRDD all agreed travel

24773795.10

was part of their job. The job at issue was not a fixed place of work, but rather a construction

project in rural Indiana with a moving location. (Tr. Transcript, Vol. 5 at 15:4-25)

Parker later conceded he was in the course and scope. Specifically, Parker's answer

admitted:

> On or about June 18, 2021, Parker was driving a Ford F350 truck ("Vehicle")
> owned and operated by [RRDD]. At all times relevant hereto, Parker was an
> employee of [RRDD]; had taken [RRDD's] Vehicle out of state on [RRDD's]
> overnight business; was staying out of state in order to complete [RRDD's]
> overnight business; and was approved to operate [RRDD's] vehicle including,
> without limitation, at the time of the accident and injuries at issue herein.

(P-101 at 8 (complaint), 14 (answer).)

They traveled both to and while in Indiana in the company truck, were paid a per diem for

travel, were provided the company truck for all types of use (including personal use), stayed at

local campsite with other RRDD employees (paid for with the per diem). (Tr. Transcript, Vol. 5,

at 20:2-6; Vol. 3, at 47:9-13) During the course of their work in Indiana, Parker and Feldman were

away from their homes and stayed at a local campsite and regularly used the company truck to go

to dinner. (Tr. Transcript, Vol. 5, at 17:7-9; 20:2-6; 30:19-25) On the day in question, Parker and

Feldman's workday started around 7:00 a.m. and ended around 7:00 p.m. (P-4 at LM-00149) They

worked six days a week and were scheduled to work the day following the Underlying Accident.

(Tr. Transcript, Vol. 5, at 16:13-17) On the day of the Underlying Accident, Parker and Feldman

left work and took a pickup truck furnished by RRDD to the campsite. [609 at p. 7] Then, Parker

and Feldman took the pickup truck to a restaurant called Bynum's Steakhouse. (*Id.*) While

returning to the campsite from dinner (on the only road to and from the campsite), the Underlying

Accident occurred, and Feldman was severely injured. (*Id.*; Tr. Transcript, Vol. 5, at 35:12-14) In

addition to these facts mirroring *Eubanks*, Feldman and Parker were paid a per diem to cover lodging, meals and other expenses.[3] (Tr. Transcript, Vol. 3 at 47:9-14)

The Mississippi Supreme Court held that Eubanks' fatal injury occurred in the course and scope of his employment because "Eubanks' employment during the entire week required him to leave his Louisville home, in a company vehicle, at company expense, and travel many miles to spend the week at a motel in Tupelo," and "[t]he sole purpose for spending the week in Tupelo was to be available at anytime he was needed on his employer's construction job." *Id.* at 238. The Supreme Court concluded that "Eubanks, in reality, was 'at work' from the time he left his Louisville home until he returned," and therefore was in the course and scope of his employment whenever performing activities "incidental" to the requirement that he be in Tupelo, including activities like staying at a motel and driving to meals after work hours. *Id.* The Supreme Court noted, "[i]t is trite but important to make the statement that certainly the employer did not expect Eubanks to stay in Tupelo the entire week without sleeping or eating." *Id.*; *see also Hoy*, 770 So. 2d at 999 (insurance salesman traveling for work held to be traveling employee in course of employment when employee slipped in hotel bathroom at 2:00 or 2:30 a.m. because trip, as a whole, was for business purpose); *Bryan Bros. Packing Co. v. Murrah's Dependents*, 106 So. 2d 675, 677-78 (1958) (meat salesman who died in motor vehicle accident 14 miles north of his motel at 10 p.m. held to be traveling employee in course of employment).

---

[3]Another exception to the "going and coming" rule is where the employer furnishes the means of transportation or renumerates the employee for travel expenses. *Matheson v. Favre*, 586 So. 2d 833, 834 (Miss. 1991) (employee injured in accident after day's work had ended held to be in course of employment where the employer paid employee for automobile and gasoline expenses to and from work); *W. Elec., Inc. v. Ferguson*, 371 So. 2d 864, 865-68 (Miss. 1979) (employee on temporary assignment who was killed in accident on way home after finishing day's work held to be in course of employment where employer paid employee per diem based on distance traveled). Both occurred here.

Like in *Eubanks*, Parker and Feldman were away from home on the business of their employer, used their company's vehicle to travel to (or from) dinner, and suffered a tragic accident.[4] Parker and Feldman were traveling employees in the course and scope of their employment at the time of the Underlying Accident and, accordingly, Exclusion 4 and 5 bar coverage for the Underlying Action.

      2.   <u>Applying the facts proven at trial to the plain language of Starr Excess Policy exclusions mandate judgment as a matter of law.</u>

Even if the controlling Mississippi precedent on traveling employees were ignored, the plain meaning of the insurance contract supports the conclusion that Parker and Feldman were not covered under the policy. In interpreting insurance policies, courts apply the ordinary and popular meaning of any undefined terms. *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009). So, in this case, the applicability of Exclusions 4 and 5 depend on the plain and ordinary meanings of "arising out of" and "in the course of" employment. "Arising out of" denotes causation. *Am. Guar. & Liab. Ins. Co. v. 1906 Co.,* 129 F.3d 802, 809 (5th Cir. 1997) (Mississippi law). The phrase is ordinarily understood to mean "originating from," "having its origin in," "growing out of," or "flowing from." *Id.* (quoting *Blue Bird Body Co. v. Ryder Truck Rental, Inc.,* 583 F.2d 717, 726 (5th Cir 1978)). In the insurance context, a "but for" causation test determines the applicability of an exclusion using the phrase "arising out of." *Meyers v. Miss. Ins. Guar. Ass'n,* 883 So. 2d 10, 17 (¶31) (Miss. 2003); *Gray v. Arch Specialty Ins. Co.,* 149 So. 3d 503, 506 (¶9) (Miss. 2014); *AXA Re Prop. & Cas. Ins. Co. v. Day,* 162 F. App'x 316, 323 (5th Cir. 2006) (Mississippi law). Here, there is no question that Feldman's injury "ar[ose] out of" his employment. For when the accident occurred, Feldman was in Indiana only because RRDD

---

[4] In fact, Eubank's trip to visit a family member in another town was a personal decision far more removed from his employment that Parker and Feldman's trip to a nearby restaurant.

deployed him to work on a long-term project there. [609 at p. 7] *But for* his employment, he would not have been in Indiana at the site of the accident. (*Id.*) *But for* his employment, he would not have been injured. As a matter of law, Feldman's injury arose out of Parker and Feldman's employment.

       3.  <u>Because Parker cannot show that Starr breached a duty to defend, Starr is not estopped from asserting the exclusions.</u>

Starr's estoppel argument fails for at least three reasons. First, Starr did not have a duty to defend Parker under the Starr Excess Policy or applicable Mississippi law. Second, Parker cannot show that Starr controlled Parker's defense of the Underlying Lawsuit such that Starr assumed his defense. Finally, Parker cannot show he was prejudiced by any actions of Starr (in fact, Starr completely protected him by paying the full amount of the outstanding judgment). Because Parker has not presented any facts by which the Court could hold that Starr is estopped from asserting these coverage defenses, judgment as a matter of law on this claim/affirmative defense is proper.

       *a.  Estoppel does not apply because Starr is an excess insurer with no duty to defend.*

Parker's estoppel claim fails as a matter of law because Starr had no duty to defend. "A **breach of the duty to defend can give rise to equitable estoppel**, which prevents the insurer from denying liability under the policy, if the insured can demonstrate that it suffered prejudice as a result of the insurer's conduct." *Fed. Ins. Co. v. Singing River Health Sys.*, No. 1:15CV236-LG-RHW, 2015 WL 11019252, at *6 (S.D. Miss. Nov. 24, 2015), *aff'd*, 850 F.3d 187 (5th Cir. 2017) (emphasis added).

Before there can be a breach of the duty to defend, the duty must exist. Under the terms of the Starr Excess Policy and Mississippi law, Starr had no duty to defend until Liberty had exhausted (i.e., paid) its full policy limit toward a settlement or judgment. (P-3 at 25, Section

IV.F.3.) That did not occur until August 2024 [609 at p. 8], which means that any actions taken before August 2024 cannot constitute a breach of the duty to defend.

As the Court noted, Mr. Olsen testified that Starr had no duty to defend under its policy. (Tr. Transcript, Vol. 3 at 92:8-10) The Court seemed somewhat surprised by this testimony, but Mr. Olsen was correct. It is black letter law and a fundamental basis of the insurance industry that an excess insurer has no duty to investigate a claim, issue a reservation of rights letter or otherwise respond to a claim until its coverage has been triggered by exhaustion of the underlying coverage. As the Tenth Circuit held in a case involving Oklahoma law: "Great American's contractual duties to investigate, settle, or defend claims against SRM did not kick in until SRM's primary insurer exhausted its policy limits by actually paying claims." *SRM, Inc, v. The Great American Insurance Company* 798 F.3d 1322, 1327 (10th Cir. 2015). Noting that the excess provisions of the Great American policy at issue in that case were unambiguous, as they are here with Starr's policy, the Court held: "Under its policy with SRM, Great American had no obligation to investigate, settle, or defend a claim until the primary insurer exhausted its policy limits by paying claims. It would be inappropriate for us to alter Great American's obligations or economic expectations, which are rooted in the unambiguous terms of its contract with SRM." *Id*. The Fifth Circuit concurs, holding that an insurer's duty to defend under an excess policy "does not arise until the underlying insurance has been exhausted, i.e. when that insurance coverage has been paid out." *Schneider Nat. Transport v. Ford Motor Co.*, 280 F.3d 532, 538 (5th Cir. 2002).

Mississippi has not yet addressed the specific obligation of an excess carrier to issue a reservation of rights letter prior to exhaustion of the underlying coverage, but they have recognized the general requirement of exhaustion before defense and coverage obligations are triggered in a case involving a self-insured retention. In *Southern Healthcare Services, Inc. v. Lloyds of London*,

24773795.10

110 So.2d 735 (Miss. 2013), the Mississippi Supreme Court held that: "Where a policy is subject to a SIR, the insurer is more like an excess insurer, and the insurer's duty to defend and indemnify is not triggered until the SIR is exhausted." *Id*. at 749.

There are certainly no Mississippi cases that actually imposed a duty on Starr to issue a reservation of rights letter to Parker any sooner than it actually did. For this Court to impose such a duty, in the absence of clear authority form the Mississippi courts, and despite the uncontroverted testimony of Mr. Olsen and other Starr witnesses regarding custom in the insurance industry, and in direct contravention of the universal rule in other jurisdictions that have directly addressed the issue, would constitute reversible error.

Other authorities also confirm that, until its coverage was triggered (and the duty to defend arose), Starr had no duty to issue a reservation of rights letter or to appoint independent counsel. *Arkwright-Boston Mfrs.Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445-46 (5th Cir. 1991) (agreeing "that the duty to disclaim coverage or reserve rights is a part of the duty to defend" such "that the failure to reserve rights cannot give rise to estoppel if the insurance carrier has no duty to defend."); *Ironshore Specialty Ins. Co. v. Conemaugh Health Sys., Inc.,* No. 3:18-cv-153, 2022 WL 1540574, at *16 (W.D. Pa. May 16, 2022) ("[W]here no contractual duty to defend under an excess insurer's policy, the excess insurer is under no obligation to issue a reservation or rights letter and will not be estopped from later asserting coverage defenses."). No Mississippi court has applied the doctrine of estoppel to an excess insurer whose policy had not yet been triggered and, therefore, who was without a duty to defend. *See* [425 at 4-5]. Because Starr was an excess insurer without a duty to defend, it cannot be estopped from asserting its coverage defenses as a matter of law.

b. *Parker proved no facts demonstrating Starr controlled Parker's defense.*

Even if Mississippi law could reasonably be interpreted as supporting the application of equitable estoppel to an excess insurer with no duty to defend, estoppel does not apply because Starr never controlled Parker's defense. While an excess insurer may exercise its right to associate in the defense, "the ultimate discretion to control" remains with the primary insurer that has a duty to defend.[5] Consistent with this line of cases, courts have described the duty to defend under Mississippi law as conferring on the primary insurer "exclusive" or "complete … [and] "virtually absolute" control over litigation against the insured. *Great No. Nekoosa Corp. v. Aetna Cas. & Sur. Co.,* 921 F. Supp. 401, 407 (N.D. Miss. 1996); *Davenport,* 978 F.2d at 930-31. In *Ervin v. Nacher, Corp.,* No. 1:10cv333-HSO-JMR, 2012 WL 27870786, at *4 (S.D. Miss. July 11, 2012), this Court held that an excess insurer had no obligation to participate in the defense of the subject claim until the primary limits were exhausted. Therefore, the duty to raise potentially applicable affirmative defenses on Parker's behalf was the responsibility of Liberty and counsel it assigned to defend Parker. Starr cannot be held liable for Liberty's or defense counsel's failure to raise any affirmative defenses. *See Continental Cas. Co. v. Royal Ins. Co.,* 219 Cal. App. 3d 111, 119 (Cal. App. 1990) ("There is no authority that holds an excess carrier should be charged with making sure the primary carrier fulfills its good faith obligations to the insured.").

No facts presented at trial demonstrated any of Starr's actions rose to the level of "control" or imposed on Starr any obligations incident to the duty to defend, such as reserving rights or appointing *Moeller* counsel. In *American Casualty Co. v. United Southern Bank*, 950 F. 2d 250,

---

[5] *Smith & Nephew v. N.H. Ins. & Ors,* No. 2:04-cv-03027-STA-cgc, 2017 WL 10651154, at *20 (W.D. Tenn. May 2, 2017); *Trustees of the Univ. of Pa. v. Lexington Ins. Co.,* 815 F.2d 890, 898-99 (3d Cir. 1987) (Pennsylvania law); *Mercury Indem. Co. of Am. v. Great No. Ins. Co.,* No. 19-14278 (MAS)(LHG), 2022 WL 844561, at *12 (D.N.J. Mar. 22, 2022); *Liberty Mut. Ins. Co. v. Am. Home Assur. Co.,* 348 F. Supp. 2d 940, 954 (N.D. Ill. 2004).

253-54 (5th Cir. 1992) (Mississippi law), a collateral estoppel case, the Fifth Circuit decided that an insurer's exercise of its rights to associate itself in the defense of a claim and to approve defense counsel were not evidence that the insurer controlled or directed the underlying litigation. According to decisions from other jurisdictions—apparently, no Mississippi court has addressed the issue[6]—an excess insurer controls an insured's defense when it hires lawyers to conduct the defense, not when it monitors the litigation or even when it spearheads settlement negotiations. *Compare Arkwright-Boston*, 932 F. 2d at 445-46 (although insurer had "orchestrated" the settlement negotiations that resolved the claim, finding insurer had not assumed control of defense because it had not appointed or paid defense counsel) *with Pendleton v. Pan Am. Fire & Cas. Co.,* 317 F.2d 96, 100 (10th Cir. 1963) (finding insurer had assumed control of defense because it employed two lawyers to defend the insured and maintained full control of the litigation to the end). Requesting case assessments or participating in the investigation or settlement of a suit does not amount to assuming the defense. *Emscor Mfg., Inc. v. Alliance Ins. Group,* 879 S.W.2d 894, 904 (Tex. Ct. App. 1994). Assumption occurs only when an excess insurer pays the insured's defense costs or asserts "total dominance over the underlying defense." *Home Ins. Co. v. Three I Truck Line, Inc.,* 95 F. Supp. 2d 901 (N.D. Ill. 2000). Starr's requests for information regarding Parker's defense fell far short of control. Further, the testimony that Starr "associated in" Parker's defense does not establish that Starr controlled Parker's defense because there was no evidence that Starr incurred any expenses relating to its association. (Tr. Transcript, Vol. 2 at 48:11-49:21; 50:6-19; 165:3-13; 166:13-16)

---

[6] As discussed below, when an insurer acts reasonably in the face of unsettled law it acts with a legitimate and arguable basis such that bad faith claims fail as a matter of law. *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 703 (5th Cir. 2020).

Although Starr's claim adjusters requested information from, and asked questions of, Parker's legal team, the record is clear that Starr never had final, veto-proof decision-making authority over Parker's defense, including, most critically, which affirmative defenses he should plead. The record shows that Liberty, Parker's Liberty-appointed defense counsel, and, later, Parker's purported *Moeller* counsel failed to assert Parker's exclusivity defense. (P-101 at Newton_Co.0013-14) Even after notice from Starr in March 2023, Parker's counsel never wavered from that position. (*Id.* at Newton_Co.002-06 (docket showing no amended answer)), and ultimately conceded liability. (*Id.* at Newton_Co.0028) Even though Starr again advised Parker in March 2024 that it expected him to raise exclusivity to insulate himself from liability to Feldman— the best outcome for him and Starr—Parker and his lawyers still refused. (DP-13, 3/15/24 ROR; P-101 at Newton_Co.0040) Their refusal, while knowing Starr's position, proves that ***they,*** not Starr, always controlled the defense. Because Starr did not control Parker's defense, it cannot be equitably estopped to assert its coverage defenses.

> c. *Parker proved no facts demonstrating Starr's actions caused him prejudice.*

For estoppel to apply in this circumstance, Parker must also establish that some act or omission by Starr prejudiced his ability to defend the Feldman suit. *Twin City Fire Ins. Co.*, 309 F. 3d at 908 (noting estoppel would apply if insured "can show that the conduct resulted in prejudice to the insured."). Parker asserts that he suffered prejudice because an earlier reservation of rights would have caused Parker to assert his workers' compensation exclusivity defense in 2021, and that it was too late for him to assert it when Starr issued its reservation of rights in March 2023. [30, ¶ 33] However, the undisputed facts demonstrate that this allegation is false, and no reasonable jury could conclude that an earlier assertion of Starr's coverage defenses would have made a difference precisely because Parker never asserted the defense when he had the opportunity

to do so. Parker's failure to demonstrate any action by Starr caused him any prejudice is discussed more fully in Section I.C. below.

The assertion of the exclusivity defense would have required Parker to amend his answer in 2021, just as it would have in 2023, but Parker did not do so despite the state court having never entered an order prohibiting pleading amendments. (*See generally* P-101 at Newton_Co.0002-06) If Parker was concerned about pleading himself out of coverage, there is no reasonable indication why that circumstance would have been any different in 2021 than it was in 2023. Parker also offered no evidence that his counsel was unaware of the exclusivity defense. In fact, he testified that he would expect his lawyers to be aware of such defenses. (Tr. Transcript, Vol. 5 at 53:3-12).

Moreover, Parker failed to show that by March 28, 2023, it was too late for him to raise his exclusivity defense in the *Feldman* action. Whether the state court would have allowed Parker to amend to add his exclusivity defense after March 2023 is not knowable or provable because Parker never moved for leave to amend once he received Starr's coverage position. As the party invoking estoppel, Parker bears the burden of proving that the state court would have disallowed him to plead exclusivity after March 2023.[7] Parker never sought leave to amend, so he cannot meet that burden. The facts demonstrate that Parker's defense team was locked into their "strategy" to accept liability on Parker's behalf from September 2021 and would not have departed from it had Starr reserved its rights earlier. Accordingly, Parker cannot prove any act or omission on Starr's part prejudiced his ability to defend the *Feldman* suit.

---

[7] *See, e.g.*, *Fed. Ins. Co. v. Singing River Health Sys.*, No. 1:15CV236-LG-RHW, 2015 WL 11019252, at *6 (S.D. Miss. Nov. 24, 2015), *aff'd*, 850 F.3d 187 (5th Cir. 2017) ("A breach of the duty to defend can give rise to equitable estoppel, which prevents the insurer from denying liability under the policy, ***if the insured can demonstrate that it suffered prejudice*** as a result of the insurer's conduct.") (emphasis added).

24773795.10

**B.    Starr did not breach the terms of the Starr Excess Policy, and each of Parker's counterclaims fail as a result.**

Because Exclusions 4 and 5 of the Liberty Auto Policy bar coverage for and negate any duty on Starr's part to defend or indemnify the Underlying Action, Parker's breach of contract claim fails as a matter of law. However, even if there were potential coverage under the Starr Excess Policy, Parker's counterclaims would still fail. Starr had no obligation to defend until its policy was triggered, which, as an excess insurer, did not occur until August 2024. Once Starr's policy was triggered, Starr timely paid the remaining balance on the judgment which was below Starr's policy limits.  Because Starr complied with all its obligations under the excess policy, all of Parker's counterclaims fail as a matter of law.[8]

1.    Starr did not have a duty to defend Parker in the Underlying Action or issue a reservation of rights letter.

Here, as in any coverage dispute, the policy language controls the parties' respective rights and obligations. Whether and when an excess insurer has a duty to defend depends on the language of the excess policy. *Estate of Bradley ex rel. Sample v. Royal Surplus Lines Ins. Co., Inc.,* 647 F.3d 524, 529 (5th Cir. 2011). The Starr Excess Policy provides the respective rights and duties (at Section IV.F, as amended).[9] Under subparagraph 3, Starr's duty to defend does not attach unless and until the limits of the underlying insurance, here, the Liberty Auto Policy, are exhausted "solely" by "payment" of claims, settlements, judgments, or defense costs "for damages to which this insurance applies." The Liberty Auto Policy[10], in turn, states Liberty's duty to defend continues

---

[8] All of Parker's claims arise explicitly from Starr's alleged breach of the contract except Count IV (Gross Negligence only), Count VII (Negligence), Count VIII (Breach of Fiduciary Duty), and Count IX (Intentional Infliction of Emotional Distress). These claims similarly fail without a breach of contract because Starr's sole duty to Parker arose from the Starr Excess Policy. Accordingly, without a breach of that duty, each of these claims fail.

[9] P-3 at 25, Section IV.F.3.

[10] P-1 at STARR00533.

at least until the $1 million limit of liability "has been exhausted by payment of judgments and settlements."[11] Starr thus had no duty to defend until Liberty paid its full policy limit toward a settlement or judgment that the Starr Excess Policy covers. *See Estate of Bradley ex rel. Sample v. Royal Surplus Lines Ins. Co., Inc.,* No. 4:08CV15-P-S, 2010 WL 2723191, at *9 (N.D. Miss. July 6, 2010), *aff'd* 647 F.3d 524 (5th Cir. 2011);[12] *see also Ervin v. Nacher Corp.,* 1:10cv333–HSO–JMR, 2012 WL 2870786, at *4 (S.D. Miss. July 11, 2012) (holding that excess insurer owed no duty to defend); *Ware v. Carrom Health Care Prods., Inc.,* 727 F. Supp. 300, 307-09 (N.D. Miss. 1989) (holding excess carrier not required to defend where the primary policy was not exhausted by reason of payments). Thus, Starr could not have had a duty to defend before August 2024 when Liberty paid its fully $1,000,000.00 limits.

Because Starr's policy was not triggered and it therefore had no duty to defend, it also did not have a duty to issue a reservation of rights letter or retain independent counsel. The Fifth Circuit and many other courts nationwide have held that an excess insurer without a duty to defend has no duty to issue a reservation of rights letter. *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.,* 932 F.2d 442, 445-46 (5th Cir. 1991); *Ironshore Specialty Ins. Co. v. Conemaugh Health Sys., Inc.,* No. 3:18-cv-153, 2022 WL 1540574, at *16 (W.D. Pa. May 16, 2022) (refusing to apply estoppel because "Ironshore is a second-layer excess insurer with no duty to defend…."). [13] As one

---

[11] Under the Liberty Auto Policy, defense costs are outside the limit of liability, so defense costs do not erode, and cannot exhaust, the limit of liability. Parker has acknowledged this. (*See* Doc. 55 at 17 n. 15).

[12] Notably, in *Estate of Bradley*, the Fifth Circuit affirmed the district court's decision that "the terms of the Royal excess policy" provided "that Royal's duty to defend arose only after the actual payment of judgments or settlements had exhausted any underlying insurance, and ***because that condition precedent was never satisfied, Royal's defense obligation never matured.***" 647 F.3d at 529 (emphasis added). The Fifth Circuit specifically rejected the Estate's argument that because the Royal excess policy "followed form" to the underlying policy and because the underlying insurer "had a broad duty to defend under its own policy," "Royal likewise was obligated to defend …." *Id.* at 530. *Estate of Bradley* makes clear that the language of an excess insurer's policy determines whether and when its duty to defend arises.

[13] *See also Wellons, Inc. v. Lexington Ins. Co.,* 931 F. Supp. 2d 1228, 1246-47 (N.D. Ga. 2013) (holding insurer with both primary and excess policy was not estopped from denying coverage under excess policy despite providing defense under primary policy before exhaustion), *aff'd*, 566 F. App'x 813 (11th Cir.

noted author summarized, "[A]bsent a duty to defend an excess insurer is not obligated to issue a reservation of rights letter." Douglas R. Richmond, *Reconnoitering Reservations of Rights in Liability Insurance,* 51 TORT TRIAL & INS. PRAC. L.J. 1, 29-30 (2015) (footnotes omitted). "Although an excess carrier is free to reserve its rights and may wish to do so out of an abundance of caution if it participates in settlement negotiations, that preference does not translate into a duty to do so." *Id.* (footnote omitted).

Similarly, the duty to provide an insured with *Moeller* counsel is imposed only on an insurer defending its insured under a reservation of rights (or where the defending insurer has otherwise denied coverage). Starr had no conflict of interest with Parker requiring the appointment of *Moeller* counsel because a conflict only arises from the insurer's simultaneous defense of the insured while reserving its rights to deny coverage.[14] Every decision addressing Mississippi's requirement to provide *Moeller* counsel has done so with respect to a primary insurer that is defending its insured under a reservation of rights or that had denied coverage when it otherwise had a duty to defend.[15]

---

2014); *TIG Ins. Co. v. Tyco Intern. Ltd.,* 919 F. Supp. 2d 439, 458 (M.D. Pa. 2013); *Old Republic Ins. Co. v. Ness, Motley, Loadhlot, Richardson & Poole, P.A.,* No. 3 V 5238, 2006 WL 88666, at *13-14 (N.D. Ill. Jan. 11, 2006); *Interstate Fire & Cas. Co. v. Archdiocese of Portland Or.,* 899 F. Supp. 498, 501 (D. Or. 1995), *aff'd sub nom. Interstate Fire & Cas. Co. v. Underwriters at Lloyd's London,* 139 F.3d 1234 (9th Cir. 1998); *Pepper's Steel & Alloys, Inc. v. U.S. Fid. & Guar. Co.,* 668 F. Supp. 1541, 1544 (S.D. Fla. 1987); *N. River Ins. Co. v. Grinnell Mut. Reins. Co.,* 860 N.E.2d 460, 467 (Ill. Ct. App. 2006); *McGuffin v. Zaremba Contracting,* 849 N.E.2d 315, 319 (Ohio Ct. App. 2006); *Montgomery Ward & Co., Inc. v. Homes Ins. Co.,* 753 N.E.2d 999, 1006 (Ill. Ct. App. 2001); *State Farm Fire & Cas. Co. v. Jioras,* 24 Cal. App. 4th 1619, 1627; Douglas R. Richmond, *Rights and Responsibilities of Excess Insurers,* 78 DENV. U.L. REV. 29, 49-50 (2000).

[14] "In cases where an insurer asserts either policy or coverage defenses, **and defends its insured under a reservation of rights**, there are various conflicts of interest between the insurer and the insured." *Moeller v. Am. Guar. and Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996), *as corrected* (Sept. 19, 1996) (citation omitted) (emphasis added).

[15] *See, e.g., Hartford Underwriters Ins. Co. v. Foundation Health Servs. Inc.,* 524 F.3d 588, 598 (5th Cir. 2008) (reiterating that the requirement to provide *Moeller* the counsel arises **when the insurer is defending** under a reservation of rights) (emphasis added); *Twin City Fire Ins. Co. v. City of Madison, Miss.,* 309 F.3d 901, 907 (5th Cir. 2002) (same); *Am. Nat. Prop. & Cas. Co. v. Estate of Farese,* 530 F. Supp. 3d 655, 674 (S.D. Miss. 2021) (same); *Liberty Mut. Ins. Co. v. Tedford,* 658 F. Supp. 2d 786, 784 (N.D. Miss. 2009) (same).

No Mississippi court has held that an excess insurer is required to provide *Moeller* counsel when a primary insurer is defending the insured and the excess insurer reserves its rights. Accordingly, Starr had no duty to defend, no duty to issue a reservation of rights letter, and no duty to provide *Moeller* counsel.

Further, Parker cannot establish bad faith or a conflict of interest based upon Starr's investigation prior to issuing a reservation of rights letter. An insured has a duty to provide the insurer with information even if that information could be used to deny coverage. *See Associated Wholesale Grocers, Inc. v. Americold Corp.*, 934 P.2d 65, 93 (Kan. 1997). As such, Parker cannot show that any delay in issuing the reservation of rights letter or split the claims file was inappropriate.

### 2. If coverage exists under the Starr Excess Policy, Starr fulfilled its obligations by timely paying the Underlying Judgment.

Even if there were coverage under the policy, Parker's breach of contract claim fails because Starr never denied coverage and timely paid the Underlying Judgment. Rather, Starr reserved its rights and asked the Court, via declaratory action, to determine and apply Mississippi law governing the "traveling employee" exception to the course and scope rule. *See Mut. Assur., Inc. v. Banks*, 113 F. Supp. 2d 1020, 1024 (S.D. Miss. 2000) (holding that bad faith claim failed as a matter of law because there was no evidence indicating that the insurer had denied coverage; instead, insurer "simply filed the [] declaratory action to determine coverage and simultaneously reserved its right to deny such coverage . . .". Parker also cannot maintain his claim on the basis of any refusal to pay because Starr never refused to pay. Starr, as an excess insurer and under its policy, had no duty to pay unless and until the Liberty primary policy was exhausted by the

24773795.10

payment of judgments.[16] Indeed, a bad-faith-failure-to-settle claim accrues only when and if the insured suffers a judgment in excess of policy limits. Absent an excess judgment, any such claim is merely hypothetical because the insured has not suffered—and may never suffer—damages. *See Hartford Acc. & Indem. Co. v. Foster,* 528 So. 2d 255, 265 (Miss. 1988) (explaining that an insurer that fails to duly evaluate a settlement offer within limits may be liable to the insured for all damages occasioned thereby).[17] Causation and damages, along with duty, are elements of a failure-to-settle claim too.

On August 20, 2024, a final judgment was rendered in favor of Feldman and against Parker in the amount of $4,078,223.[18] On August 21, 2024, Liberty paid its primary policy limits of $1,000,000 to Feldman,[19] leaving $3,078,223 ("Remaining Judgment"). By operation of Mississippi law, the judgment was not enforceable until August 30, 2024. *See* Miss. R. Civ. P. 62(a).

On August 30, 2024, Starr notified Parker and Feldman that it would satisfy the Remaining Judgment plus interest for thirty days, noting that it did so only under compulsion, and without waiving any coverage defenses. On September 18, 2024, Starr paid the Remaining judgment plus one month of interest.[20] According to Parker, no collection activities occurred between the time of Starr's agreement to pay and actual payment. (Tr. Transcript, Vol. 5 at 64:21-23) Because Starr never denied coverage and timely paid the Remaining Judgment, Starr did not breach any

---

[16] "We will pay on behalf of the Insured, the "Ultimate Net Loss" in excess of the "Underlying insurance" . . . that the Insured becomes legally obligated to pay for loss or damage to which this insurance applies . . ." P-3, Starr Excess Policy at 16.

[17] *See also Indem. Ins. Co. of N. Am. v. Guidant Mut. Ins. Co.,* 99 So. 3d 142, 153 (Miss. 2012) (because insurer settled within policy limits, breach of duty or failure to settle were non-issues); *Home Ins. Co. v. Miss. Ins. Guaranty Assoc.,* 904 So.2d 95, 97 (Miss. 2004) ("Failure to fulfill this fiduciary duty [to settle] makes the liability carrier liable for all damages resulting from the refusal to settle, which in this case is the excess of the judgment.").

[18] P-101, Final Judgment at Newton_Co.0049.

[19] P-101, Notice of Partial Satisfaction of Judgment at Newton_Co.0051.

[20] [609 at p. 8]; P-101, September 23, 2024 Satisfaction of Judgment at Newton_Co.0052.

contractual obligation owed to Parker. Further, the amount of the judgment was below the policy limits and was actually far less than several of Feldman's settlement demands in the Underlying Litigation.

### C.    Parker failed to prove any act or omission by Starr proximately caused his damages, if any, and each of his counterclaims fail as a result.

Parker's claims also fail because he did not prove that any conduct by Starr caused him damage or prejudice, and causation is an essential element of all of Parker's Claims, whether they sound in contract, in tort, or in equity (estoppel).[21] Parker's claims in this action all rest on the same premise: Starr's "created through its delayed reservation a legal waiver of workers compensation immunity defenses that Parker could have asserted in the Feldman case." [30, ¶ 33]. Under Parker's theory, it was Starr's duty—not his defense counsel's or Liberty—to alert him to that liability defense and had Starr raised the alert, Parker would have pleaded the defense before it was too late. *All* of Parker's counterclaims hinge on his ability to prove that Starr's alleged breaches *caused* him to lose his exclusivity defense, as that is the resultant "prejudice" Parker claims to have suffered. If Parker cannot prove causation, he cannot sustain any of his claims. Parker cannot prove causation. Moreover, Starr introduced compelling evidence that Liberty caused the failure to assert Parker's exclusivity defense.

---

[21] *Bullard v. Guardian Life Ins. Co. of Am,* 941 So. 2d 812, 815 (Miss. 2006) ("The basic elements necessary to state any tort claim are duty, breach of duty, **causation** between the breach of the duty and the injury, and actual damage.") (emphasis added) (citations omitted)); *Norman v. Anderson Reg'l Med. Ctr.*, 262 So. 3d 520, 528 (Miss. 2019) ("Even under a breach-of-contract theory, **[plaintiff] would have to prove causation**.") (emphasis added) (citation omitted)); *Southern Farm Bureau Casualty Ins. Co. v. Logan,* 119 So. 2d 268, 272 (Miss. 1960) (explaining that insurer may be "estopped to deny liability under the policy if its conduct **results** in prejudice to the insured; but it is not estopped to do so if its action does not **result** in any prejudice to the insured.") (emphasis added)).

1. <u>Parker introduced zero evidence to show what "caused" his Liberty-assigned defense counsel's failure to assert the workers' compensation exclusivity defense.</u>

Parker's claim rests on choices made regarding his defense in the Underlying Action. When questioned on how decisions were made with regard to his defense, Parker testified that he simply relied on his defense counsel. (Tr. Transcript, Vol. 5 at 55:10-19; 78:20-81:3) Parker testified he did not know of the workers' compensation exclusivity defense at the time his answer was filed. (Tr. Transcript, Vol. 5 at 52:24-53:12) Parker did not know why his lawyers did not assert the exclusivity defense and testified that he "went by what Liberty lawyers told [him] to do." (Tr. Transcript, Vol. 5 at 78:20-80:10) Based on this testimony, the only people who can speak to this issue – Parker's underlying defense counsel – were not deposed and did not testify. [609 at pp. 21-24]. As such, there is no proof that Starr's actions "caused" them to assert a common and applicable affirmative defense.

2. <u>There is no evidence that Parker's counsel was unaware of the workers' compensation exclusivity defense, but the record shows Liberty was aware.</u>

The undisputed facts at trial belie Parker's assertion that he would have pleaded the exclusivity defense early on in the Underlying Action if Starr had reserved its rights earlier. Later events disprove that claim such that no reasonable juror could conclude that an earlier reservation of rights letter would have made a difference in Parker's defense of the Underlying Litigation. The assertion of the defense would have required Parker to amend his answer in 2021, just as it would have in 2023, but the state court never entered an order prohibiting pleading amendments. Indeed, as discussed above, Parker testified that he could not speak to why his attorneys failed to assert the defense at any point in time. (Tr. Transcript, Vol. 5 at 78:20-80:10) Accordingly, Parker has offered no evidence that he and his counsel did not know of the exclusivity defense or any explanation why they were prevented from asserting it. The evidence, however, demonstrated that Liberty was

aware of the defense even before a suit was formally filed against Parker. (Torrez Depo. at 27:12-15) The undisputed evidence also showed that Liberty-appointed counsel admitted facts sufficient to demonstrate Parker and Feldman were in the course and scope of employment at the time of the Underlying Accident. (P-101 at Newton_Co.0014)

3. Parker could have, but chose not to, assert the workers' compensation exclusivity defense after Starr's reservation of rights letters.

Once Starr issued its March 28, 2023 reservation of rights letter, Parker could have sought leave to amend his answer. Discovery was still open, no court order set any deadline for amending pleadings, the motions cutoff had not passed, and his exclusivity defense remained viable even after Feldman's workers' compensation claim lapsed.[22] *See Velazquez v. Mississippi Power Co.*, No. 1:10-CV-159-KS-MTP, 2012 WL 1898898, at *3 (S.D. Miss. May 22, 2012) (even "if the employer is successful in contesting the claim, the employee does not then attain the right to pursue tort remedies. Simply put, a claimant is barred from filing an action at common law . . . against his employer or co-employee for injury or death sustained while in the course and scope of his employment.") (quotes and cites omitted); *Taylor v. Crosby Forest Prods. Co.*, 198 So. 2d 809, 811-12 (Miss. 1967) (applying workers' compensation exclusivity defense where employee never filed claim with Workers' Compensation Commission); *Washington v. Tem's Junior, Inc.*, 981 So. 2d 1047, 1050-51 (Miss. Ct. App. 2008) (holding that workers' compensation immunity applied where benefits had not been paid and noting that "[t]he prerequisite for immunity that the employer

---

[22] The limitations period on Feldman's workers' compensation claim did not run until May 8, 2024. An amended B-31 was filed on May 9, 2023. [425 at 10-11]. This form stated: "If no further workers' compensation benefits are provided within one (1) year from the date this form is properly filed with the Commission, the right to any further such benefits may be barred by the applicable statute of limitations and this claim finally closed." In *Harper v. North Miss. Medical Center*, the Mississippi Supreme Court held that the statute of limitations on a workers' compensation claim ran from the filing of a second, amended B-31 – not the original B-31. 601 So.2d 395, 395-97 (Miss. 1992). "On December 13, 1984, the Commission received her **amended** Form B–31. ***At this time, the one-year statute of limitations governing the re-opening of her claim began to run***." *Id*. at 395 (citing Miss. Code Ann. 71-3-53).

'secure payment of compensation' does not mean that the employer must . . . ensure that a particular employee is paid the benefits to which he is entitled under the Act.").

But the record shows that neither Parker's panel defense counsel nor his later-retained *Moeller* counsel ever even attempted to assert the defense, even after Starr, in its March 15, 2024 letter, expressly assumed Parker would do so. (DP-13, 3/15/24 ROR; P-101 at Newton_Co.0040) This proves that Parker and his defense team were locked into their strategy from September 22, 2021, and *would not have departed from it* had Starr reserved rights earlier. Parker's inaction in the face of Starr's reservation of rights letters fatally undermines all his counterclaims because it proves that Starr's litany of *alleged* breaches did not cost Parker his exclusivity defense. Parker's inaction in the face of Starr's letters also renders all of Starr's *alleged* breaches immaterial. If they did not cause Parker's alleged harm, they are not actionable.

### D.    Parker Provided Zero Evidence of Damages.

Parker's claims fail because he has provided no evidence of any damages. "[A] plaintiff seeking monetary damages for breach of contract must put into evidence, with 'as much accuracy as' possible, proof of the damages being sought." *Jackson v. State Farm Fire & Cas. Co.*, No. 1:23-CV-24-HSO-BWR, 2024 WL 1183670, at *6 (S.D. Miss. Mar. 19, 2024) (quoting *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1225 (Miss. 2012)). "Without proof of actual monetary damages, a plaintiff cannot recover *compensatory* damages under a breach of contract action." *Id.* (emphasis in original). Parker's sole economic compensatory claim is based on any judgment returned against Parker in the Underlying Action brought by Feldman. [495-8 at 8]. But Starr paid the remaining judgment in full plus thirty days interest before any collection actions took place. (P-101 at Newton_Co.0052; Tr. Transcript, Vol. 5 at 64:18-23) Parker was unable to testify to any specific economic damages, and he has not paid a dollar to any lawyer that has represented him. (Tr. Transcript, Vol. 5 at 64:22-67:11)

Further, Parker's claims for emotional distress damages fail. As discussed below, Parker is not entitled to extracontractual damages, including emotional distress damages, as a matter of law. *See* Section II. However, he has also failed to prove any such damages at trial. This Court and the Fifth Circuit have held "that even in insurance disputes, Mississippi law 'permits mental anguish damages **only where** the injury results in a medically cognizable condition which requires professional medical treatment.'" *Jackson v. State Farm Fire and Cas. Co.,* No. 1:23-cv-24-HSO-BWR, 2024 WL 1183670 at *10 (S.D. Miss. Mar. 19, 2024) (quoting *Greer v. Burkhardt,* 58 F.3d 1070, 1073 (5th Cir. 1995)) (emphasis added). In *Greer,* the Fifth Circuit analyzed three Mississippi Supreme Court cases, including *Veasley,* and determined that "generalized testimony that the plaintiff was very upset and depressed, and was unable to sleep" was insufficient as a matter of law to make out a claim of emotional distress in the context of an insurance bad faith claim. *Greer,* 58 F.3d at 1074. Mississippi courts have been consistent that vague allegations without connection to a specific diagnosis or treatment fail as a matter of law. For example, claims of "sleepless nights, nausea, dizziness, …anxiety, [and] uncertainty about [the] future" without "evidence of any treatment [] received linked to these alleged conditions…are insufficient as a matter of law to establish negligent infliction of emotional distress." *Goode v. Walmart, Inc.,* 372 So.3d 149, 164 (Miss. Ct. App. 2023) (collecting cases).

Parker never sought or received any kind of treatment for his alleged emotional distress, never sought or received an opinion from a medical professional as to the cause of the alleged emotional distress, and never shared his alleged emotional distress with anyone except his wife. (Tr. Transcript, Vol. 5 at 66:10-67:11) Accordingly, Parker "could not recover mental anguish damages [he] do[es] not have any evidence that [he has] sustained a medically cognizable

condition which requires professional medical treatment." *Jackson,* 2024 WL 1183670 at *13. Parker's generalized testimony is insufficient to support an award of emotional distress damages.

Accordingly, Parker failed to prove any damages and each claim fails as a result.

### E. Parker's Bad Faith, Gross Negligence, Intentional Infliction of Emotional Distress, and Breach of Fiduciary Duty Claims Fail Because Starr's Actions Had a Legitimate and Arguable Basis.

An insurer's legitimate or even arguable basis for its coverage position is a complete defense to bad faith under Mississippi law, and "the insured bears a heavy burden to prove that its insured lacked any arguable or legitimate basis . . ." *Holloway v. Nat'l Fire & Marine Ins. Co.*, 360 So. 3d 671, 674-75 (Miss. Ct. App. 2023). Additionally, Mississippi federal courts have dismissed intentional infliction of distress, gross negligence, and breach of fiduciary duty claims where an insurer had a legitimate basis for its claims decisions. *McLendon v. Wal-Mart Stores, Inc.*, 521 F.Supp.2d 561, 568 (S.D. Miss. 2007) (dismissing IIED claim); *Marmillion v. Intern. Ins. Co.*, 2008 WL 4514375, *6 (S.D. Miss. Oct. 1, 2008) (dismissing gross negligence claim); *Am. States Ins. Co. v. Est. of Neighbors*, No. 394CV179BA, 1996 WL 33370665, at *2 (N.D. Miss. Mar. 13, 1996) (dismissing breach of fiduciary duty claim).

An insurer has an "arguable reason" for its coverage position if "there is some credible evidence" to support it, even if "[t]here may well be evidence to the contrary." *Tipton v. Nationwide Mut. Fire Ins. Co.*, 381 F. Supp. 2d 572, 579 (S.D. Miss. 2004). As demonstrated above, there was abundant credible evidence that Feldman was a "traveling employee" in the course and scope of his employment at the time of his accident. This evidence includes the facts established in Section I.A.1. It also includes: Feldman filed a workers' compensation claim alleging he was in the course and scope of employment; Liberty gathered facts demonstrating that Feldman was a traveling employee; Liberty actually paid Feldman six weeks of benefits under his workers' compensation claim; Liberty stated its rationale for compensability was that Feldman

was a passenger in a company vehicle driven by a coworker coming back home from dinner to their place of stay; Liberty had no information to support a denial of workers' compensation two weeks after the accident; and that Liberty decided to deny Feldman's workers' compensation benefits as outside the course and scope of employment only after it received its first large medical bill and after it had estimated what the total cost of Feldman's future medical care would be.

In addition, Parker is attempting to impose legal duties on Starr as an excess insurer without the duty to defend which do not exist under Mississippi law, or the law of many other states. To the extent that the Court permits Parker to maintain some type of bad faith claim predicated on Starr's waiver, estoppel or other conduct as an excess insurer without the duty to defend, then the legal uncertainty surrounding that claim also serves as a legitimate or arguable basis. "In Mississippi, when the relevant law is unsettled at the time a claim is withheld, that uncertainty provides an 'arguable basis' for withholding the claim." *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 708 (5th Cir. 2020). For example, if the Court permits Parker to argue that Starr was required to issue a reservation of rights before it had the duty to defend and the Court confirms that such was Starr's duty, then Starr's actions on this issue were nonetheless reasonable because there was no such legal obligation at the time.

And even if Starr lacked a legitimate or arguable basis—which it did not—Parker is still not entitled to punitive damages for bad faith. "The fact that an insurance company lacks a legitimate or arguable reason for denying a claim *does not automatically lead to the conclusion that the issue of punitive damages should be submitted to the jury*." *Pioneer Life Ins. Co. of Illinois v. Moss*, 513 So. 2d 927, 930 (Miss. 1987) (emphasis in original). "In the absence of an arguable reason for denying a claim, the trial court still must determine whether there is a jury issue as to the insurer's having committed a willful or malicious wrong, or acted with gross or reckless

disregard for the insured's rights." *Id.* As demonstrated above, Parker cannot prove any willful, malicious, or gross negligent conduct on Starr's part because Starr made a reasonable coverage decision backed by credible evidence. Further, Starr never denied coverage for Parker, and even timely paid the Remaining Judgment before any collection action occurred. Accordingly, Parker's bad faith claim for punitive damages and extracontractual damages fails as a matter of law.

**F.  Starr's did not judicially admit coverage.**

Parker has argued that Starr's payment of the remaining judgment under compulsion, while reserving all rights, somehow constituted a "judicial admission" establishing coverage. But Parker ignores the Mississippi Supreme Court's recognition that a payment may be compelled by an "immediate and urgent necessity to pay" to protect the interests of a third party, such as an insured. *Colony Ins. Co. v. First Specialty Ins. Corp.,* 262 So. 3d 1128, 1134 (Miss. 2019); *Mississippi Farm Bureau Cas. Ins. Co. v. Amerisure Ins. Co.,* No. 3:11-CV-706-CWR- FKB, 2013 WL 286364, at *7 (S.D. Miss. Jan. 24, 2013) (recognizing payment may be compelled "to prevent an injury to a person…which is different and disproportionately greater than the unlawful demand….") (quotes and cites omitted). Starr's payment was under compulsion because several facts created an immediate and urgent necessity to pay: (1) the Court's August 19 Order in the Declaratory Judgment Action "asking" that "both insurance companies to keep in mind that their insured is trapped in the middle of this proxy war" and "encouraging" "all involved find a way for the insurance companies to protect their insured, even if it results in the need for future proceedings to resolve their claims and arguments against each other …." [297]; (2) other court Orders, including the Court's decision not to resolve the coverage issues in the Declaratory Judgment Action; (3) the imminent threat of a collection action being brought against Parker personally after the judgment became collectible on or about August 30, 2024; (4) Parker's multiple demands that Starr pay the judgment; and (5) Starr's unsuccessful negotiations with Liberty and Feldman to

24773795.10

protect Parker and Starr's unsuccessful motion to stay collection. (Tr. Transcript, Vol. 2 at 131:21-135:2) Because Starr's statement that it paid "under compulsion" is not an admission that it owed coverage under the policy, Starr is not estopped from asserting this defense.

## II.    Arguments Applicable to Damages

### A.  Parker has failed to prove any damages.

*See* Section I.D.

Not only has Parker failed to prove damages, any evidence submitted in support of his damages that was not disclosed is automatically excluded under Rule 37(c)(1), provided the failure to disclose was not substantially justified or harmless. Parker's disclosures included no attempt to identify or compute Parker's alleged non-economic compensatory, consequential, or incidental damages. Further, they provide zero documentation supporting Parker's damages and identify no witnesses with any knowledge of Parker's damages other than himself. Both Starr and Liberty propounded interrogatories requesting itemization of all damages sought by Parker and for Parker to identify all documents and witnesses supporting such damages. Parker responded by referring only to his Initial Disclosures and "the ad damnum portion of the counterclaim." [474-7 at 13 (Parker Response to Starr ROGs); 474-8 at 4 (Parker Response to Liberty ROGs)]. In response to Starr and Liberty's requests for production of documents that Parker believes supported his claims for damages, Parker again referred to his initial disclosures as well as generally referring to other productions, including "all documents produced in discovery by other parties." [474-9 at 4-5 (Parker Response to Starr RFPs); 474-10 at 4-5 (Parker Response to Liberty RFPs)]. In his deposition, Parker similarly disclaimed the existence of any documents and failed to identify any evidentiary basis or estimate of his damages. Nor can Parker show his failure to disclose was substantially justified or harmless.

24773795.10

**B.  Parker is not entitled to extracontractual damages.**

Even if Parker had presented any evidence of extracontractual damages, including attorneys' fees and emotional distress, he has no entitlement to such damages as a matter of law and judgment pursuant to Federal Rule of Civil Procedure 50(a) is appropriate on these damages. In *Universal Life Ins. Co. v. Veasley,* the Mississippi Supreme Court affirmed a jury award of extracontractual damages, including emotional distress damages, where an insurer refused to pay life insurance benefits without an arguable basis. 610 So.2d 290, 295-96 (Miss. 1992). Here, there was not a refusal to pay and, even if this Court found a refusal to pay based on the short time frame between the underlying judgment and Starr's agreement to pay the Remaining Judgment (defined below), Starr had at least an arguable basis for such "refusal." *United Servs. Auto. Ass'n (USSA) v. Lisanby,* 47 So.3d 1172, 1179 (Miss. 2010) ("Because USAA had an arguable basis for its denial, the defendants are entitled to judgment as a matter of law on the issues of emotional distress damages, attorneys' fees, and litigation expenses.").

As set forth above, Starr (despite its valid coverage reservations) never denied Parker's claim, did not refuse to pay the Remaining Judgment; paid the Remaining Judgment under compulsion and reserving its rights; and no extracontractual damages are appropriate under *Veasley.*

Further, as detailed above, Starr had a legitimate and arguable basis for its coverage decisions. *See* Section I.E. Where an insurer has a legitimate and arguable basis, the insured's claims for extracontractual damages fails as a matter of law. *Mitchell v. State Farm Fire & Cas. Co.,* 954 F.3d 700, 708-09 (5th Cir. 2020) ("An arguable basis for withholding a claim payment also precludes any other form of extracontractual damages besides punitive damages."); *Liberty Ins. Corp. v. Tutor,* 309 So.3d 493, 513 (Miss. Ct. App. 2019) (holding that plaintiff's burden of

proof is to show that "a proper investigation by [Starr] would easily adduce evidence showing its defenses to be without merit.") (quotes and cites omitted). Whether a legitimate or arguable reason supports the denial of a claim is a question of law for the court. *James v. State Farm Mut. Auto Ins. Co.,* 743 F.3d 65, 70 (5th Cir. 2014). No extracontractual damages, even if proven, are permitted as a matter of law.

### C.  Parker is not entitled to attorneys' fees.

#### 1.  Parker did not timely disclose his attorney fee contract.

Despite his initial disclosures, including documents supporting damages, being due in 2023, Parker did not disclose this document until February 17, 2025. This untimely disclosure should be disregarded pursuant to Fed. R. Civ. P. 37(c). *See also* discussion in Section II.A

#### 2.  The fee arrangement between Parker and Heidelberg is ethically dubious and this Court should exercise its discretion to refuse to award any fees.

Parker's attorney in the present action, Maison Heidelberg, was an attorney of record for Parker in the Underlying Lawsuit. (P-101 at Newton_Co.0024; DP-26 Contract for Legal Services) Mr. Heidelberg—during the pendency of the Underlying Lawsuit—premised Parker's compensatory damages in this case on the future judgment against his client in the Feldman case. *See* [392-4 at 5 (Amended Initial Disclosures issued January 17, 2024 stating Parker's compensatory damages were "no less than any judgment returned against Parker in [the Underlying Lawsuit].")]. Mr. Heidelberg and his firm's pecuniary interest in the present litigation (either 40 or 45% of gross recovery) raises serious ethical concerns regarding his involvement in that defense and, specifically, the decision to accept liability on Parker's behalf. Mr. Heidelberg's interests were directly contrary to his client's because the higher the judgment against Parker in the Underlying Lawsuit, the more fees Mr. Heidelberg could potentially collect in this lawsuit. Not only that, but 40-45% of that judgment (plus litigation expenses) would have been laid at Parker's

24773795.10

feet forever if Starr had not determined it was compelled to pay the judgment despite its coverage defenses. Mr. Heidelberg gambled his own client's financial future on Starr's payment of the judgment by tying a judgment against his own client in a case where he was defense counsel of record to economic damages in the present action. "The fixing of reasonable attorneys' fees is a matter ordinarily within the sound discretion of the trial court...." *Mississippi Power & Light Co. v. Cook*, 832 So.2d 474, 486 (Miss. 2002) (quotes and citation omitted). This Court should exercise its authority to refuse to award attorneys' fees to Mr. Heidelberg and his firm based on this ethically dubious fee arrangement.

> 3.   Parker is not entitled to attorneys' fees under *Veasley* or otherwise.

Because there was no denial of coverage or refusal to pay and because Starr had a legitimate and arguable basis for its coverage decisions, no attorneys' fees are appropriate. *See* Section I.B.2; Section I.E.

> 4.   Parker has not paid any attorneys' fees.

*See* Section I.D.

> 5.   Parker has offered no substantive basis on which to award attorneys' fees.

Parker has offered no substantive basis for the attorney fee award as required in this circuit. *JGT, Inc. v. Ashbritt, Inc.,* No. 1:09-cv-380-WJG-JMR, 2012 WL 12978437, at *1 (S.D. Miss. July 27, 2012) ("[T]he party seeking reimbursement of attorneys' fees ... has the burden of establishing the number of attorney hours expended, and can meet that burden only by presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement."); *Rakestraw v. Cadence Bank,* No. 1:22-CV-67-MPM-RP, 2024 WL 1337188, at *1 (N.D. Miss. Mar. 28, 2024) ("The fee applicant bears the burden of documenting the appropriate hours expended and hourly rates.") (citation omitted).

24773795.10

**D.  Parker is not entitled to punitive damages.**

Parker is not entitled to punitive damages for each of the reasons below.

*First*, punitive damages are only allowable under Mississippi law after a finding of compensatory damages. Miss. Code Ann. § 11-1-65(1)(c) ("If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the same trier of fact."). Because there has been no proof of compensatory damages here, there can be no punitive damages. *See* Section I.D.

*Second*, because Starr had a legitimate and arguable basis for its coverage decisions, no punitive damages may be awarded. *Broussard v. State Farm Fire and Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008) ("To recover punitive damages for bad faith denial of their insurance claim, [Parker] must show that the insurer denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights.") (quotes and citation omitted). *See* Section I.E.

*Third*, because Parker failed to prove Starr acted with malice or gross negligence, no punitive damages may be awarded. *Broussard*, 523 F.3d at 628.

**III.    Arguments Specific to Each Count of Parker's Counterclaims**

**A.  Bad Faith Breach of Duty to Defend and Provide Independent Counsel and/or Tortious Interference with Parker's Right to Defense and Independent Counsel (Count I)**

    1.  There is no coverage under the Starr Excess Policy.

Because Exclusions 4 and 5 in the Starr Excess Policy apply and remove coverage from the Underlying Action, Parker's claims each fail. *Porter v. Grand Casino of Miss., Inc.*, 181 So.3d

980, 986 (Miss. 2016) (because Plaintiff's loss was not covered, her claim for bad-faith denial of coverage necessarily failed as a matter of law); *See* Section I.A.

>       2.  Starr had no duty to defend the Underlying Action.

*See* Section I.A.3.a; Section I.B.1. Without any duty to defend, Starr had no obligation to issue a reservation of rights letter, appoint independent counsel, or "split" the file between coverage and defense. *Arkwright-Boston*, 932 F. 2d at 445-46.

>       3.  There is no evidence Starr controlled Parker's defense.

Starr had no duty to defend the Underlying Lawsuit, and its involvement through receipt of status updates and participation in mediation does not alter this analysis. *Arkwright-Boston*, 932 F. 2d at 445-46; *See* Section I.A.3.a; Section I.B.1.

>       4.  Parker failed to prove Starr caused him any damages.

*See* Section I.C.

>       5.  Parker failed to prove any damages.

*See* Section I.D.

>       6.  Starr had a legitimate and arguable basis for its actions.

*See* Section I.E.

>       7.  Parker is not entitled to extracontractual or punitive damages.

*See* Section I.E.; Section II.

## B. Estoppel and Waiver (Count II)

>       1.  Starr is not estopped from asserting its coverage defenses.

*See* Section I.A.3.

>       2.  No waiver.

To establish waiver, Parker must prove by clear and convincing evidence "an act or omission on the part of [Starr] fairly evidencing an intention to permanently surrender the right alleged to have been waived." *Am. Nat'l Prop. & Cas. Co. v. Est. of Farese*, 530 F. Supp. 3d 655, 669 (S.D. Miss. 2021); *Charter Oak Fire Ins. Co. v. B.J. Enters. of Mississippi, LLC*, 156 So. 3d 357, 361 (Miss. Ct. App. 2014) ("The party claiming the waiver of an important policy provision must prove it by clear and convincing evidence." (citations omitted)).

Parker has not presented any evidence, much less clear and convincing evidence, of an act or omission by Starr evidencing an intention to permanently surrender its coverage defenses. Because, as discussed above, Starr did not have a duty to defend, issue a reservation or rights, or appoint independent counsel, Starr's failure to do so cannot be construed as a waiver of coverage defenses. Thus, Parker's waiver claim fails as a matter of law.

### C. Tortious Bad Faith Breach of Contract (Count III)

#### 1. There is no coverage under the Starr Excess Policy.

Because Exclusions 4 and 5 in the Starr Excess Policy apply and remove coverage from the Underlying Action, Parker's bad faith claims fail. *See* Section I.A.

#### 2. Parker did not demonstrate a breach of contract by Starr.

To establish his tortious bad faith breach of contract claim, Parker was required to prove that Starr breached its contract, and that Starr committed some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort. *Braidfoot v. William Carey Coll.*, 793 So. 2d 642, 655 (Miss. Ct. App. 2000). As detailed above, Starr did not breach the Starr Excess Policy and paid the Remaining Judgment in full under compulsion while reserving its rights. *See* Section I.B.

3. <u>Starr had a legitimate and arguable basis for its actions.</u>

To maintain his tortious bad faith breach of contract claim under Mississippi law, Parker must show that Starr did not have a legitimate or arguable basis for its actions. *Guy v. Commonwealth Life Ins. Co.*, 894 F.2d 1407, 1411 (5th Cir. 1990) (Under Mississippi law, an "insurer will not be subject to punitive damages [for tortious breach of an insurance contract] [] if it had a legitimate or arguable reason for failing to pay a claim."). Starr had a legitimate and arguable basis and this claim must be dismissed. *See* Section I.E.

4. <u>There is zero evidence of intentional wrong or gross negligence.</u>

Parker presented no evidence that Starr committed some intentional wrong, insult, abuse, or negligence so grass as to constitute an independent tort. *Braidfoot*, 793 So. 2d at 655. The evidence at trial demonstrated that Starr had no duty under the Starr Excess Policy, yet it promptly indemnified Parker upon the exhaustion of the Liberty policy to prevent any risk of Parker's personal liability. (Tr. Transcript, Vol. 2 at 85:7-22; 142:1-3; P-101 at Newton_Co.0052)

5. <u>Parker is not entitled to extracontractual or punitive damages.</u>

*See* Section I.E.; Section II.

**D. Gross Negligence and Intentional Breach of Contract (Count IV)**

1. <u>For the reasons set forth above, Parker's intentional breach of contract claim fails.</u>

For each of the reasons set forth above in Sections III.A and III.C, Parker's intentional breach of contract claim fails and Parker is not entitled to extracontractual or punitive damages.

2. <u>Parker's gross negligence claim sounds in contract rather than tort and fails along with his bad faith breach of contract claims.</u>

Parker's gross negligence claim fails as a matter of law because it is based on Starr's alleged failure to fulfill its contractual obligations, and Parker failed to prove breach of contract. *See* Section I.B; Section III.A. "The relationship between the insurer and the insured arises by

contract. . ." *Willis v. Allstate Ins. Co.*, No. 2:13-CV-60-KS-MTP, 2014 WL 5514160, at *16 (S.D. Miss. Oct. 31, 2014) (citation omitted). Where a negligence claim arises from the failure to fulfill duties under an insurance policy, "it sounds in contract rather than tort." *Id.* Because Parker's gross negligence claim arises from Starr's alleged failure to fulfill its contractual duties, "the claim is subsumed by [Parker's] bad faith claims and addressed in the same manner . . ." *Id.* at *17. Accordingly, because Starr did not breach its contract or commit bad faith, Parker's claim fails.

        3.   <u>There is zero evidence of intentional wrong or gross negligence.</u>

*See* Section III.C.4.

        4.   <u>Because Parker failed to prove Starr was the proximate cause of his damages and failed to prove damages his gross negligence claim fails.</u>

"The elements of a negligence action are well-settled in Mississippi. A plaintiff in a negligence suit must prove by a preponderance of the evidence (1) duty, (2) breach of duty, (3) causation, and (4) injury." *Patterson v. Liberty Associates, L.P.*, 910 So.2d 1014, 1019 (Miss. 2004). Parker failed to prove causation, *see* Section I.C., and failed to prove damages, *see* Section I.D.

## E.  Breach of Contract (Count V)

Parker has failed to prove his breach of contract claim. *See* Section I.B; Section III.A.

## F.  Breach of Implied Duty of Good Faith and Fair Dealing (Count VI)

        1.   <u>Parker failed to prove a breach of contract.</u>

Parker's claim for breach of the implied duty of good faith and fair dealing fails because Parker has not proven that Starr breached its contract. *Daniels v. Parker & Assocs., Inc.*, 99 So.3d 797, 801 (Miss. Ct. App. 2012) ("to have a breach of the duty of implied good faith and fair dealing there must first be an existing contract and then a breach of that contract."); *See* Section I.B; Section III.A.

24773795.10

2.  <u>Starr had a legitimate and arguable basis for its actions.</u>

Courts have held "[t]he breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness. However, in performing a contract, the parties are not prevented from protecting their respective economic interests…." *General Motors Acceptance Corp. v. Baymon*, 732 So.2d 262, 269 (Miss. 1999) (quotes and citations omitted). Here, Starr took the position that there was no coverage or duty to defend the Underlying Lawsuit based on legitimate and arguable bases and protected its rights under the contract by reserving its rights to deny coverage and bringing this Declaratory Judgment Action. *See* Section I.E.

**G. Negligence (Count VII)**

1.  <u>Parker's negligence claim sounds in contract rather than tort.</u>

Parker's simple negligence claim fails as a matter of law because it is based on Starr's alleged failure to fulfill its contractual obligations, and Parker failed to prove breach of contract. *See* Section I.B.; Section III.A. "The relationship between the insurer and the insured arises by contract. . ." *Willis v. Allstate Ins. Co.*, No. 2:13-CV-60-KS-MTP, 2014 WL 5514160, at *16 (S.D. Miss. Oct. 31, 2014) (citation omitted). Where a negligence claim arises from the failure to fulfill duties under an insurance policy, "it sounds in contract rather than tort." *Id.* Because Parker's simple negligence claim arises from Starr's alleged failure to fulfill its contractual duties, "the claim is subsumed by [Parker's] breach of contract claims and addressed in the same manner . . ." *Id.* at *17. Accordingly, because Starr did not breach its contract, Parker's claim fails.

2.  <u>Because Parker failed to prove was the proximate cause of his damages and failed to prove damages his negligence claim fails.</u>

"The elements of a negligence action are well-settled in Mississippi. A plaintiff in a negligence suit must prove by a preponderance of the evidence (1) duty, (2) breach of duty, (3)

causation, and (4) injury." *Patterson*, 910 So.2d at 1019. Parker failed to prove causation, *see* Section I.C., and failed to prove damages, *see* Section I.D.

### H.  Breach of Fiduciary Duty (Count VIII)

> 1.  <u>There is no coverage under the Starr Excess Policy.</u>

Because Exclusions 4 and 5 in the Starr Excess Policy apply and remove coverage from the Underlying Action, Parker's breach of fiduciary duty claim fails. *See* Section I.A.

> 2.  <u>An insurer's fiduciary duty only arises in the context of a duty to defend.</u>

Under Mississippi law, a fiduciary duty may only arise between an insurer and an insured in the context of the insurer's duty to defend. *Langston v. Bigelow*, 820 So.2d 752, 756 (Miss. Ct. App. 2002) ("Only when a third party relationship exists between the insurance company and the insured does the insurance company acquire 'control' of the litigation which gives rise to a fiduciary relationship."); *Dunn v. State Farm Fire & Cas. Co.*, 711 F. Supp. 1362, 1364 (N.D. Miss. 1988) ("An insurer's fiduciary duty relates to the company's duty to defend the insured against claims of third parties." (citation omitted)). Because Starr had no duty to defend Parker, no fiduciary duty existed, and this claim fails. *See* Section I.A.3.a; Section I.B.1.

> 3.  <u>Starr complied with the terms of its contract.</u>

Under Mississippi law, a party does not breach a fiduciary duty if it complies with the terms of its contract. *Gen. Motors Acceptance Corp. v. Baymon*, 732 So. 2d 262, 274 (Miss. 1999) ("a party to a contract does not breach any fiduciary duty by exercising its rights under the contract."). Even if Starr owed a fiduciary duty, and it did not, the claim fails because Starr complied with its contract of insurance. *See* Section I.B.

24773795.10

                 4.   <u>Starr looked after Parker's interests at least as much as its own.</u>

The evidence at trial established that Starr had a legitimate and arguable basis to refuse to pay the Underlying Judgment, but that Starr paid the remaining Underlying Judgment under compulsion and reserving its rights in order to protect Parker. (Tr. Transcript, Vol. 2 at 131:16-135:2)

**I.   Intentional Infliction of Emotional Distress (Count IX)**

                 1.   <u>Starr had a legitimate and arguable basis for its actions.</u>

Parker's intentional infliction of emotional distress ("IIED") claim fails for the same reason his bad faith claims fail: Starr had a legitimate and arguable basis for its coverage position. *See supra*, Section I.E. "The standard for [IIED] in Mississippi is very high: a defendant's conduct must be wanton and willful such that it would evoke outrage or revulsion." *Holloway v. Nat'l Fire & Marine Ins. Co.*, 360 So. 3d 671, 676 (Miss. Ct. App. 2023) (quoting *Croft v. Grand Casino Tunica Inc.*, 910 So. 2d 66, 75 (Miss. Ct. App. 2005)). "The plaintiff must show that the defendant's conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Croft*, 910 So. 2d at 75).

Under Mississippi law and this Court's precedent, an insurer's legitimate or arguable basis for a coverage position defeats an insured's claim for IIED. *Id.* (where insurer had legitimate reason to deny coverage, IIED claim was without merit) (citation omitted); *Willis*, 2014 WL 5514160, at *17 ("the District Courts of this state have treated [an IIED claim] as running parallel to the bad faith claim" (citation omitted)); *McLendon v. Wal-Mart Stores, Inc.*, 521 F. Supp. 2d 561, 568 (S.D. Miss. 2007) ("As other federal district courts have held, 'having a legitimate reason

to deny coverage negates [] claim for intentional infliction of emotional distress.'" (citation omitted)).

### 2.  Parker presented no evidence of intentional harm.

Parker failed to present any evidence that Starr "intended to cause harm" to Parker. *Goode v. Walmart, Inc.*, 372 So.3d 149, 163 (Miss. Ct. App. 2023) (noting five elements of IIED claim). By acting in accordance with its good faith belief that the exclusions removed coverage for the Underlying Lawsuit and that it had no duty to defend the Underlying Lawsuit, Starr did not take any intentional act directed at harming Parker.

### 3.  Parker presented no evidence of severe emotional distress.

Moreover, Parker failed to prove that he suffered severe emotional distress, which is a necessary element of an IIED claim. *Burroughs v. FFP Operating Partners, L.P.*, 70 F.3d 31, 33 (5th Cir. 1995) ("To support an I.I.E.D. claim, a plaintiff must show *severe* emotion distress" and "[o]nly the most extreme emotional injures yield liability.") (emphasis in original) (citing Rest. 2d of Torts § 46)). Parker admitted that he never sought or received treatment from a medical professional for his alleged emotional distress. (Tr. Transcript, Vol. 5 at 66:10-67:11) As discussed *supra*, vague allegations without connection to a specific diagnosis or treatment fail as a matter of law. *Goode*, 372 So.3d at 164 (collecting cases).

### J.  Declaratory Relief (Count X)

Starr is entitled to judgment as a matter of law on Parker's claim for declaratory relief because there is no coverage for the Underlying Action and it is not estopped from asserting the applicable exclusions. *See* Section I.A.

### K. Tortious Interference with Contract (Alternative) (Count XI)

      1. <u>Starr had a legitimate and arguable basis for its actions.</u>

Among the elements of a tortious interference with contract claim are that the defendant took actions with "unlawful purpose…without right or justifiable cause…." *Cenac v. Murry*, 609 So.2d 1257, 1268-69 (Miss. 1992). Because Starr's positions on coverage and duty to defend were correct or, at the least, based on legitimate and arguable bases, they were not taken with unlawful position or without justifiable cause. *See* Section I.E.

      2. <u>Starr's actions were not calculated to cause damage to Parker.</u>

Another element of a tortious interference claim is that the defendant's actions "were calculated to cause damage to the plaintiffs in their lawful business." *Id*. By acting in accordance with its good faith belief that the exclusions removed coverage for the Underlying Lawsuit and that it had no duty to defend the Underlying Lawsuit, Starr did not take any intentional act directed at harming Parker.

      3. <u>Parker failed to prove Starr proximately caused his damages, if any.</u>

A plaintiff must prove "actual damage and loss resulted" from a defendant's intentional actions in order to make out a tortious interference claim. *Id*. Because Parker failed to prove Starr proximately cause his damages, if any, this claim fails. *See* Section I.C.; Section I.D.

### <u>CONCLUSION</u>

For these reasons, Starr is entitled to judgment as a matter of law on its claims and against Parker's counterclaims.

Respectfully submitted, this the 30th day of April 2025.

                        **STARR INDEMNITY & LIABILITY**
                        **INSURANCE COMPANY**

              BY:    <u>*/s/Walter H. Boone*         </u>

Of Counsel

OF COUNSEL:

Walter H. Boone (MSB #8651)
Jennifer J. Skipper (MSB #100808)
Kye C. Handy (MSB #105048)
BALCH & BINGHAM LLP
188 East Capitol Street, Suite 1400
Jackson, Mississippi 39201-2133
Telephone: (601) 961-9900
Facsimile: (601) 961-4466

E-Mail: wboone@balch.com
         jskipper@balch.com
         khandy@balch.com

43

## <u>CERTIFICATE OF SERVICE</u>

I, Walter H. Boone, do hereby certify that I have this day electronically filed the foregoing document with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record associated in this cause.

THIS, the 30th day of April 2025.

/s/ Walter H. Boone
Walter H. Boone

44

24773795.10